UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUNKIN' DONUTS INCORPORATED and DUNKIN' DONUTS USA, INC., : | CIVIL ACTION NO. 3:02 CV 1920 (MRK) |
| Plaintiffs, : | |
| v. : | |
| 4 DONUTS, INC., GRANDO, INC., GLENN STETZER, KATHLEEN STETZER, GEORGE GERMANO, and JAMES MCMANAMA, : | OCTOBER 23, 2003 |
| Defendants. : | |

## DEFENDANTS 4 DONUTS, INC., GRANDO, INC., AND GLENN STETZER'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR FIRST AMENDED COMPLAINT

Defendants 4 Donuts, Inc. ("4 Donuts"), Grando, Inc. ("Grando"), and Glenn Stetzer (collectively, the "defendants") respectfully submit this memorandum in opposition to plaintiffs' Motion for Leave to File Their First Amended Complaint dated October 3, 2003.

Plaintiffs' motion to amend to add a claim (Count XIV) that defendants sold donuts to Aromas Coffee and Bake Shop should be denied. This amendment would be futile on the grounds that it fails to state a claim upon which relief can be granted because the activity does not violate the franchise agreements. Also, plaintiffs have not alleged that defendants failed to cure any "default" within the applicable time allowed to cure defaults, and plaintiffs have not alleged that defendants failed to follow proper Dunkin' notification procedures for making such sales. Moreover, this is an entirely new claim that arises from a completely different set of facts from those alleged in any of plaintiffs' previous claims. Furthermore, plaintiffs cannot simply "supplement" their previous notice of termination by attempting to lodge new reasons for

**ORAL ARGUMENT IS REQUESTED**

terminating the franchises a year after serving the initial notice of termination, and this entirely new charge at the close of discovery would prejudice defendants.

Plaintiffs' motion to amend to add a claim (Count XIII) alleging tax violations should also be denied because plaintiffs have improperly delayed bringing this claim. Plaintiffs' original notice of termination stated that plaintiffs had evidence of tax violations prior to filing the Complaint almost one year ago, yet plaintiffs waited to the close of discovery to bring the claim.

## BACKGROUND

One year ago on October 24, 2002, plaintiffs sent defendants a notice of termination of their Dunkin' Donuts franchises. In that termination notice, plaintiffs stated in a vague manner a number of purported reasons for the termination. In particular, plaintiffs stated: "Based on a variety of evidence, Dunkin' Donuts has concluded that you have used your Dunkin' Donuts franchised business to defraud the taxing authorities." Notice of Termination at 3, Plaintiffs' Memorandum, Tab 2.

A few days after sending this notice, plaintiffs filed their Complaint on October 29, 2003, alleging that defendants: (i) underreported their gross sales (Count I); (ii) transferred an interest in the franchises without plaintiffs' consent (Counts II, VI); (iii) violated various provisions of the franchises through an alleged assault of a former employee (Counts III, IV, VIII); (iv) conducted a catering business (Count V); and (v) violated various statutes by contesting their termination and continuing to operate their shops (Counts VII, IX, X, XI, XII). Plaintiffs did not include a count alleging tax violations.

On July 2, 2003, plaintiff Dunkin' Donuts Incorporated moved to compel certain documents and interrogatories from defendants. In the Court's ruling on the motion dated

September 11, 2003, the Court acknowledged defendants' argument that plaintiff Dunkin' Donuts Incorporated was searching for tax violations not alleged in the Complaint. The Court stated: "Moreover, plaintiffs' request for information pursuant to the 'obey all laws clause' in the Franchise Agreements is being used as an umbrella to include claims not accounted for in plaintiffs' complaint." Ruling On Motion to Compel at 23.

In the Ruling on Motion to Compel, the Court also extended the discovery deadline from September 12, 2003 to October 31, 2003. Plaintiffs had requested a greater extension and defendants had opposed any extension.

On October 3, 2003, plaintiffs moved to amend their Complaint to add two new charges and counts: (i) that defendants defrauded the tax authorities (Count XIII); and (ii) that defendants breached the franchise agreement by selling donuts to Aromas Coffee and Bake Shop (Count XIV).

