# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUNKIN' DONUTS INCORPORATED and <br> DUNKIN' DONUTS USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> 4 DONUTS, INC., <br> GRANDO, INC., <br> GLENN STETZER, <br> KATHLEEN STETZER, <br> GEORGE GERMANO, and <br> JAMES MCMANAMA, <br><br> Defendants. | CIVIL ACTION NO. <br> 3:02 CV 1920 (JBA) <br><br><br><br><br><br><br><br><br><br><br><br> DECEMBER 19, 2002 |

## REPORT OF PARTIES' PLANNING MEETING

**Date Complaint Filed:** The complaint was filed with the United States District Court, District of Connecticut on October 29, 2002.

**Date of Defendants' Appearance:** November 18, 2002.

**Rule 26(f) Conference:** Pursuant to Fed.R.Civ.P. 16(b), 26(f) and D.Conn.L.Civ.R. 38, a teleconference was held on December 12, 2002 and December 13, 2002. The participants were:

 Christopher M. Loveland for Plaintiffs; and

 Brad N. Mondschein, Esq. and Amy Leete Van Dyke, Esq. for Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, James McManama, and George Germano (collectively, the "defendants").

 To date, defendant Kathleen Stetzer has not appeared in this matter. The references to defendants in this Report do not include Kathleen Stetzer.

307829

## I. Certification

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and bases of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II. Jurisdiction

### A. Subject Matter Jurisdiction

Plaintiffs claim that this Court has subject matter jurisdiction over this case under §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331, 1332, 1338, and 1367(a).

### B. Personal Jurisdiction

This Court has personal jurisdiction over the individual defendants because they are citizens of and reside in Connecticut and over the corporate defendants because their principal places of business are in Connecticut.

## III. Brief Description Of Case

Defendants 4 Donuts, Inc., Grando, Inc. and Glenn Stetzer (hereinafter collectively referred to as "defendants") are franchisees of the defendants Dunkin' Donuts Incorporated and Dunkin' Donuts USA, Inc. (hereinafter collectively referred to as "Dunkin' Donuts" or "plaintiffs") under Franchise Agreements with Dunkin' Donuts for the shops located at: 200 Sargent Drive, New Haven, Connecticut; 87 Frontage Road, East Haven, Connecticut; 291 Ferry Street, New Haven, Connecticut;

66 York Street, New Haven, Connecticut; 1950 State Street, Hamden, Connecticut; and 475 Forbes Avenue, New Haven, Connecticut (hereinafter collectively referred to as "Franchise Agreements). This action arises out of Dunkin' Donuts purported Notice of Termination of the Franchise Agreements.

Plaintiffs allege breach of all Franchise Agreements, breach of covenant of good faith and fair dealing, trademark infringement pursuant to § 32 of the Lanham Act, 15 U.S.C. § 1114, trade dress infringement pursuant to § 43 of the Lanham Act, 15 U.S.C. § 1125, unfair competition pursuant to § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and violation of Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes §§ 42-110a et seq.

Defendants have denied plaintiffs' claims and filed counterclaims against plaintiffs including violation of the Connecticut Franchise Act, Connecticut General Statutes § 42-133e et seq., violation of CUTPA, breach of the covenant of good faith and fair dealing, and breach of contract. Plaintiffs have denied defendants' Counterclaims.

A.   Claims of Plaintiffs:

In its Complaint, Plaintiffs Dunkin' Donuts Incorporated and Dunkin' Donuts USA, Inc. assert claims for breach of contract, breach of the covenant of good faith and fair dealing, and trademark infringement based on the operation of Dunkin' Donuts franchises by Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer, George Germano, and James McManama. Among other things, Defendants have underreported gross sales and have failed to pay to Dunkin' Donuts all fees on gross sales as required under the Franchise Agreements. Defendants Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer, George Germano have also transferred an interest in one or more of their franchises to James McManama without the knowledge

307829                                  3

or approval of Dunkin' Donuts. Additionally, Defendants Glenn Stetzer, James McManama and others under their direction assaulted (and threatened further injury to) a former manager of one of their shops in an effort to prevent him from providing information to Dunkin' that would assist the franchisor in its investigation of the Defendants' underreporting scheme. Plaintiffs seek monetary, injunctive, and other relief against Defendants.

