# EXHIBIT E

RECEIVED
APR 03 1997

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
MAR 31  1 co PM '97
CLERK
U.S. DIST[...]
HA[...]

PARADISE FOODS, INC.,          :
                               :
    Plaintiff,                 :
                               :
v.                             :     Civil No. 3:96-02279(DJS)
                               :
                               :
LOUISE'S OWN, INC., LYNN       :
MILLER AND HENRY FIELDS,       :
                               :
    Defendants.                :

## MEMORANDUM OPINION AND ORDER

The plaintiff brings this action seeking damages due to the defendants' alleged breach of their obligations under the parties' franchise agreement. Both parties move for preliminary injunctive relief. The plaintiff seeks to enjoin the defendants from operating as the plaintiff's franchisee. The defendants seek to enjoin the plaintiff from terminating the franchise agreement, asserting that the plaintiff failed to give proper notice in accordance with the Connecticut Franchise Act, C.G.S. § 42-133e et seq. Because the facts of this case are not in dispute and the issue before the court is essentially one of statutory interpretation, the court will treat the motions for preliminary injunctions as motions for permanent injunctions.

The court finds that the plaintiff's attempted termination of the agreement, although for good cause, failed to meet the

statutory notice requirement and was therefore ineffective. Accordingly, the court will enter a permanent injunction preventing the plaintiff from terminating the franchise based on its notices of August 30 and October 30, 1996.

I. Background

The plaintiff developed and currently operates and franchises retail food franchises which specialize in the sale of pre-cooked hams, smoked turkey, and other unique food products. These establishments are known as "Heavenly Ham" stores, and are conducted in a uniform business format.

In May 1992, the defendants entered into a franchise agreement (the "agreement") with the plaintiffs, granting them a "Heavenly Ham" franchise in Stamford, Connecticut, which they currently operate. The store is known as "Heavenly Ham."

The agreement requires the defendants to pay monthly royalties and other fees to the plaintiff. The defendants defaulted on their April, May, June, and July monthly payments in 1996.

As a result of the defendants' late payments, the plaintiff, through counsel, sent a notice of termination to the defendants on August 30, 1996. The notice stated:

> Termination will be effective automatically and without further notice on the thirtieth (30th) day following your receipt of this Notice . . . . Upon termination of the Franchise Agreement, you

2

> will be required to close your store and our client will have the right to license another entity to operate a Heavenly Ham store within the are formally designated as your Territory under the Franchise Agreement.

The defendants received this notice on September 5, 1996.

On October 30, 1996, the plaintiff, apparently realizing that Connecticut law requires sixty-days written notice to cancel a franchise,[1] sent a second notice purporting to extend the number of days in the August 30, 1996 notice to sixty days, making the termination effective November 6, 1996.

The defendants continued to operate under the agreement as the plaintiff's franchisee after November 6.[2] On November 13, the plaintiff filed this complaint and moved for injunctive relief, seeking to enjoin the defendants from continuing as its franchisee. On December 2, the defendants moved for injunctive relief seeking to prevent the plaintiff from terminating the agreement. On January 24, 1997, the court held a hearing on the motions.

II. Injunctive Relief

The motions before the court seek preliminary injunctive relief. However, the facts of this matter are not in dispute; the

---

[1] There are exceptions under the Connecticut Franchise Act that are not relevant to this case.

[2] There is some dispute as to whether the defendants are current in their payments; however, determination of this issue is not necessary for ruling on these motions.

3

only issue to be resolved is a legal one, viz., the interpretation of the Connecticut Franchise Act. Accordingly, the court will construe the motions as motions for permanent injunctive relief. See Standard Oil Co. of Texas v. Lopeno Gas Co., 240 F.2d 504, 508 (5th Cir. 1957). The proper standard for granting temporary injunctive relief is well-settled in the Second Circuit. The party seeking relief is required to demonstrate "either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly towards the party requesting the relief." Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247, 250 (2d Cir. 1973). See Jackson Dairy, Inc. v. H.P. Hood & Sons, 596 F.2d 70, 72 (2d Cir. 1979); John B. Hull, Inc. v. Waterbury Petroleum, 588 F.2d 24, 27 (2d Cir. 1978).

The standard for a permanent injunction is essentially the same as for a preliminary injunction. The crucial difference is that a party seeking a permanent injunction must actually succeed on the merits. Civic Assoc. of the Deaf of New York City, Inc. v. Giuliani, 915 F. Supp. 622, 631-632 (S.D.N.Y. 1996)(citations omitted).

With this standard in mind, the court first turns to the

4

question of whether either party has succeeded on the merits.

III. <u>Legality of the Attempted Termination of the Agreement</u>

The plaintiff argues that the two notices sent the defendants terminated the franchise agreement effective November 6, 1996. The defendants allege that the agreement was never legally terminated under Connecticut law, and is therefore currently effective, allowing them to operate as the plaintiff's franchisee.

A. <u>The Statutory Scheme</u>

The relevant portion of the Connecticut Franchise Act states:

> No franchisor shall, directly, or through any officer, agent or employee, terminate, cancel or fail to renew a franchise, except for good cause which shall include, but not be limited to the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement . . . . The franchisor shall give the franchisee written notice of such termination . . . at least sixty days in advance to such termination, cancellation or failure to renew with the cause stated thereon . . . .

C.G.S. § 42-133f(a).

On its face, the statute requires that a franchisor seeking to terminate an agreement to meet two conditions: (1) the termination must be for good cause; and (2) the franchisor must give sixty-days written notice prior to the effective termination. The plaintiff claims it has met both of these requirements; the defendants deny that the late payments constitute "good cause" for terminating the agreement, and that the plaintiff failed to give proper notice of

5

the termination.

