# EXHIBIT B

8. A. During the term of this Agreement or any extension thereof, and for a period of two (2) years thereafter, regardless of the cause of termination, neither FRANCHISEE, nor any partner, if FRANCHISEE is a partnership, nor any shareholder, if FRANCHISEE is a corporation, shall, except with respect to the ownership or operation by the FRANCHISEE of additional licensed DUNKIN' DONUTS shops: **Restrictions on the FRANCHISEE'S Activities**

8. A.1. Divert or attempt to divert any business or customer of the DUNKIN' DONUTS SHOP to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with DUNKIN' DONUTS' PROPRIETARY MARKS and the DUNKIN' DONUTS SYSTEM;

8. A.2. Employ or seek to employ any person who is at that time employed by DUNKIN' DONUTS or by any other DUNKIN' DONUTS franchisee, or otherwise directly or indirectly induce such person to leave such employment;

8. A.3. Own, maintain, engage in, be employed by, or have any interest in any other business which sells or offers to sell any product of a type offered by a DUNKIN' DONUTS shop; provided that, during the two (2) year period following expiration or termination of this Agreement only, the provisions of this subparagraph 3. shall not apply to another business located more than five (5) miles from the DUNKIN' DONUTS SHOP or from any other DUNKIN' DONUTS shop. Either party to this Agreement, upon notice in writing to the other, shall have the right to have determined whether said five (5) mile radius is a reasonable restriction on FRANCHISEE's activities during said two (2) year period by requesting that the matter be submitted to arbitration in accordance with the rules of the American Arbitration Association then applicable for commercial disputes. In such event, each party shall select one arbitrator and the two shall select a third and the decision of the arbitrators shall be final and binding upon the parties. FRANCHISEE further agrees that, in the event arbitration is requested, FRANCHISEE will engage in no competitive activities pending resolution of the dispute; or

8. A.4. Communicate or divulge to, or use for the benefit of, any other person, persons, partnership, association or corporation any information or knowledge concerning the methods of constructing, equipping or operating a DUNKIN' DONUTS shop and all other information or knowledge which DUNKIN' DONUTS deems confidential which may be communicated to FRANCHISEE, or of which FRANCHISEE may be apprised by virtue of FRANCHISEE's operation under the terms of this Agreement. FRANCHISEE shall divulge such confidential information only to such of its employees as must have access to it in order to operate the licensed business. Any and all information, knowledge and know-how including, without limitation, drawings, materials, specifications, techniques, and other data, which DUNKIN' DONUTS designates as confidential shall be deemed confidential for purposes of this Agreement. DUNKIN' DONUTS shall have the non-exclusive right to use and incorporate in the DUNKIN' DONUTS SYSTEM, for the benefit of itself and other franchisees of the DUNKIN' DONUTS SYSTEM, any modifications, changes, and improvements developed or discovered by FRANCHISEE or FRANCHISEE's employees or agents in connection with the licensed business, without any liability or obligation to the developer thereof.