# EXHIBIT D

## SCHMELTZER, APTAKER & SHEPARD, P.C.
COUNSELORS AT LAW
THE WATERGATE
2600 VIRGINIA AVENUE, NORTHWEST, SUITE 1000
WASHINGTON, D.C. 20037-1922
WEB SITE http://www.saspc.com
E-MAIL sas@saslaw.com
FAX (202) 337-6065
(202) 333-8800

September 30, 2003

**VIA FACSIMILE - (860) 275-8101**
<u>**AND FIRST CLASS MAIL**</u>

Richard S. Order, Esq.
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT  06103-3702

      Re:    *Dunkin' Donuts Incorporated, et al. v. 4 Donuts, Inc. et al.*

Dear Richard:

      This is in response to your letter of September 19, 2003 with respect to Dunkin's responses to the latest round of written discovery in the above-referenced case. I appreciate you giving us more time to respond which was made necessary by my trial schedule.

### Dunkin' Donuts USA, Inc.

      Dunkin' Donuts USA, Inc. will serve responses to the written discovery requests. These responses will be forwarded to you this week. Not surprisingly, the responses will be no different than those already submitted by Dunkin' Donuts Incorporated and any supplements thereto based on the comments and questions raised in your September 19th letter.

### Requests for Admission

      <u>Requests Nos. 1 and 2</u>:  There is nothing incomplete about the response and nothing inconsistent with either Deposition Exhibit 58 or Joe McGowan's testimony. Therefore, we will not amend our response to either of these requests for admission.

      <u>Requests Nos. 3 through 7</u>:  We disagree that these requests should be admitted and stand by our previous denials. There is simply no way to tell from the records whether the daily cash reports or the weekly fees cards included sales made to the investigators. Joe McGowan said nothing in his testimony that contradicted this position.

      <u>Request Nos. 8</u>:  This request asks for admission of a very broad statement, i.e. that "plaintiffs have no substantiation for or corroboration of the accusations made against the

Schmeltzer, Aptaker & Shepard, p.c.

Richard S. Order
September 30, 2003
Page 2 of 4

defendants by Richard Czuprynski to the Allied Domecq QSR Consumer Care Center on November 16, 2001 . . . ." There are at least nine different factual statements made by Mr. Czuprynski that are set forth in the Consumer Care Center report, including the fact that he was employed by Glenn Stetzer and had been fired in September 2001. In addition, there is also evidence that certain employees, including managers, were paid with both payroll and non-payroll checks and that the letter checks were cashed rather than deposited into anyone's bank account. Therefore, there is ample basis for denying Request No. 8.

As for your contention that we did not respond to the Requests for Admission within the deadline, we responded within 30 days of service of the responses to us at our Washington offices. You made no effort to fax the requests to us at the time and merely mailed them to us, knowing that we would be responding to them on that basis. Your hand-delivery of the requests to local counsel will no doubt be seen as a mere litigation tactic and not a basis for deeming all of the requests to be deemed admitted. As with all of the other issues raised in your letter, I would be happy to discuss this matter with you.

**Interrogatories**

Interrogatory No. 1:  We had asked for the production of defendants' I-9 and W-2 forms which defendants steadfastly refused to produce until the Court granted our Motion to Compel on September 11th. Given that, I am not sure why it is that you contend that that it was "inappropriate" for us to state that our investigation is continuing and that we will supplement our answer if necessary. If defendants had produced these records earlier in the case, it might not have been necessary to respond to this interrogatory in this manner. We stand by our answer to Interrogatory No. 1 and will not amend it. After we receive the forms we requested and have a chance to depose the defendants, then we will supplement our response, if necessary.

Interrogatory No. 2:  We will respond to this inquiry by letter tomorrow.

Interrogatory No. 3:  It is well settled that evidence concerning the relationship between franchisors and franchisees other than ones that are at issue in a particular case has no legal significance and thus is completely irrelevant to this action. *See generally The Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 279 (7th Cir. 1992) (fact that franchisor "treated other franchisees more leniently is no more a defense to a breach of contract than laxity in enforcing the speed limit is a defense to a speeding ticket"); *Hall v. Harleysville Ins. Co.*, 164 F.R.D. 172, 173 (E.D. Pa. 1995) (files of third parties not "relevant to this litigation at all"); *Smith v. Dowson,* 158 F.R.D. 138, 141 (D. Minn. 1994) (discovery of other investigations "wholly irrelevant"). Nevertheless, we did provide evidence of two different franchisees in the New England market who had off-premises catering and how they were treated. Requiring us to survey the entire Dunkin' system for similar examples would

SCHMELTZER, APTAKER & SHEPARD, P.C.

