# EXHIBIT E

RICHARD S. ORDER
(860) 275-8140

AXINN, VELTROP & HARKRIDER LLP
90 STATE HOUSE SQUARE
HARTFORD, CONNECTICUT 06103-3702
TEL: (860) 275-8100
FAX: (860) 275-8101

1370 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
TEL: (212) 728-2200
FAX: (212) 728-2201

1801 K STREET, N.W. SUITE 411
WASHINGTON, D.C. 20006
TEL: (202) 912-4700
FAX: (202) 912-4701

October 6, 2003

VIA FAX (202) 337-6065

Jeffrey L. Karlin, Esq.
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Avenue, N.W.
Suite 1000
Washington, DC 20037

Re: Dunkin' Donuts Incorporated, et al. v. 4 Donuts, Inc., et al.

Dear Jeff:

I am writing in response to your letter dated September 30, 2003 regarding the sufficiency of your responses to our requests for admission, interrogatories and document requests. While I appreciate your effort in responding to the concerns I raised in my letter dated September 19, 2003, I still am not satisfied with your answers. I am writing now, therefore, in a final attempt to resolve this dispute without assistance from the court.

**A. Service and Waiver**

You contend that your response to our First Requests for Admission fell within the 30-day period for responses mandated by Federal Rule of Civil Procedure 36(a) because our hand delivery of them to your local counsel was "not a basis for deeming all of the requests to be admitted." I disagree. You have utilized your local counsel to deliver documents to us by hand, including Dunkin' Donuts' fourth document request and third set of interrogatories served by hand on August 12, 2003, with the obvious intention of depriving us of three additional days to respond due to service by mail and of making sure that the discovery requests were served in a timely fashion to require a response before the discovery deadline of September 12, 2003 then in effect. Also, while you complain that we did not fax the requests to you, I find it difficult to believe that your local counsel did not inform you of the service of these documents on August 6th, in which case you could have requested that they fax the documents to you.

Even if we assume you are correct in ignoring our personal service on your local counsel and even if you were entitled to the extra three days for service by mail under Federal Rule of Civil Procedure 6(e), Dunkin' Donuts Incorporated's responses were still served after the 30-day deadline, which would have been September 8, 2003.

Since plaintiff Dunkin' Donuts USA, Inc. has not responded to the Request for Admission whatsoever, your argument is irrelevant, and, therefore, it has admitted all our requests for admissions.

**B. <u>Requests For Admission</u>**

In my September 19th letter, I invited you to explain which portions of each request you found "vague and ambiguous," which was your repeated objection to each of our requests. You chose not to do this in your reply.

For example, with respect to Request No. 8 regarding substantiation of Richard Czuprynski's accusations, you stated that "there is evidence" to corroborate his accusations regarding payment of employees, yet you cited none. Also, because you do not claim to have evidence regarding the remainder of Mr. Czuprynski's accusations, these should have been admitted, because Rule 36 states: "the party shall specify so much of it as is true and qualify or deny the remainder."

You also attempted to avoid answering the request by misinterpreting it. You stated in your letter that Mr. Czuprynski made "at least nine different factual statements," and cited his employment record as an example. You implied, therefore, that because you had substantiation for some of these "factual statements," your response to the request – which was a general denial – was proper.

Our request, however, regarded his "accusations made against defendants." This phrase does not include statements that are not accusations, such as his employment record. It is clear, therefore, that you attempted to skirt this point by misreading the request.

Furthermore, I invite you to review the deposition transcript of Mr. Czuprynski, particularly pages 255 through 258, where he admits that certain of his allegations were complete falsehoods. It is very difficult to have evidence corroborating a lie. Mr. McGowan also stated that there was no corroborating evidence for Mr. Czuprynski's allegations in his deposition at pages 179-180.

Regarding our other requests, in my letter dated September 19, 2003, I explained why our Request Nos. 1-7 should have been admitted. I will not run through the details again, except to point out that given Mr. McGowan's testimony at his deposition, his Case Summary marked as Deposition Exhibit 58, and the lack of any evidence to the contrary, it is very difficult to defend your denial. Taking Request No. 3 as an example, your denial boils down to this: that defendants' reporting of a $260 payment is not linked to the $260 payment made in the same week by plaintiff's private investigator. This implies that you believe another customer made,

coincidentally, a $260 payment during this week and that similar coincidences occurred for each of the other disputed sales. Without any evidence of these coincidental payments, it is hard to argue that your denials were made in good faith.

You claim there is evidence of Mr. Czuprynski's accusations that some employees "were paid with both payroll and non-payroll checks and that the letter [sic] checks were cashed rather than deposited into anyone's bank account." Not only is this statement incomprehensible, but there is no such evidence and you have not bothered to produce such evidence even though I asked you to do so.

**C. Second Set of Interrogatories**

Interrogatory No. 1: You state in your letter that you did not answer this interrogatory because defendants had not produced I-9 and W-2 forms. However, your answer to the interrogatory stated that "the answer to this Interrogatory may be derived or ascertained from Defendants' general ledgers and banking records . . . ."

The interrogatory asked for the identities of foreigners working illegally. In other words, it asked for names. If you compiled a list of names from your inspection of the ledgers and banking records, then referring us back to our documents was improper because it forced the defendants to review the entirety of these records to create the same list that you had already created. Rule 33(d) requires you to more specifically refer to particular documents.

