

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

No. 3:02CV1920

DUNKIN' DONUTS INCORPORATED AND DUNKIN' DONUTS USA, INC.

VS

4 DONUTS, INC., GRANDO, INC., GLENN STETZER, KATHLEEN STETZER, GEORGE GERMANO AND JAMES MCMANAMA

Deposition of: GLENN STETZER, taken before Barbara L. Murphy, Licensed Shorthand Reporter, License No. 305 and Notary Public within and for the State of Connecticut, held at the offices of Shipman and Goodwin, One American Row, Hartford, Connecticut on October 13, 2003 commencing at 9:05 a.m.

                                                                    all done the end of the month.

Q. Is it still in operation? Is the business still in operation?

MR. ORDER: Which business?

MR. KARLIN: 3 Kings?

THE WITNESS: No.

Q. (By Mr. Karlin) Is the gas station convenience store still in operation?

A. That is 3 Kings. No.

Q. So is the gas station convenience store shut down? I'm just making sure I understand that.

A. Correct.

Q. In terms of the severance pay that you're paying Mr. McManama.

Who will make the decision as to the length of the severance pay?

A. Who made?

Q. Who will make?

A. I will.

Q. What factors will go into whether the severance pay continues?

MR. ORDER: Objection.

THE WITNESS: I'm undetermined at this time how I'm going to put a number on it.

Q. (By Mr. Karlin) Is it tied into anything?

A. It's just ultimately my decision. I'd like to see what happens in the future.
Q. See what happens with what?
MR. GILMORE: Objection as to form.
THE WITNESS: See how my health is, see how I feel.
Q. (By Mr. Karlin) Why is that connected to his severance package?
A. Just something I want to think about.
Q. If your health got worse, how would that affect your severance package?
MR. GILMORE: Objection as to form.
MR. ORDER: Objection. Asks for speculation.
THE WITNESS: It's speculation. I don't know when I'm going to stop the severance pay.
Q. (By Mr. Karlin) Well, you tied the -- or you tied the continuation or the non-continuation of the severance pay to your health.
A. Not solely to my health, no.
Q. Partly then; is that correct?
A. A portion.
Q. What connection is there? Can you explain that?
A. How I make my mind up at the time. There is

A. I haven't been in that station in a couple of years.

Q. Have you -- do you know how close it is to the nearest Dunkin' Donuts?

A. A mile.

Q. Do you know the franchisee of that Dunkin' Donuts that's within a mile of the Aroma's?

A. One is mine and the other mile, Branford Hill could be a man by the name of Joe Calella.

Q. Could you spell that, please?

A. I don't have a clue.

Q. Joe Calella?

A. Calella.

Q. Calella. Thank you. And which of your stores is Aroma's a mile away from?

A. Frontage Road.

Q. When did you first become aware of Aroma's Coffee?

A. Just recently.

Q. How did you find out about it?

A. I heard about it I believe from my -- my general manager picked up a wholesale account to a Citgo gas station.

Q. Your general manager is Chris Matusik; is that correct?

A. Yes.
Q. Is that the person you were just referring to?
A. Yes.
Q. Did he discuss with you the fact that he picked up a wholesale account at the Citgo gas station?
A. Yes.
Q. When did he discuss that with you?
A. I think about a month ago.
Q. What did he tell you about it?
A. That somebody called up, wanted wholesale doughnuts delivered.
Q. And how frequently did they -- how frequently did they want delivery?
A. I don't know.
Q. And in what quantity did they want delivery?
A. I don't know.
Q. In which shop -- I'm sorry, is your doughnut business currently supplying Aroma's Coffee?
A. I don't know. Aroma's coffee? No. I thought you meant doughnuts, I'm sorry.
Q. I'm sorry, we were -- let me ask the question again.
MR. ORDER: You're using coffee as a

                                                                    pronoun, he's using it as --

MR. KARLIN: I'm sorry.

Q. (By Mr. Karlin) Is your doughnut business currently supplying Aroma's?

MR. ORDER: Proper noun, not pronoun.