## ARGUMENT

## POINT I

## RULE 15(a) DOES NOT APPLY TO THIS MOTION

Plaintiffs erroneously moved under Rule 15(a) for leave to amend. The Second Circuit, however, has held that when a party moves to amend its Complaint after the time set in the scheduling order, the proper standard is the "good cause" standard in Federal Rule of Civil Procedure 16(b), not the "freely given" standard of Rule 15(a). Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). See also Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (finding that where a scheduling order has been entered, the standard under 15(a) "must be balanced against the requirement under Rule 16(b) that the Court's scheduling

order 'shall not be modified except upon a showing of good cause'")(quoting Parker, 204 F.3d at 340).

In the report of the parties' planning meeting of December 19, 2002, plaintiffs requested a deadline of July 18, 2003 by which to amend their Complaint. A copy of the Rule 26(f) report is attached as **Exhibit A**. Plaintiffs had the very liberal period of seven months to move for leave to amend the Complaint but did not so move until two and half months after the deadline. Consequently, the more strict standard of Rule 16(b) should apply, requiring plaintiffs to show good cause for amending the Complaint.

Rule 16(b) provides that after filing of a Rule 26(f) report, the Court should enter a scheduling order that, among other things, limits the time to amend the pleadings. Rule 16(b) further provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge . . . ."[1]

As set forth in more detail below, plaintiffs cannot meet the "good cause" standard. Even under the standard of Rule 15(a), plaintiffs' motion must be denied.

## POINT II

## ADDING THE WHOLESALE SALE CLAIM WOULD BE FUTILE

Courts have routinely denied motions to add claims where the new claim would be futile because it "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003). Here, Count XIV does not state a claim for three reasons: (i) "supplying" products to another shop is allowed and encouraged by

---

[1] While the parties filed their Rule 26(f) on or about December 19, 2002, it is not clear whether Judge Arterton, the presiding judge at the time, endorsed the report or otherwise entered a scheduling order. Consequently, the parties have abided by the deadlines in the Rule 26(f) report as if the judge had endorsed them. For example, plaintiffs moved for an extension of the discovery deadline of September 12, 2003 listed in the Rule 26(f) report.

Dunkin' Donuts and does not, therefore, violate the franchise agreements; (ii) plaintiffs have not alleged that defendants have failed to cure the alleged "default" within the applicable time period; and (iii) plaintiffs have not alleged that defendants failed to follow the notification procedures set forth by Dunkin' Donuts for supplying products to another store.

A.   **Supplying Wholesale Products Is Not a Breach of the Franchise Agreements**

Count XIV of plaintiffs' proposed Amended Complaint alleges that "[t]he conduct described in paragraph 43 constitutes a breach of the contractual provisions of the Franchise Agreements described in paragraphs 22, 23, 26 and 28, warranting termination of the Franchise Agreements." Amended Complaint ¶ 94.

Proposed Paragraph 43 alleges: "Defendants are also in default of their Franchise Agreements by supplying doughnuts and other products to a competing doughnut and coffee business. Upon information and belief, Defendants have supplied doughnuts and other products to a business called Aromas Coffee and Bake Shop. Aromas Coffee and Bake Shop is a doughnut and coffee business located near Defendants' and other Dunkin' franchises."

Paragraphs 43 and 94 are the only paragraphs that contain factual allegations on which Count XIV is based.

The provisions of the franchise agreements described in paragraphs 22, 23, 26 and 28 are 8.A.1. (8.0.1) and 8.A.3. (8.0.3). A copy of these provisions has been attached hereto as **Exhibit B**. An analysis of these provisions reveals that neither provision applies to the activity alleged in Count XIV.

Paragraph 8.A.3. states that a franchisee may not "own, maintain, engage in, be employed by, or have any interest in any other business which sells or offers to sell" products similar to those offered by Dunkin' Donuts. On its face, therefore, Count XIV does not state a claim

5

because plaintiffs have only alleged that defendants "supplied" products to Aromas Coffee and Bake Shop. Because plaintiffs have not alleged that Mr. Stetzer had an ownership interest in the Aromas Coffee Shop, plaintiffs have not stated a claim under Paragraph 8.A.3. of the franchise agreements.