B.   Defenses and Counterclaims of Defendants:

On October 24, 2002, five days before their Complaint was filed, plaintiffs purported to terminate six of defendants' Franchise Agreements by sending a Notice of Default and Termination. The Notice of Default and Termination relies in part on alleged violations of the Franchise Agreements by defendants that either occurred more than six (6) years prior to the issuance of the Notice or began years ago with the knowledge of Dunkin' Donuts.

Further, in support of plaintiffs' claim for breach of the Franchise Agreements, they rely upon the statement of a former manager of the State Street shop. Dunkin' Donuts knows that this statement was retracted. In order to undermine the retraction, Dunkin' Donuts has proffered an absurd allegation that as part of a conspiracy, defendants obtained a false notary public's seal as to the authenticity of the former manager's signature on the retraction he signed. Dunkin' Donuts is utilizing false allegations and inconsequential conduct of defendants as a pretext to terminate the Franchise Agreements. Dunkin' Donuts is utilizing false allegations and inconsequential actions of defendants to carry out a retaliatory vendetta against defendants for suing Dunkin' Donuts in the past.

Sargent Drive Franchise Agreement

The ten-year term for the Sargent Drive shop expired on June 21, 2002. The Sargent Drive Franchise Agreement requires that the Sargent Drive shop be remodeled no later than the tenth anniversary of the original opening date, which was on June 21, 2002. Consequently, well before that date, defendants held a meeting with agents of Dunkin' Donuts and made numerous and repeated requests for an additional ten-year term of the Sargent Drive Franchise Agreement. In response to defendant's request, on two separate occasions Dunkin' Donuts stated that it would not allow the renewal of any of Glenn Stetzer's six franchises because of a previous lawsuit brought by Glenn Stetzer against Dunkin' Donuts and stated in writing that "[t]he franchise agreement for the Sargent Drive location does not expire until June 21, 2002. We are not prepared to make a determination on renewal at this time. [Mr. Stetzer] will be advised approximately 6 months prior to the expiration of our decision based on a review of all factors at that time."

In August 29, 2001, Dunkin' Donuts advised Glenn Stetzer that he should wait to begin remodeling the Sargent Drive shop until he receives Dunkin' Donuts determination on renewal. Dunkin' Donuts confirmed that so long as Glenn Stetzer begins his remodel in a timely manner after receiving confirmation of renewal, Dunkin Donuts will allow Glenn Stetzer additional time after June 21, 2002 to complete the remodel of the Sargent Drive location and will not consider Glenn Stetzer in default of the Sargent Drive Franchise Agreement for not completing the remodel on or before June 21, 2002. In a letter dated August 31, 2001 to Dunkin' Donuts, a request was made for confirmation regarding the renewal of the Sargent Drive Franchise Agreement by January 21, 2002.

In April, 2002, a Dunkin' Donuts representative examined the books and records ("Examination") of the six franchise shops operated by defendants. The results of the Examination were never disclosed to defendants.

By June 21, 2002, despite numerous inquiries to Dunkin' Donuts, Dunkin' Donuts had still not confirmed its renewal of the Sargent Drive Franchise Agreement even though the deadline Dunkin' Donuts itself set had long passed.

Dunkin' Donuts failed to adequately respond to defendants' repeated requests for assistance regarding the renewal for the Sargent Drive Franchise Agreement. Since Dunkin' Donuts failed to either send a notice of nonrenewal, termination or cancellation to 4 Donuts, Inc. or Glenn Stetzer sixty (60) days prior to June 21, 2002, the Sargent Drive Franchise Agreement automatically renewed under the Connecticut Franchise Act, Connecticut General Statutes § 42-133f(a). Since the Sargent Drive Franchise Agreement automatically renewed, defendants retained architects and had plans prepared for the Sargent Drive remodel. The plans were submitted to Dunkin' Donuts for approval as required by the Sargent Drive Franchise Agreement and Dunkin' Donuts approved the plans.