B.  <u>The Good Cause Requirement</u>

The parties agree that the appropriate standard to apply for determining whether there was good cause for termination of the agreement is found within the statute itself: "[G]ood cause . . . shall include, but not be limited to the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement . . . ." C.G.S. § 42-133f(a). Good cause exists when the franchisee materially breaches the agreement. <u>Petereit v. S.B. Thomas, Inc.</u>, 63 F.3d 1169, 1184 (2d Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 1351 (1996).

The plaintiff asserts that the defendants' late payments of royalties and fees constitute a material breach of the franchise agreement, and that the language of the agreement itself allows the plaintiff to terminate the agreement. The defendants, while conceding that they were indeed late paying the royalties and fees, do not challenge the plaintiff's assertion that the late payments were a breach of the agreement, but ask the court to determine whether the late payments alone constitute good cause for termination.

The court agrees with the plaintiff that the franchise agreement specifically addresses the issue of whether the plaintiff

6

had good cause to terminate the agreement, and the agreement is controlling here.

The franchise agreement states in Section 14 the "Events of Default" which the "Franchisee hereby agrees are material to and of the essence of this Agreement." Section 14.1 states that an event for default occurs when "Franchisee fails to pay when due or within ten (10) days after the due date thereof any Franchise Fee, Continuing Royalty, advertising fee or other sum . . . ." The Act, on its face, does not prohibit such clauses in franchise agreements. The defendants stipulate that they had a history of late payments. The court finds the defendants materially breached the agreement, thereby constituting good cause within the meaning of the first prong of the Act's termination provision.

C. *The Notice* Requirement

The Act's second requirement for proper termination of a franchise agreement is the requirement of a written notice received by the franchisee sixty days in advance of the termination. "The franchisor *shall* give the franchisee written notice of such termination [for good cause] . . . at least *sixty days in advance* to such termination . . . ." C.G.S. § 42-133f(a)(emphasis added). There appears to be no Connecticut case law interpreting the sixty-day notice provision of the Act; therefore, the court will

7

interpret the statute as it is written. "Where the language used by the legislature is plain and unambiguous there is no room for construction by the courts and the statute will be applied as its words direct." Muha v. United Oil Co., 180 Conn. 720, 730 (1980)(citations omitted).

The plaintiff claims, without citing any relevant Connecticut case law, that its attempt to give retroactive notice, via the second thirty-day notice sent on October 30, "cured" the defective August 30 notice, which gave only thirty-days notice. The statute unambiguously requires that written notice be given sixty days in advance of the effective termination; it does not contain any language allowing retroactive notices.

The plaintiff relies on Petereit, supra, for support for its theory that even if proper notice was not given, the second mandate of the statute is purely "procedural" and is not required to formally terminate a franchise agreement under the Act. This interpretation of Petereit is inaccurate. In Petereit, the Court of Appeals found the franchisor had "constructively terminated" the franchisee--the franchisee's business had been completely destroyed by the acts of the franchisor. The court held that the only remedy at that point was breach of contract damages due to the failure of the franchisor to give notice of the constructive termination that

8

had occurred because of the franchisor's acts. The court did not hold that the notice requirement under the Act is not necessary where, as here, a "formal termination" attempt has occurred. The court merely held that Act covers both constructive and formal terminations. Petereit, 63 F.3d at 1182.

Here, the plaintiff does not claim to have "constructively terminated" the defendants. Indeed, the plaintiff denies having constructively terminated the defendants, thus taking the case completely out of the purview of Petereit. Here, there was a formal, good cause termination attempt with a defective notice given and the franchisees' business is still in operation; in Petereit, there was an "informal," complete destruction of the franchisee's business where there could only be after-the-fact damages realized by the franchisee.

The court finds that the attempt by the plaintiff to retroactively give sixty-days notice to the defendants was insufficient to meet the notice requirement of the Act. The plaintiff, having failed to comply with the statutory requirement for termination of the franchise agreement, did not terminate the agreement effective November 6, 1996.

IV. *Irreparable Injury*

The court holds that the defendants have succeeded on the

9

merits. The court next turns to the question of whether the defendants have shown they will suffer irreparable injury should the franchise be terminated.

The defendants' store is a "Heavenly Ham" franchise, and goes by that name. Its principal appeal to customers is that it sells the plaintiff's specialty products. The sudden termination of the franchise and the ensuing inability to sell these unique products would likely result in the the business' demise. This type of injury "is an act that threatens an ongoing business with destruction." Carlos v. Philips Business Systems, Inc., 556 F. Supp. 769, 774 (E.D.N.Y. 1983). Therefore, the defendants have shown that they will suffer sufficient harm to justify the entry of injunctive relief.

V.  Conclusion

For the above reasons, the plaintiff's application for preliminary injunction [Doc. No. 5] is DENIED. The defendants' application for preliminary injunction, construed as a motion for a permanent injunction, [Doc. No. 15] is GRANTED.

The plaintiff is HEREBY ENJOINED from terminating the franchise agreement based on notices of termination of August 30 and October 30, 1996.

The parties are to file a status report by April 15, 1997

10

setting forth what discovery remains to be taken and any legal proceedings that remain to close this case and render a final judgment.

It is so ordered.

Dated at Hartford, Connecticut, this __31st__ day of March, 1997.

                                                _____
                                                DOMINIC J. SQUATRITO
                                                UNITED STATES DISTRICT JUDGE

11