Richard S. Order
September 30, 2003
Page 3 of 4

be unduly burdensome, especially in light of the case law holding that such evidence is entirely irrelevant.

  Interrogatory No. 4: It is our understanding that although Corrie Plasse prepared the notes section of the Customer Care Center report, she did not prepare the portions which identified the BC, OC and FMM. The answer to Interrogatory No. 4 does nothing more than reflect these facts.

  Interrogatories 5 through 9: It is my understanding that today's depositions of Kathy Murphy and Ann Sullivan dealt with these issues. As far as we know, we have provided you with all the copies of the report that Dunkin' has in its possession.

  Interrogatory No. 10: We can confirm that John Capicchioni no longer works for Dunkin' Donuts.

**Document Requests**

  Request Nos. 1, 6-9 and 12: All responsive documents have been produced with respect to these requests.

  Request No. 3: To clarify, Dunkin' objects to the production of materials relating to its general loss prevention procedures and investigative techniques for detecting franchisees who underreport their gross sales—not just those techniques used on defendants' franchises. Only a select few Dunkin' employees have access to this information, and its disclosure in this litigation would irreparably harm Dunkin's efforts to ensure that all of its franchisees abide by a common set of rules and that each pays its fair share of the franchise and advertising fees that support the Dunkin' system. Moreover, forced disclosure of Dunkin's loss prevention techniques and procedures in this action would mean that each and every future procedure and technique that is created would likewise be discoverable, and thus Dunkin' (as well as any other franchisor) would never be able to protect its proprietary loss prevention investigation procedures. Even if disclosure of the general loss prevention techniques and procedures were harmless—which it most certainly is not—they have no relevance to the issues in this lawsuit.

  Dunkin's loss prevention techniques and procedures constitute trade secrets. *E.g., Peat, Marwick, Mitchell & Co. v. Creditor's Comm.*, 65 Bankr. 886, 887 (N.D.N.Y. 1986) (stating that audit procedures "constitute 'trade secrets' under rule 26(c)(7)."). Moreover, they certainly constitute confidential commercial information under Fed. R. Civ. P. 26(c)(7). As with other types of business methods and procedures, Dunkin's loss prevention procedures are entitled to protection. *See, e.g., Pate v. Nat'l Fund Raising Consultants, Inc.*, 20 F.3d 341 (8th Cir. 1994) (holding that a collection of time- and cost-saving measures which permitted customers to generate substantial income in a short period of time were protectable methods); *Snelling &*

SCHMELTZER, APTAKER & SHEPARD, P.C.

Richard S. Order
September 30, 2003
Page 4 of 4

*Snelling, Inc. v. Armel*, Inc., 179 U.S.P.Q. 699 (W.D. La. 1973) (finding training manuals, instructional guides, and methods of operation to be confidential).

    Defendants can show no need to delve into Dunkin's generalized loss prevention procedures, especially given the harm that would come to Dunkin' by their disclosure. Dunkin' has severely limited distribution of its loss prevention techniques and procedures, and has gone to great lengths to prevent their inadvertent disclosure. Only a select few Dunkin' employees have access to Dunkin's loss prevention procedures and techniques. The only individuals with knowledge of Dunkin's loss prevention techniques and procedures are selected members of the Loss Prevention Department and Dunkin' Donuts' Legal Department. Moreover, a confidentiality agreement is patently insufficient in this instance to protect Dunkin's rights. The possibility of the inadvertent or deliberate disclosure of the extremely confidential information contained in the manual cannot be entirely eliminated.

    We have successfully litigated this issue on several occasions and, although we hope that we do not have to do so here, will raise these issues with the Court if necessary.

    <u>Request No. 4</u>: A confidentiality agreement is necessary to protect Mr. McGowan's privacy interests in his employment records. We have forwarded you draft confidentiality agreements on two previous occasions in this suit and propose moving forward on that basis.

    <u>Request No. 8</u>: We will provide a response to this inquiry by letter tomorrow.

    <u>Request No. 10</u>: We will be providing all documents identified by the subpoena to Hassett & George to Judge Margolis by October 3, 2003, including billing records. It is our understanding that she will decide which of these documents will then be released to the defendants.

Sincerely,

Jeffrey L. Karlin

cc:    Eric Palmquist (via facsimile)
       Amy Leete Van Dyke (via facsimile)
       Robert K. Walsh (via First Class Mail)