If you have not found any evidence of foreigners working illegally from defendants general ledgers and banking records, then you should have said so in your answer.

Interrogatory No. 2: In your letter you stated that you would respond by October 1, 2003, but I have received no such response.

Interrogatory No. 3: You state that evidence of plaintiffs' actions toward other franchisees' catering businesses is "completely irrelevant to this action." The franchise agreements signed by defendants, however, were standardized agreements used by plaintiffs for all their franchisees. Even if some franchise agreements differ slightly, the language contained in sections 8.A.3 or 8.0.3. of defendants' franchise agreements must be the same or similar to language used in every Dunkin' franchise agreement. It is the interpretation of this language that is at issue in this case.

Here, plaintiff contends that the language in section 8.A.3. or 8.0.3 of defendants' standardized franchise agreements prohibits catering. At the same time, plaintiff contends that its interpretation of this same language in similar circumstances with other franchisees is irrelevant. The Second Restatement of Contracts, however, states that standardized agreements are "interpreted wherever reasonable as treating alike all those similarly situated." Restatement Second §211(2). Here, Dunkin' franchisees throughout the system that conduct catering businesses are "similarly situated." Because the franchise agreements will be interpreted as

treating these franchisees alike, the information regarding Dunkin's interpretation of the same franchise agreement with respect to and treatment of other franchisees becomes highly relevant.

Furthermore, if plaintiff had interpreted this language differently with other franchisees, then this would be evidence that plaintiffs brought this action as retribution for Glenn Stetzer's earlier lawsuit and that the catering charge in count V of the complaint was a sham. In the context of the charges made in this litigation, therefore, this interrogatory is highly relevant.

It is also black-letter law that the relevant inquiry when interpreting a contract is "the meanings attached by each party *at the time the contract was made.*" E. Allen Farnsworth, Contracts 483-484 (1982)(emphasis added). The meaning attached by the plaintiff to sections 8.A.3. and 8.0.3. at the time the franchise agreements were made can best be assessed by seeing how plaintiff interpreted the same or similar language with other franchisees.

The cases you cite are not on point. The Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273 (7th Cir. 1992), was a preliminary injunction ruling with no allegations of improper motive on the part of the franchisors. Smith v. Dowson, 158 F.R.D. 138 (D. Minn. 1994), was an action for false arrest under 42 U.S.C. § 1983 – "Civil action for deprivation of rights." Hall v. Harleysville Ins. Co., 164 F.R.D. 172 (E.D. Pa. 1995), dealt with a document request by the plaintiffs for the names of people whose credit reports were pulled by defendants so that plaintiffs could learn about "other lawsuits, claims or notices lodged" against the defendants. Significantly, the court stated that the plaintiffs should instead fashion their request as "an interrogatory asking about other lawsuits. . . ." Id. at 173.

Interrogatory No. 10: Instruction No.8 for the second set of interrogatories stated: "With respect to a person, 'identify' means to provide the person's name, title or position, business and home addresses and telephone numbers (or his or her last known business and home addresses and telephone numbers)." Please provide all of this information for Mr. Capicchioni.

**D. Document Requests**

Request No. 3: I disagree that the Loss Prevention Underreporting Manual is irrelevant. The Manual was used to conduct the investigation of the defendants. Because one of the primary accusations in this case is that plaintiffs' brought this lawsuit as retribution against defendants, evidence that the procedures outlined in the Manual were not followed – or that following proper procedures would show defendants were not underreporting – would be highly material.

You also state that a confidentiality agreement is insufficient here, but you do not explain why. We would be willing to sign such an agreement in order to mollify any concerns you may have.

Though you claim Dunkin' has successfully litigated this claim before, the cases you cite are not on point. In Snelling, Inc. v. Armel, Inc., 179 U.S.P.Q. 699 (W.D. La. 1973), the agreement signed by the franchisees stated that certain manuals were confidential and not to be used by franchisees to compete with plaintiff. The plaintiff then sought an injunction when the

franchisees used the manuals to set up businesses that compete with the plaintiff. That is hardly the situation here.

Similarly, Pate v. Nat'l Fund Raising Consultants of Arkansas, Inc., 20 F.3d 341 (8th Cir. 1994), involved franchisees who used operation materials described in the franchise agreement as trade secrets to compete against the franchisor.

In Peat, Marwick, Mitchell & Co., v. Creditor's Committee of Northeast Dairy Coop. Fed'n, Inc., 65 B.R. 886 (N.D.N.Y. 1986), the plaintiff, an accounting firm, sought to protect the disclosure of its auditing methods to a creditor's committee whose accountant was plaintiff's chief competitor. This situation is analogous to Dunkin' revealing its donut recipe to Krispy Kreme, which is not the case here.

Request No. 8: In your letter you stated that you would respond by October 1, 2003, but I have received no such response.

Please consider the issues I have raised in this letter and respond as soon as possible. I would like to resolve these disputes without having to seek assistance from the Court but will do so if you give us no other choice.

Sincerely,

Richard S. Order

RSO/pas

cc: Glenn M. Stetzer
Paul L. Gilmore, Esq.
Robert Walsh, Esq.