THE WITNESS: Aroma's? No. As far as I knew it was doughnuts to a Citgo gas station.

Q. And did you at any time become aware that the Citgo gas station -- let me take this back a minute.

Did you ever become aware that the Citgo gas station was the same place where Aroma's was located?

A. Just recently.

Q. Okay. How long ago in terms of just recently?

A. A couple days ago.

Q. At any time between the conversation one month ago with Chris Matusik and two days ago, has your business been delivering doughnuts and other goods to Aroma's?

A. As far as I know Chris arranged to have doughnuts delivered to the Citgo gas station.

Q. Do you know who at the Citgo gas station was his contact?

A. I do not.

Q. Other than Aroma's Coffee -- let me make sure I understand this.

Aroma's Coffee is located in the Citgo gas station; is that correct?

MR. GILMORE: Objection as to form.

THE WITNESS: I'm not sure but I think so.

Q. (By Mr. Karlin) Did you have any reason to believe that the doughnuts were staying at the Citgo gas station rather than being delivered to Aroma's?

MR. ORDER: Objection to form.

THE WITNESS: I thought it was a Citgo gas station until recently.

Q. (By Mr. Karlin) Now do you have a different understanding?

A. It looked like it was Aroma's, yeah.

Q. When you say it looked like Aroma's --

A. It looked like a bakery sign on the outside of the building.

Q. And are you -- is your doughnut business currently supplying the Citgo gas station?

A. No.

Q. Why is that?

A. When I found out about it, I stopped it.

Q. What specifically did you find out?

A. I just found out a couple days ago it looked like Aroma's instead of a Citgo gas station and I instructed Chris to stop it.

Q. When you say it looked like, did you go by the Aroma's store at that time?

A. Drove by it, correct.

Q. Was that the first time you had driven by it?

A. In a very long time.

Q. Did you go into the store?

A. No.

Q. Why is it that you instructed Chris to stop deliveries to Aroma's?

A. I didn't want to put doughnuts so close to my other store.

Q. I'm sorry?

A. I didn't want to put doughnuts so close to my other store.

Q. Did you have a conversation with Chris -- did you have an additional conversation with Chris besides instructing him not to send doughnuts to Aroma's?

A. No.

MR. ORDER: Objection.

AXINN, VELTROP & HARKRIDER LLP

90 STATE HOUSE SQUARE
HARTFORD, CONNECTICUT 06103-3702
TEL: (860) 275-8100
FAX: (860) 275-8101

ERIC L. PALMQUIST
(860) 275-8110

1370 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
TEL: (212) 728-2200
FAX: (212) 728-2201

1801 K STREET, N.W., SUITE 411
WASHINGTON, D.C. 20006
TEL: (202) 912-4700
FAX: (202) 912-4701

October 17, 2003

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
and
VIA FAX (202) 337-6065

Dunkin' Donuts Incorporated
c/o Christopher M. Loveland, Esq.
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Avenue, N.W.
Suite 1000
Washington, DC 20037

Re: Dunkin' Donuts Incorporated, et al. v. 4 Donuts, Inc., et al.

Dear Chris:

I am writing under Paragraph 9 of the Franchise Agreements to Dunkin' Donuts Incorporated in response to the so-called "Supplemental Notice of Default and Termination" dated October 3, 2003 sent by you to Glenn Stetzer, 4 Donuts, Inc., and Grando, Inc. in care of our office. I was the first attorney at our office who saw that letter and did not see it until October 6.

This "Supplemental Notice" is void as a matter of law and is factually baseless. Under the Connecticut Franchise Act, a franchisor cannot simply "supplement" or amend a previously served notice of termination, particularly after more than 11 months have passed as in this case. Furthermore, for the reasons stated below and as you know from the testimony in Glenn Stetzer's deposition on October 13 and 14 and Jim McManama's deposition on October 15, Dunkin' Donuts Incorporated has once again jumped the gun, assumed the worst, and failed to investigate the facts in its never-ending vendetta against our clients. Consequently, we demand that Dunkin' Donuts Incorporated withdraw the "Supplemental Notice" and withdraw its request to amend the Complaint to add a new Count XIV based on the "Supplemental Notice."