Likewise, plaintiffs have failed to state a claim that defendants breached Paragraph 8.A.1. of the franchise agreement, which states that a franchisee may not: "Divert or attempt to divert any business or customer of the Dunkin' Donuts Shop to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Dunkin' Donuts Proprietary Marks and the Dunkin' Donuts System."

Paragraph 8.A.1., therefore, contains two separate prohibitions – that a franchisee not "divert" customers and that a franchisee not hurt the goodwill of Dunkin' Donuts' proprietary marks. Neither of these two prohibitions applies to the activity alleged in plaintiffs' claim.

First, defendants' wholesale sales to Aromas Coffee and Bake Shop cannot violate Paragraph 8.A.1. because supplying products to another store does not violate the franchise agreements. Indeed, supplying products to other shops is an act that is encouraged by Dunkin' Donuts and is widespread throughout the Dunkin' Donuts system.

Dunkin' Donuts encourages franchisees to supply products to other shops by allowing franchisees to do this at their own discretion *unless* the franchisee is formally told by Dunkin' Donuts to stop. Under plaintiffs' procedures detailed in the memorandum dated February 4, 2002 and entitled, "Approval and Reporting of Wholesale Accounts," "[t]he wholesale account shall be deemed approved by Allied Domecq QSR unless you are notified by certified mail that the account is not approved." A copy of this memorandum is attached as **Exhibit C.**

If servicing a wholesale account violated paragraph 8.A.1., then a significant percentage of franchisees in the Dunkin' Donuts system would be in breach of this provision at the encouragement of Dunkin' Donuts. Plaintiffs have made no claim that they asked defendants to stop these sales. Therefore, defendants' supplying of products to Aromas Coffee and Bake Shop cannot constitute a breach of the franchise agreements.

Second, servicing a wholesale account cannot be "injurious or prejudicial" to plaintiffs' goodwill for the same reason – Dunkin' encourages wholesale accounts and this activity cannot, therefore, constitute a breach of the franchise agreements. Also, accusing a franchisee of injuring the goodwill associated with Dunkin' Donuts' proprietary marks by servicing a wholesale account is facially implausible given that wholesale products contain no proprietary marks. Regardless, plaintiffs have not claimed that defendants sold these products with Dunkin' Donuts' proprietary marks and have, therefore, not stated any breach of the franchise agreements.

**B.      Plaintiffs Do Not Allege That Defendants Have Failed To Cure Any "Default"**

Count XIV does not state a claim also because under the franchise agreements, franchisees are permitted to cure certain defaults within specified time frames. In order to state a claim, therefore, plaintiffs must allege either that defendants have failed to cure the "default" or that no cure period applied to the defendants' action. Plaintiffs have alleged neither.

Plaintiffs cannot make this claim, in fact, because defendants have already cured any alleged "default" by ceasing sales to Aromas within the time specified under the franchise agreements. Thus, not only is plaintiffs' claim deficient as it is written now, but giving plaintiffs' the opportunity to amend it to correct the deficiencies would be futile, as well.

Defendants ceased servicing this wholesale account on October 13, 2003. Deposition of Glenn Stetzer at 202, lines 21-25, a copy of which is attached as **Exhibit D**. This is well within the applicable cure period for a number of reasons.

First, plaintiffs' attempt to "supplement" their original notice of termination, have it relate back to the date of the original notice of termination, and include their new purported reason for termination in this lawsuit is improper. The "Supplemental Notice of Default and Termination" sent by plaintiffs is dated October 3, 2003. Under the Connecticut Franchise Act, a franchisor cannot "supplement" or amend a previously served notice of termination and the supplemental notice does not relate back to the time of the original notice of termination. See Paradise Foods, Inc. v. Louise's Own, Inc., Civ. No. 3:96-02279 (D. Conn. March 31,1997) (finding that the franchisor could not give a second, retroactive notice of termination), a copy of which is attached as **Exhibit E**.