Dunkin' Donuts did not provide defendants any notice of a possible termination prior to late October 2002 despite Dunkin' Donuts' knowledge that defendants relied on Dunkin' Donuts renewal of the Sargent Drive Franchise Agreement and that defendants would begin the remodeling process once the renewed Sargent Drive Franchise Agreement was executed.

State Street Franchise Agreement

The State Street Franchise Agreement requires that the State Street shop be remodeled no later than the tenth anniversary of the original opening date, which was on November 1, 2002. The

remodeling plans for that shop were also submitted to Dunkin' Donuts for approval as required by the State Street Franchise Agreement, and Dunkin' Donuts approved the plans on July 22, 2002.

Based on the approval of Dunkin' Donuts and in accordance with the State Street Franchise Agreement, defendants remodeled the State Street shop expending a significant amount of money, time and effort. Just two weeks before the opening of the remodeled State Street shop, Dunkin' Donuts sent defendants a Notice of Default and Termination on October 24, 2002 purporting to terminate the Franchise Agreements.

Counterclaims

Dunkin' Donuts has adopted a plan to revamp its franchise system to consist primarily, if not exclusively, of franchisees who each operate many shops and to weed from its system franchisees like defendants who operate only a handful of shops. Dunkin' Donuts' failure to assist and/or respond to defendants' requests for renewal of the Sargent Drive Franchise Agreement, its approval of the remodeling of the Sargent Drive and State Street shops and subsequent termination of the Sargent Drive and State Street Franchise Agreements, its retaliation for a previous lawsuit brought by Glenn Stetzer against Dunkin' Donuts, and its concealment of the results of the Examination demonstrate Dunkin' Donuts' systematic plan to force out certain franchisees that do not fit Dunkin' Donuts' new business model. Dunkin' Donuts has abused its power and its economic leverage in an attempt to drive defendants out of business so that Dunkin' Donuts can assume control over the defendants' shops by operating the shops itself or selling the franchises to other franchisees. Such abuse of a contractual right to effectuate a termination violates the Connecticut Franchise Act.

By abusing its power under the respective Franchise Agreements for the purpose of driving defendants out of business and by violating the Connecticut Franchise Act, Dunkin' Donuts has engaged in conduct that is immoral, unethical, oppressive, and unscrupulous and that offends the public policy of Connecticut in violation of CUTPA.

Additionally, the Franchise Agreements executed between the parties contain acknowledgments and agreements by Dunkin' Donuts concerning the importance of assistance from Dunkin' Donuts to defendants. Despite repeated requests for assistance from Dunkin' Donuts to maintain compliance with the Franchise Agreements, Dunkin' Donuts failed to adequately respond to defendants' repeated requests for assistance.

Furthermore, by failing to abide by the terms of the franchise agreements as described above, Dunkin' Donuts has breached its implied covenant of good faith and fair dealing inherent in its performance of the Franchise Agreements.

## IV.    Statement Of Undisputed Facts

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1. Dunkin' Donuts Incorporated is engaged in the business of franchising "Dunkin' Donuts shops.

2. Grando, Inc. is a Connecticut corporation with its principal place of business at 475 Forbes Avenue, New Haven, Connecticut. Grando, Inc. has been an owner and operator of a Dunkin' Donuts shop located at 475 Forbes Avenue, New Haven, Connecticut, and has been a Dunkin' Donuts franchisee for the shop pursuant to a Franchise Agreement dated November 12, 1996.