The new charge in the "Supplemental Notice" is that Mr. Stetzer breached the franchise agreements by supplying donuts "to a competing doughnut business called Aromas Coffee and Bake Shop."

As Mr. Stetzer testified, he understood that the account name was the Citgo gas station, not Aromas. He began supplying the Citgo station as a wholesale account in early August 2003. Before doing so, he directed his General Manager, Chris Matusik, to follow Dunkin' Donuts' procedures. On July 25, 2003, before beginning to service the account, Mr. Matusik sent a "Dunkin' Donuts Wholesale Account Registration" notice to Mr. Stetzer's Business Consultant, Frank Basler. I have enclosed a copy of the notice sent to Mr. Basler.

Under Dunkin's procedures detailed in the memorandum dated February 4, 2002 and entitled, "Approval and Reporting of Wholesale Accounts," "[t]he wholesale account shall be deemed approved by Allied Domecq QSR unless you are notified by certified mail that the account is not approved." I have enclosed a copy of the memorandum. Mr. Stetzer was authorized by Dunkin' Donuts Incorporated, therefore, to begin serving the wholesale account unless Mr. Basler notified him within seven days that Dunkin' Donuts disapproved the account. Mr. Basler provided no such notification. Accordingly, our clients began delivering product to the Citgo station in early August 2003 and reported such wholesale sales on the automated system by increasing the number of wholesale accounts and including the sales to the Citgo station in the total dollar amount for the week.

Additionally, on September 15, 2003, during an inspection of Mr. Stetzer's stores by Mr. Basler, Mr. Matusik provided Mr. Basler with a list of the wholesale accounts, including the new Citgo account. Once again, Mr. Basler voiced no objection to the wholesale account and did not state that supplying the Citgo station was in violation of the non-compete provision of the franchise agreements.

As you know from Mr. Stetzer's and Mr. McManama's depositions, Mr. Stetzer has had no financial interest in Aromas, no knowledge of Aromas, and no knowledge of whether the product supplied to the Citgo station was being sold by Aromas.

The "Supplemental Notice" shocked Mr. Stetzer. His service of product to the Citgo station violated no term of his franchise agreements. To the extent that Dunkin' Donuts Incorporated believes that supplying product to the Citgo station constituted any form of competition in breach of the franchise agreements, such breach was technical at most and certainly not intentional or knowing.

As Mr. Stetzer stated at his deposition, while he does not believe he has done anything wrong, since Dunkin' Donuts Incorporated apparently objects to the provision of product to the Citgo station, he has directed his General Manager to cease all deliveries and sales to the Citgo station or Aromas effective October 13, 2003. Additionally, by check dated October 15, 2003, Mr. McManama reimbursed 4 Donuts, Inc. the $60.00 registration fee filed by Anthony Citerella

with the Secretary of State on behalf of Aromas. I have enclosed a copy of the reimbursement check. As Mr. McManama testified, he did not know that Mr. Citerella had paid the filing fee with a 4 Donuts check.

Thus, our clients have ceased providing product within one week of receiving the "Supplemental Notice," thereby curing any possible default that may have existed as a result of these sales within the applicable cure period under the franchise agreements (section 9.B.3. or 9.1) and the Connecticut Franchise Act (Conn. Gen. Stat. § 42-133f), which provide for a 30-day and 60-day cure period, respectively. Your contention that the alleged breach is not curable as a matter of law is groundless.

Because Mr. Stetzer properly notified Dunkin' Donuts Incorporated of the account, because Dunkin' Donuts Incorporated approved the account by not submitting a formal disapproval, and because any possible default has been cured well within the cure period, your attempt to amend the Complaint to add Count XIV is improper and must be withdrawn along with the "Supplemental Notice." Please withdraw them both immediately, or Dunkin' Donuts Incorporated shall have given us no choice but to seek sanctions.