Policy reasons require this result. If supplemental notices of termination related back to the date of the original notice, the 60-day notice requirement of the Connecticut Franchise Act, Conn. Gen. Stat. § 42-133f(a), would be rendered meaningless, because franchisors could send out a brief notice of termination, wait until the notice period expired, then send out an supplemental notice listing additional violations. Because the cure period for these additional violations will have passed if the supplemental notice were deemed retroactive, franchisees would not have the proper opportunity to cure. Here, allowing plaintiffs' supplemental notice to relate back would be particularly egregious because one year has passed from the date of the original notice of termination.

Because the supplemental notice does not relate back to the time of the original notice, the day the supplemental notice is received (October 6, 2003) began the period in which

8

defendants could cure any defaults. Under Section 42-133f of the Connecticut Franchise Act, defendants have 60 days to cure this default.

Furthermore, under Section 9.B.3. or 9.1. of the franchise agreements, defendants have 30 days to cure this default. Section 9.B.3. provides that a 30-day cure period applies to any of franchisee's obligations "unless otherwise specified in Paragraph 9 of this Agreement." Paragraph 9 then provides for various cure periods for certain infractions, none of which involves selling donuts to a competitor. A copy of Paragraph 9 is attached as **Exhibit F**. Defendants have, therefore, 30 days to cure this default, unless the "no-cure period" provision of the franchise agreement applies.

Section 9.B.4 is the "no-cure period" provision. It provides:

> No cure period shall be available if franchisee abandons the Dunkin' Donuts Shop; or if franchisee intentionally underreports gross sales or falsifies financial data; or if franchisee's lease for the Dunkin' Donuts Shop with Dunkin' Donuts or a subsidiary of Dunkin' Donuts is terminated or expires.

None of those infractions involves selling donuts to another coffee shop. Because Section 9.B.4. does not apply here, defendants have 30 days from October 6, 2003 to cure under the franchise agreements. As discussed above, the Franchise Act requires 60 days notice and Section 9.B of the franchise agreements defers to any applicable statutory period. Consequently, plaintiffs' claim was premature when made and it does not state a claim for which relief can be granted. Additionally, since defendants cured any alleged default by ceasing to supply Aromas within one week of receipt of the "Supplemental Notice," plaintiffs' claim has become moot and it would be futile to permit amendment to add a mooted claim.

9

C. **Plaintiffs Do Not Allege That Defendants Violated Notice Procedures In Making The Wholesale Sales**

Count XIV also does not state a claim because it only states that defendants "supplied" products to another shop. Because wholesale sales to other stores is actually encouraged by plaintiffs, such activity can only be a breach if defendants failed to follow the notification procedures outlined in Exhibit C or if defendants refused to stop the sales after Dunkin' Donuts formally objected. Because plaintiffs have not alleged that defendants failed to follow the notification procedures or that defendants refused to stop servicing the account when asked, Count XIV does not state a claim upon which relief can be granted.

Furthermore, allowing plaintiffs the opportunity to amend this claim to make these omitted allegations would be futile because defendants notified Dunkin' in advance of servicing these accounts and Dunkin' did not object. On July 25, 2003, before beginning to service the account, defendants sent a "Dunkin' Donuts Wholesale Account Registration" notice to their Dunkin' Donuts Business Consultant, Frank Basler. A copy of this registration notice is attached as **Exhibit G.**

Defendants were authorized by Dunkin' Donuts Incorporated, therefore, to begin serving the wholesale account unless Mr. Basler notified them within seven days that Dunkin' Donuts disapproved the account. See Exhibit C. Neither Mr. Basler nor anyone else at Dunkin' Donuts provided such notification. Accordingly, defendants began delivering product to this account in early August 2003 and reported such wholesale sales on plaintiffs' automated reporting system by increasing the number of wholesale accounts and including the new sales in the total dollar amount for the week.