3. Glen Stetzer has been an owner an operator of a Dunkin' Donuts shop located at 291 Ferry Street, New Haven, Connecticut and was a Dunkin' Donuts franchisee for the

shop pursuant to a Franchise Agreement dated February 25, 1985. Glenn Stetzer has been the owner, operator and franchise for the State Street shop, the Frontage Road shop, the York Street shop, and the Sargent drive shop. Glenn Stetzer has been the owner and operator of the Forbes Avenue shop. Glen Stetzer personally guaranteed and agreed to perform 4 Donuts, Inc.'s and Grando, Inc.'s obligations under the State Street, Frontage Road, York Street, Sargent Drive, and Forbes Avenue Franchise Agreements.

4. Dunkin' Donuts Incorporated is the franchisor of the Dunkin' Donuts franchise systems.

5. Glenn Stetzer, Grando, Inc. and 4 Donuts, Inc. has been licensed to use the Dunkin' Donuts trademarks, trade name and trade dress pursuant to certain Franchise Agreements. James McManama was not licensed to use the Dunkin' Donuts trademarks, trade name and trade dress.

6. The York Street Franchise Agreement is subject to an Addendum.

7. The Forbes Street Franchise Agreement contains a Schedule "A-3" entitled, "Additional Provisions for a Satellite Unit and the Ferry Street Franchise Agreement contains a document entitled, "Addendum to Dunkin' Donuts Franchise Agreement for a Satellite Unit."

8. Defendants continue to operate under the Franchise Agreements.

9. 4 Donuts, Inc., Grando, Inc. and Glenn Stetzer are franchisees of Dunkin' Donuts.

10. 4 Donuts, Inc. executed Franchise Agreements with Dunkin' Donuts.

11. Grando, Inc. executed a Franchise Agreement with Dunkin' Donuts.

12. Glenn Stetzer, either individually or through 4 Donuts, Inc. or Grando, Inc., has been a Dunkin' Donuts franchisee since 1985.

13. Glenn Stetzer executed the State Street, York Street, Sargent Drive, and Ferry Street Franchise Agreements.

14. The Sargent Drive Franchise Agreement states, "Franchisor shall maintain a continuing advisory relationship with Franchisee, including consultation in the areas of marketing, merchandising and general business operations."

15. The Sargent Drive Franchise Agreement requires that the Sargent Drive shop be remodeled no later than the tenth anniversary of the original opening date.

16. Glenn Stetzer and James McManama had a meeting with Joseph Chaves and David Crisfulla.

17. The State Street Franchise Agreement states, "Franchisor shall maintain a continuing advisory relationship with Franchisee, including consultation in the areas of marketing, merchandising and general business operations."

18. The State Street Franchise Agreement requires that the Sargent Drive shop be remodeled no later than the tenth anniversary of the original opening date.

19. Plaintiffs sent defendants a Notice of Default and Termination on October 24, 2002.

## V. Case Management Plan

### A. Standing Order on Scheduling in Civil Cases

The parties request a modification of the deadlines in the Standing Order on Scheduling in Civil Cases as follows.

### B. Scheduling Conference with the Court

The parties do not request a pretrial conference before entry of a scheduling order pursuant to Fed.R.Civ.P. 16(b).

### C. Early Settlement Conference

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

2. Defendants request an early settlement conference with Magistrate Judge Thomas Smith, Magistrate Judge Holly Fitzsimmons or Magistrate Judge William Garfinkel. Plaintiffs do not feel an early settlement conference would be fruitful. If the parties are nonetheless ordered to

participate in such a conference, Plaintiffs request that the Court decide which Magistrate Judge or other judicial officer to assign the matter to on its own, without input from the either side.

3. The parties do not request a referral for alternative dispute resolution pursuant to D. Conn.L.Civ.R. 36, but leave open the possibility of doing so at a later point.

D. Joinder of Parties and Amendment of Pleadings

1. Plaintiffs request to file any motions to join additional parties on or before July 18, 2003, and file any motions to amend the pleadings on or before July 18, 2003. Defendants request that plaintiffs file any motions to join additional parties on or before January 17, 2003, and shall file any motions to amend the pleadings on or before January 17, 2003.