Sincerely,

Eric L. Palmquist

ELP/pas
Enclosures

Cc: Glenn M. Stetzer (w/encs.)
Paul L. Gilmore, Esq. (w/encs.)

Mailed to: Frank Basler
Business Consultant
Date: 7/25/03

**DUNKIN' DONUTS**
**WHOLESALE ACCOUNT REGISTRATION**

**Customer Data**

Firm Name: East Haven Citgo

Individual: ______ Phone: ______

Address: 291 Saltonstall Pkwy

☑ New Account ☐ Increased Volume of Existing Account (Previous Level $ ______)

**Terms** ☐ C.O.D. ☑ Charge (Maximum Allowable Charge ($10,000)

**Credit** Approved by: Kmru Date: ______

**Production Data** Estimated Volume: 15 dz dozen per 5 days

☑ Yeast ☑ Cake ☑ French ☑ Other

☑ Rings ☐ Shells ☑ Twists ☐ Bismarks

☑ Coffee Rolls ☑ Other: bagels / muffins / rolls / croissants

**Pricing** $ Varies Per Dozen ☐ Guaranteed ☐ Not Guaranteed

**Effective Date** Date Order Commencing: 7/31/03

**Delivery** ☑ We Deliver ☐ Customer Pick-Up

Deliver to: S/A

Days: ______ Time: ______

**Packaging** ☐ Our Boxes ☑ Baskets ☐ Customer's Boxes

Remarks: ______

**Commission Data** Business Obtained by: ______

Terms: ______

Remarks: ______

Allied Domecq Quick Service Restaurants

ALLIED DOMECQ
QSR

TO: All Dunkin' Donuts Franchisees

DATE: February 4, 2002

RE: Approval and Reporting of Wholesale Accounts

***THIS DOCUMENT MUST BE READ BY THE FRANCHISEE ON RECORD. IF YOU ARE NOT THE FRANCHISEE AS FOUND ON THE FRANCHISE OFFERING, PLEASE IMMEDIATELY FORWARD TO THAT PERSON.***

As you know, your Franchise Agreement requires approval by Allied Domecq QSR of all Wholesale accounts. We ask that you report on an annual basis the status of any wholesale accounts that you maintain.

The purpose of this memorandum is to remind you of this policy. The policy states that you must notify your Business Consultant, in writing, as soon as you acquire a new Wholesale account. Attached you will find Allied Domecq's prescribed form for your use. If you should somehow lose the form, or forget the format, you should send a letter containing the account's name and address anyway. Regardless of the form of the notice you provide, you should keep a copy of what you send to the Business Consultant for your records, as such documents may be reviewed during a shop visit.

*THE WHOLESALE ACCOUNT SHALL BE DEEMED APPROVED BY ALLIED DOMECQ QSR UNLESS YOU ARE NOTIFIED BY CERTIFIED MAIL THAT THE ACCOUNT IS NOT APPROVED.*

There is no change in the requirement that you must report all Wholesale sales to Allied separately, naming each account and designating each as "Wholesale" on the Weekly Sales Reporting Form, whether or not you have notified Allied of the account. Use an attachment if there is insufficient space on the Weekly Sales Reporting Form to list all of these accounts. There remains no justification for not reporting a wholesale sale to the Company on your Weekly Sales Reporting Form.

**<u>WHOLESALE ACCOUNTS:</u>**

- Any product sold in non-branded form is considered a Wholesale account regardless of whether product is delivered to the customer or picked up at the store. No brand markings are to be found at this location (straws, napkins, boxes, etc.).
- Sales must be rung into the register when the product leaves the store regardless of the form of payment. In the case of charge accounts or accounts on credit, you must ring the sale into the register on the day of the delivery, and then list these on your DCR in the appropriate location. It is not appropriate to wait until you receive payment to record the sale on the register.
- Each account must be listed by name and dollar amount on the weekly sales reporting form.
- If you have no wholesale accounts, you must list the word "NONE" on the Wholesale reporting space on the Sales Reporting Form.
- You must complete the Wholesale Accounting form for each Wholesale customer change, and forward to your Business Consultant.