Additionally, on September 15, 2003, during a surprise inspection of Mr. Stetzer's Hamden store by Mr. Basler, defendants' General Manager provided Mr. Basler with a list of the

wholesale accounts, including the new account. Mr. Basler acknowledged receiving this list in his TSA Comment Sheet, a copy of which is attached hereto as **Exhibit H**. Once again, Mr. Basler voiced no objection to the wholesale account and did not state that providing donuts or other products to the account was in violation of the non-compete provision of the franchise agreements.

Because plaintiffs knew and approved of the new account, defendants' sales to the new account did not violate the franchise agreements and amending the Complaint to add this claim would be an act of futility.

Consequently, under these circumstances, not only would the addition of the wholesale claim be futile, but if plaintiffs continued to pursue this motion to add the wholesale claim they would be committing a Rule 11 violation.

## POINT III

## THE WHOLESALE SALE CLAIM IS UNRELATED TO PREVIOUS ALLEGATIONS

Plaintiffs' motion to amend to add the wholesale claim must also be denied because it is unrelated to any of the claims set forth by plaintiffs in their original Complaint, and its late inclusion would prejudice defendants. Courts have routinely denied motions to amend even under the Rule 15(a) standard when a party brings new allegations at a late stage in the litigation. As the court stated in Team Management, Inc. v. Filmline Technologies, Inc., 1994 U.S. Dist. LEXIS 3255 at *4-5 (D. Conn. 1994):

> "At this late juncture, when the action is on the verge of the closing of discovery, the plaintiff's proposed new claims for relief simply pose too great a risk that the defendants will be required to expend significant additional resources to conduct further discovery and prepare for trial and that the resolution of this dispute will be substantially delayed."

The new allegation that defendants sold donuts to an alleged competitor bears no relation to any previous claims. It has never been raised before and stems from a totally different set of operative facts. Bringing it now, at the close of discovery, denies defendants a chance to conduct sufficient discovery to mount a defense: it is too late to request documents under Rule 34 and the depositions of key personnel have already been taken. Indeed, discovery will have closed by the time plaintiffs file their reply to this brief.

Defendants would be prejudiced by allowance of this new claim because they would be forced to trial on a claim for which they have not had the benefit of discovery. See Ansam Associates, Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (denying motion to amend to add a new claim because "this is simply an insufficient reason for prejudicing Cola by forcing it to proceed to trial, post-discovery, on a new complaint"). As the court stated in Messier v. Southbury Training School, 1999 U.S. Dist. LEXIS 6992 at *10 (D. Conn. 1999): "The burdens on the nonmoving party may be substantial where a proposed amended complaint asserts new theories of liability or 'brings in additional actors' who 'took alleged actions or (inactions) that are distinct from the allegations raised in the' prior complaint." (quoting Johnson v. Methodist Med. Ctr. Of Ill., 10 F.3d 1300, 1304 (7th Cir. 1993)).

## POINT IV

## PLAINTIFFS HAVE UNNECESSARILY DELAYED BRINGING THE TAX CLAIM

Plaintiffs' motion to amend to add a new claim alleging tax violations must be denied because plaintiffs have unnecessarily delayed in bringing these claims, thereby prejudicing defendants. Even under a Rule 15(a) standard, let alone the "good cause" standard of Rule 16(b) that governs this motion, courts have denied motions to amend when the movant has offered no good reason for delaying assertion of its claims. See Messier, 1999 U.S. Dist. LEXIS at *7

("District courts may deny leave to amend where the motion is made after an inordinate delay, the movant offers no adequate excuse for the delay, and the nonmovant would suffer undue prejudice."). Even under Rule 15(a), plaintiffs also bear the burden of providing a "satisfactory explanation" for their delay. Id. at *8.

Here, plaintiffs moved to add a new claim one year after filing their initial Complaint, less than one month from the close of a discovery deadline that had already been extended at the plaintiffs' request, and two and half months after the plaintiffs' own generous deadline in the Rule 26(f) conference report for amending their Complaint. There can be no doubt that plaintiffs have improperly delayed bringing this claim.