2. Defendants filed an Answer and Counterclaims on November 18, 2002.

3. Plaintiffs filed a reply to the Counterclaims on December 10, 2002.

E. Discovery

1. The parties anticipate that discovery will be needed on the following subjects:

   a. The formation and terms of the Franchise Agreements and amendments;

   b. Representations and statements, and lack thereof, plaintiffs made regarding the Franchise Agreements;

   c. The performance of the parties under the Franchise Agreements;

   d. The purported termination of defendants' Franchise Agreements;

   e. The reasons for the termination; and

   f. Damages.

3. Discovery may commence on December 19, 2002.

      4.      Except as noted in subparagraphs E(8) and (9), discovery will not be conducted in phases.

      5.      Fact discovery will be completed by September 12, 2003, and expert discovery will be completed by December 17, 2003.

      6.      Plaintiffs anticipate at this time that they will require a total of approximately ten depositions of fact witnesses and reserve their right to seek leave of court to take more than ten depositions. Defendants anticipate that they will require a total of approximately ten depositions of fact witnesses and reserve their right to seek leave of court to take more than ten depositions.

      7.      The parties may request permission to serve more than 25 interrogatories.

      8.      The parties may call expert witnesses at trial. Each party will designate all trial experts on which that party bears the burden of proof and provide opposing counsel with reports from retained experts pursuant to Fed.R.Civ.P. 26(a)(2) by October 1, 2003. Depositions of such experts will be completed by October 30, 2003.

      9.      The parties will designate all trial experts in response to the opposing parties' disclosed experts as specified in subparagraph E(8) and provide opposing counsel with reports from such experts pursuant to Fed. R. Civ. P. 26(a)(2) by November 10, 2003. Depositions of such experts will be completed by December 17, 2003.

      G.      <u>Dispositive Motions</u>

Dispositive motions may be filed on or before January 30, 2004.

H.  Joint Trial Memorandum

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by February 20, 2004, if no dispositive motions are pending. Otherwise, the joint trial memorandum will be filed within 30 days after the ruling on the last pending dispositive motion.

VI.  **Trial Readiness**

The case will be ready for trial by April 26, 2004 or thirty (30) days after the filing of the joint trial memorandum, whichever is later. The parties agree to consolidate the hearing on defendants' application for a preliminary injunction with the trial pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

| PLAINTIFF, | DEFENDANTS, |
|---|---|
| DUNKIN' DONUTS | 4 DONUTS, INC., ET AL. |
| INCORPORATED, ET AL. | |
| */s/ Jeffrey Karlin* | */s/* |
| Robert L. Zisk, Esq. | Richard S. Order, Esq. |
| Eric L. Yaffe, Esq. | Federal Bar Number CT02761 |
| Jeffrey L. Karlin, Esq. | Brad N. Mondschein, Esq. |
| Christopher Loveland, Esq. | Federal Bar Number CT13800 |
| Schmeltzer, Aptaker & Shepard, P.C. | Amy Leete Van Dyke, Esq. |
| 2600 Virginia Avenue, Northwest | Federal Bar Number CT23181 |
| Suite 1000 | Updike, Kelly & Spellacy, P.C. |
| Washington, D.C. 20037-1922 | One State Street |
| (202) 333-8800-1922 | Hartford, CT  06123-1277 |
| | Tel. (860) 548-2600 |

307829                                        13

## CERTIFICATION

**THIS IS TO CERTIFY** that a copy of the foregoing has been mailed, postage prepaid, this 19th day of December 2002, to the following counsel of record:

**PAUL D. SANSON, ESQ.**
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819

**JEFFREY L. KARLIN, ESQ.**
**CHRISTOPHER LOVELAND, ESQ.**
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Avenue, Northwest
Suite 1000
Washington, D.C. 20037-1922

By: _____
Amy Leete Van Dyke, Esq.
Updike, Kelly & Spellacy, P.C

307829