ALLIED DOMECQ QSR
14 PACELLA PARK DRIVE
RANDOLPH MA 02368 USA
TELEPHONE (781) 961-4000 FACSIMILE (781) 963-2913

DUNKIN' DONUTS
TOGO'S
Baskin 31 Robbins.

JAMES McNAMAMA
8 WILDERNESS DR
NORTH BRANFORD, CT 06471

1226

51-7013/2111
BRANCH 1

DATE

PAY TO THE ORDER OF

$

DOLLARS

NEW HAVEN SAVINGS BANK
New Haven, Connecticut 06510

FOR

REC'D OCT 16 2003

NHSB DRIVE-IN

⑆211170130⑆ 503 08400 ⑈ 01226

NEW HAVEN SAVINGS BANK

P.O. BOX 302 NEW HAVEN CONNECTICUT 06502-0901

36,576.98

THIS IS YOUR RECEIPT

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL
THIS RECEIPT IS ISSUED SUBJECT TO AUDIT OF DEPOSIT/PAYMENT AND ALL ITEMS ARE CREDITED SUBJECT TO FINAL ACCEPTANCE

```
10/16/03 15:35:57 BR:003 TELLER:0007DDPI        MH
Seq:002 Account 0571033068
Tran Amount:60.00
CK Amt:60.00 Cash Amt .00
Cash Back: .00
DDA COMMERCIAL DEPOSIT
```

# ARTICLES OF ORGANIZATION

## DOMESTIC LIMITED LIABILITY COMPANY

Office of the Secretary of the State
30 Trinity Street / P.O. Box 150470 / Hartford, CT 06115-0470 / Rev. 11 /06/2001
*See reverse for instructions*

Space Fo FILING #0002376085 PG 01 OF 01 VOL B-00472
FILED 02/07/2002 08:30 AM PAGE 02116
SECRETARY OF THE STATE
CONNECTICUT SECRETARY OF THE STATE

**1. NAME OF THE LIMITED LIABILITY COMPANY:**

Aromas, LLC

**2. NATURE OF BUSINESS TO BE TRANSACTED OR THE PURPOSES TO BE PROMOTED OR CARRIED OUT:** The purpose of the limited liability company is to engage in any lawful act or activity for which limited liability companies may be formed under the CT Limited Liability Company Act.

**3. PRINCIPAL OFFICE ADDRESS:** (Provide complete address. See instructions for further details.)

250 State Street, Unit K-2, North Haven, CT 06473-2193

**4. APPOINTMENT OF STATUTORY AGENT FOR SERVICE OF PROCESS:**

**Name of agent:**
James McManama

**Business address: (P.O. Box is not acceptable)**
250 State Street, Unit K-2
North Haven, CT 06473-2193

**Residence address: (P.O. Box is not acceptable)**
6 Wilderness Drive
North Branford, CT 06471

Acceptance of appointment

[signature]
Signature of agent

**5. MANAGEMENT:**

(Place a check mark next to the following statement *only* if it applies)

____ The management of the limited liability company shall be vested in one or more managers.

**6. MANAGER(S) OR MEMBER(S) INFORMATION**

| Name | Title | Residence Address | Business Address |
|---|---|---|---|
| James McManama | member | 6 Wilderness Drive<br>North Branford, CT<br>06471 | 250 State Street, K-2<br>North Haven, CT<br>06473-2193 |