Plaintiffs also have no good excuse for such delay because they knew about this claim prior to the inception of this case, yet waited till the close of discovery to assert it. Courts have found that when a party could have brought a claim earlier but neglected to, denial of leave to amend is justified. The court in Turner v. Mitchell Pontiac, Inc., 771 F. Supp. 530, 535 (D. Conn. 1991), stated that denying a motion to amend was "within the sound discretion of the district court where, for example, there was 'extended delay and failure to raise initially claims of which . . . [the plaintiff] was well aware,'" quoting Oreck Corp. v. Whirlpool Corp., 639 F.2d 75, 81 (2d Cir. 1980).

Significantly, the court in Turner denied the motion to amend where the plaintiff waited eight months to file claims based on the same "nucleus of operative facts" as its original claims and that plaintiff knew or should have known about earlier. Id.

Here, plaintiffs had full knowledge of their tax claim even prior to filing their original Complaint. First, plaintiffs' new claim states that defendants violated the tax laws by filing tax returns that "failed to accurately reflect the true gross sales of the franchise, failed to state the

true income earned by Defendants, and misstated actual expenses of the franchises." Proposed Amended Complaint ¶ 40. In other words, this new claim simply adds a new charge based on the prior claims that defendants underreported their sales, and plaintiffs could have asserted this claim in their original Complaint one year ago.

Second, plaintiffs' notice of termination sent to defendants in October 2002, shortly before the filing of this lawsuit, accused defendants of defrauding the taxing authorities. Plaintiffs' Memorandum in Support of Motion to Amend, Tab 2 at 3. This demonstrates that plaintiffs had full knowledge of this claim prior to commencing their lawsuit against defendants, yet chose not to raise the claim in their Complaint. Because this notice was sent prior to the filing of the Complaint, there is no justification for not asserting the tax claim in the original Complaint.

Third, in April 2002, prior to sending the notice of termination, plaintiffs conducted an audit of defendants' franchises in which plaintiffs took away and copied three years' worth of defendants' tax returns and other financial records. Notes of Joe McGowan, a copy of which is attached as **Exhibit I**. Plaintiffs, therefore, had access to all the records necessary to bring this claim before filing their Complaint.

Fourth, plaintiffs themselves concede that the tax claim is "nothing new." Pl. Memo. at 4.

Defendants have been prejudiced by plaintiffs' delay in asserting the tax claim, especially plaintiffs' claim that defendants have misstated expenses of the franchises. Defendants have assumed for some time that tax charges were not a part of this case.

Because the tax claim arises from the same set of operative facts as the claims in the original Complaint, because plaintiffs knew of this claim prior to the filing their Complaint,

because plaintiffs have no justification for their delay in bringing this claim, and because this delay prejudices defendants, plaintiffs' motion to amend to add the tax claim must be denied.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to amend their Complaint should be denied in its entirety.

                              DEFENDANTS,
                              4 DONUTS, INC., GRANDO, INC., and
                              GLENN STETZER

By:   /s/ Richard S. Order
        Richard S. Order (ct 02761)
        Eric L. Palmquist (ct 24166)
        AXINN, VELTROP & HARKRIDER LLP
        90 State House Square
        Hartford, CT  06103-3702
        Telephone: 860-275-8100
        Facsimile:  860-275-8101
        Email:     rso@avhlaw.com

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing has been sent via first-class U.S. mail, postage prepaid, this 23rd day of October, 2003 to:

Richard L. Zisk, Esq.
Jeffrey L. Karlin, Esq.
Christopher M. Loveland, Esq.
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Avenue, Northwest
Suite 1000
Washington, DC  20037-1922

Paul D. Sanson, Esq.
Alexandra M. McHugh, Esq.
Shipman & Goodwin LLP
One American Row
Hartford, CT  06103-2819

Robert K. Walsh, Esq.
Law Offices of Robert K. Walsh LLC
193 State Street
P.O. Box 777
North Haven, CT  06473-0777

Paul N. Gilmore, Esq.
Brad N. Mondschein, Esq.
Amy Leete Van Dyke, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street
Hartford, CT  06123-1277

By: /s/ Eric L. Palmquist
    Eric L. Palmquist, Esq.
    Axinn, Veltrop & Harkrider LLP