**7. EXECUTION:**

Dated this 6th day of February, 2002

James McManama
Print or type name of organizer

[signature]
Signature

Reference an 8 ½ x 11 attachment if additional space is required

4 Donut's Inc. 3/27/2002

Register: 11000 New Haven Savings Bank
From 02/01/2002 through 02/28/2002
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|---|---|---|---|---|---|---|---|---|
| 02/05/2002 | 3351 | Mobil Oil | 70503 Rent-Storage - S... | | 1,361.85 | | | -3,323,101.... |
| 02/05/2002 | 3352 ✓ | Harvey Glazer | 70503 Rent-Storage - S... | | 907.97 | ✓ | | -3,324,009.... |
| 02/05/2002 | 3353 ✓ | Dunkin Donuts, NDC | 65502 Dues & Subscri... | Hamden Dues | 300.00 | ✓ | | -3,324,309.... |
| 02/05/2002 | 3354 ✓ | Dunkin Donuts, NDC | 65004 Depreciation - ... (65504) | York Dues | 300.00 | ✓ | | -3,324,609.... |
| 02/05/2002 | 3355 ✓ | Dunkin Donuts, NDC | 65001 Depreciation - F... (65501) | Frontage Dues | 300.00 | ✓ | | -3,324,909.... |
| 02/05/2002 | 3356 ✓ | Dunkin Donuts, NDC | 65503 Dues & Subscri... | Sargent Dues | 300.00 | ✓ | | -3,325,209.... |
| 02/05/2002 | 3357 ✓ | Anthony Citerella, C... | 61001 Accounting - Fr... | Frontage | 575.00 | ✓ | | -3,325,784.... |
| 02/05/2002 | 3358 ✓ | Anthony Citerella, C... | 61002 Accounting - Ha... | Hamden | 575.00 | ✓ | | -3,326,359.... |
| 02/05/2002 | 3359 ✓ | Anthony Citerella, C... | 61003 Accounting - Sa... | Sargent | 575.00 | ✓ | | -3,326,934.... |
| 02/05/2002 | 3360 ✓ | Anthony Citerella, C... | 61004 Accounting - Y... | York | 575.00 | ✓ | | -3,327,509.... |
| 02/05/2002 | 3361 ✓ | Dunkin Donuts, Inc. | -split- | 02-02-02 | 2,096.36 | ✓ | | -3,329,605.... |
| | | | 54000 Advertising Fees | | -1,058.77 | | | |
| | | | 53500 Franchise Fees | | -1,037.59 | | | |
| 02/05/2002 | 3362 ✓ | Dunkin Donuts, Inc. | -split- | 02-02-02 | 2,113.68 | ✓ | | -3,331,719.... |
| | | | 54000 Advertising Fees | | -1,010.30 | | | |
| | | | 53500 Franchise Fees | | -1,103.38 | | | |
| 02/05/2002 | 3363 ✓ | Hanover Insurance C... | 19330 Prepaid Insurance | AHE 599253 02 | 66.45 | ✓ | | -3,331,785.... |
| ~~02/05/2002~~ | ~~3364~~ ✓ | ~~Marcy Stetzer~~ | ~~28100 Note Payable Gl...~~ | ~~Payment 43 of ...~~ | ~~104.17~~ | ✓ | | ~~-3,331,890....~~ |
| ~~02/05/2002~~ | ~~3365~~ ✓ | ~~Glenn Stetzer~~ | ~~62700 Group Insuranc...~~ | ~~Insurance~~ | ~~460.00~~ | ✓ | | ~~-3,332,350....~~ |
| 02/05/2002 | 3366 ✓ | Paraco Gas | 78001 Utilities - Fronta... | Acct. #000000... | 852.54 | ✓ | | -3,333,202.... |
| 02/06/2002 | 3367 ✓ | Secretary of the State | 28100 Note Payable Gl... | Aromas, LLC | 60.00 | ✓ | | -3,333,262.... |
| 02/11/2002 | 3368 ✓ | Dunkin Donuts, NDC | 51000 Food Purchases | | 127.63 | ✓ | | -3,333,390.... |
| 02/11/2002 | 3369 ✓ | Dunkin Donuts, NDC | 51000 Food Purchases | Due 02-14-02 | 22.58 | ✓ | | -3,333,412.... |
| 02/11/2002 | 3370 ✓ | Dunkin Donuts, NDC | -split- | Due 02-14-02 | 2,773.52 | ✓ | | -3,336,186.... |
| | | | 51000 Food Purchases | | -1,667.49 | | | |
| | | | 51000 Food Purchases | | -420.26 | | | |

14446.75

00651

4 Donut's Inc. 8/13/2002

Register: 11000 New Haven Savings Bank
From 05/01/2002 through 05/31/2002
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|---|---|---|---|---|---|---|---|---|
| 05/23/2002 | 3767 | Dunkin Donuts, Inc. | -split- | 05-18-02 (Sarg... | 1,245.34 | | | -3,970,305.... |
| | | | 54000 Advertising Fees | 05-18-02 | -628.96 | | | |
| | | | 53500 Franchise Fees | | -616.38 | | | |
| 05/23/2002 | 3768 | Dunkin Donuts, Inc. | -split- | 05-18-02 (York) | 2,110.48 | | | -3,972,415.... |
| | | | 54000 Advertising Fees | 05-18-02 | -1,065.90 | | | |
| | | | 53500 Franchise Fees | | -1,044.58 | | | |
| 05/23/2002 | 3769 | Dunkin Donuts, NDC | 51000 Food Purchases | Due 05-17-02 | 154.74 | | | -3,972,570.... |
| 05/23/2002 | 3770 | Dunkin Donuts, NDC | 51000 Food Purchases | Due 05-30-02 | 157.54 | | | -3,972,727.... |
| 05/23/2002 | 3771 | Dunkin Donuts, NDC | -split- | Due 05-30-02 | 3,463.52 | | | -3,976,191.... |
| | | | 51000 Food Purchases | | -2,358.27 | | | |
| | | | 51000 Food Purchases | | -264.63 | | | |
| | | | 51500 Supplies | | -632.87 | | | |
| | | | 82002 Uniforms - Ham... | | -21.30 | | | |
| | | | 67502 Repairs & Main... | | -186.45 | | | |
| 05/23/2002 | 3772 | Dunkin Donuts, NDC | -split- | Due 05-30-02 | 2,197.37 | | | -3,978,388.... |
| | | | 51000 Food Purchases | | -1,436.32 | | | |
| | | | 51000 Food Purchases | | -428.68 | | | |
| | | | 51500 Supplies | | -320.69 | | | |
| | | | 67504 Repairs & Main... | | -11.68 | | | |
| 05/23/2002 | 3773 | Dunkin Donuts, NDC | -split- | Due 05-30-02 | 3,368.39 | | | -3,981,757.... |
| | | | 51000 Food Purchases | | -2,070.86 | | | |
| | | | 51000 Food Purchases | | -459.31 | | | |
| | | | 51500 Supplies | | -664.56 | | | |
| | | | 68001 Office - Frontage | | -26.89 | | | |
| | | | 67501 Repairs & Main... | | -146.77 | | | |
| 05/23/2002 | 3774 | East Shore District H... | 69501 Licenses - Front... | Frontage Road | 75.00 | | | -3,981,832.... |
| 05/23/2002 | 3775 | SCG | 78002 Utilities - Hamden | 262249-107083 | 505.07 | | | -3,982,337.... |
| 05/23/2002 | 3776 | Ferraro & Sons | 67502 Repairs & Main... | Invoice #29010 | 477.00 | | | -3,982,814.... |
| 05/24/2002 | 3777 | Commissioner of Re... | 28100 Note Payable Gl... | Aromas, LLC/ ... | 20.00 | | | -3,982,834.... |
| 05/29/2002 | 3778 | Dunkin Donuts, NDC | -split- | Due 06-02-02 | 4,486.36 | | | -3,987,320.... |
| | | | 51000 Food Purchases | | -3,122.68 | | | |
| | | | 51000 Food Purchases | | -432.43 | | | |
| | | | 51500 Supplies | | -642.30 | | | |
| | | | 82002 Uniforms - Ham... | | -114.64 | | | |

17560.81 ✓

00688