IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------x
:
DUNKIN' DONUTS INC. ET AL.                :        3:02 CV 1920 (MRK)
:
v.                                                           :
:
4 DONUTS, INC. ET AL.                          :        DATE: DEC. 3, 2003
-------------------------------------------------------x

<u>RULING ON PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR FIRST AMENDED
COMPLAINT</u>

Familiarity with the factual and procedural history of this protracted litigation is

presumed.  On October 3, 2003, plaintiffs filed their Motion for Leave to File Their First

Amended Complaint and brief in support.  (Dkts. ##105-06).[1]  On October 24, 2003,

defendants 4 Donuts, Inc. ["4 Donuts"], Grando, Inc. ["Grando"] and Glenn Stetzer filed their

brief in opposition (Dkt. #114),[2] which defendants James McManama ["McManama"] and

George Germano ["Germano"] joined and incorporated by reference on October 30, 2003.

(Dkt. #117).  On November 12, 2003, plaintiffs filed their reply brief.  (Dkt. #124).[3]

---

[1]Attached are two exhibits: copy of First Amended Complaint, dated October 3, 2003 (Exh.
1); and copy of correspondence from Allied Domecq to Franchisees, dated October 24, 2002 (Exh.
2).

[2]The following exhibits are attached: copy of Report of Parties' Planning Meeting, dated
December 19, 2002 (Exh. A); copy of excerpts from franchise agreement entitled "Restrictions on
the FRANCHISEE'S Activities" (Exh. B); copy of correspondence from Allied Domecq to
Franchisees, dated February 4, 2002 (Exh. C); excerpts of deposition testimony of Glenn Stetzer,
taken on October 13, 2003 (Exh. D); copy of case law (Exh. E); copy of excerpts from franchise
agreement entitled "Cure Period" (Exh. F); copy of Dunkin' Donuts Wholesale Account
Registration, dated July 25, 2003 (Exh. G); copy of TSA Comment Sheet (Exh. H); and copy of
handwritten list of documents taken for copying, dated April 30, 2002 (Exh. I).

[3]Attached are the following thirteen exhibits: excerpts of deposition transcript of Glenn
Stetzer, taken on October 13, 2003 (Exh. 1); copy of correspondence between counsel, dated
October 17, 2003, copy of "Dunkin' Donuts Wholesale Account Registration," dated July 25, 2003,
copy of correspondence from Allied Domecq, dated February 4, 2002, and copy of check and
deposit slip (Exh. 2); copy of Articles of Incorporation for Aromas, LLC, dated February 6, 2002
(Exh. 3); copy of register for New Haven Savings Bank account for 4 Donuts, dated 2/1/2002

For the reasons stated below, plaintiffs' Motion for Leave to File Their First Amended Complaint (Dkt. #105) is granted in part and denied in part.

## I. FACTUAL BACKGROUND

On October 24, 2002, plaintiffs sent defendants a Notice of Default and Termination of their Dunkin' Donuts franchises. (Dkt. #106, Exh. 2). In this Notice, plaintiffs informed defendants that "[b]ased on a variety of evidence," defendants (1) intentionally and willfully failed to maintain accurate records, report all gross sales and pay franchise and advertising fees; (2) operated a catering business in which defendants sold products that were the same or substantially similar to those offered by plaintiffs and used plaintiffs' proprietary marks in a manner inconsistent with the Franchise Agreements; (3) used the Dunkin' Donuts franchised business to defraud the taxing authorities; (4) participated in, assisted, abetted and/or conspired in the assault and battery of a former manager, made threats to him and his parents and damaged or participated in the damage of his personal property with the goal of obtaining a retraction of statements made by this former manager to plaintiffs; and (5) transferred ownership and/or control of one or more of the franchises, Franchise Agreements, or shares of stock to defendant McManama. (Dkt. #106, Exh. 2, at 2-3). Consequently, plaintiffs terminated the Franchise Agreements and such termination constituted a default under the terms of the Franchise Agreements that, according to plaintiffs, "cannot be cured as a matter of law." (Id. at 4). Plaintiffs informed defendants that "if it should be determined as a matter of law that your defaults are curable," defendants

---

through 2/28/2002 (Exh. 4); excerpts of deposition testimony of McManama, taken on October 15, 2003 (Exh. 5); affidavit of plaintiffs' counsel, dated November 10, 2003 (Exh. 6); copy of correspondence, dated October 3, 2003 (Exh. 7); copy of Franchise Agreement, dated August 27, 1992 (Exh. 8); and copies of case law (Exhs. 9-13).

See note 8 infra regarding Exh. 6.

2

would be given thirty days to cure. (Id. at 4).

Five days later, on October 29, 2002, plaintiffs, Dunkin' Donuts Inc. and Dunkin' Donuts USA, Inc., commenced this lawsuit against 4 Donuts, Grando, Glenn Stetzer, Kathleen Stetzer, Germano and McManama, alleging that defendants under reported gross sales, failed to pay plaintiffs all fees on gross sales as required under the Franchise Agreements, transferred an interest in one or more of their franchises to defendant McManama without the knowledge or approval of plaintiffs, and engaged in an assault and battery of a former manager and made or participated in the making of threats to this former manager to prevent him from providing information to plaintiffs that would assist plaintiffs in the examination of the books and records of defendants' franchises. (Dkt. #1).

Plaintiffs' twelve count complaint alleges breach of all Franchise Agreements (Counts I, IV, V, VI & VII), breach of the State Street, Frontage Road, Forbes Avenue, York Street, and Sargent Drive Franchise Agreements (Counts II & III), breach of the covenant of good faith and fair dealing (Count VIII), trademark infringement (Count IX), trade dress infringement (Count X), unfair competition (Count XI), and violation of the Connecticut Unfair Trade Practices Act ["CUTPA"], CONN. GEN. STAT. §§42-110a et seq (Count XII). (Dkt. #1).

On November 28, 2002, defendants 4 Donuts, Grando, Glenn Stetzer, and McManama filed an Answer, with the following four counterclaims: violation of the Connecticut Franchise Act; violation of CUTPA; breach of covenant of good faith and fair dealing; and breach of contract. (Dkt. #15). Fourteen days later, defendant Germano filed his Answer (Dkt. #37) and seven days later, plaintiffs filed their Answer to defendants' counterclaims. (Dkt. #41). On July 17, 2003, defendants McManama and Germano filed their Motion for Leave to File Amended Answer (Dkt. #76) to include the alternative affirmative defenses of ratification and/or mootness. This Court granted such motion on

3

September 18, 2003. (Dkt. #101).

On October 3, 2003, plaintiffs served defendants with a Supplemental Notice of Default and Termination ["Supplemental Notice"] for breaching their Franchise Agreements by establishing and supplying a competing business. (Dkt. #124, Exh. 7). That same day, plaintiffs filed the pending Motion for Leave to File Their First Amended Complaint seeking "to set forth two new breach of contract counts for [d]efendants' breach of their obligation under the Franchise Agreements to obey all laws, for violation of the in-term covenant not to compete and for conduct injurious and prejudicial to [plaintiffs'] goodwill." (Dkt. #105. See also Dkt. #106, Exh. 1, proposed Counts XIII & XIV).[4]

## II. DISCUSSION

Plaintiffs seek leave to amend their Complaint, pursuant to FED. R. CIV. P. 15(a), to include Count XIII for the breach of the "obey all laws" clause in the Franchise Agreement and Count XIV for violation of the in-term covenant not to compete. (Dkt. #106, at 1). Plaintiffs contend that the proposed amendments will "in no way prejudice[]" defendants, but if plaintiffs are unable to amend their Complaint, the "resulting prejudice will leave [them] no choice but to file a separate action." (Dkt. #106, at 9, 10). Plaintiffs contend that this amendment is a "more efficient use of the parties' and the Court's resources." (Dkt. #124, at 10). Defendants respond that Rule 15(a) does not apply to this motion; rather, the "good cause" standard in FED. R. CIV. P. 16(b) applies because plaintiffs seek a modification of the scheduling order. (Dkt. #114, at 3-4).

Rule 15(a) allows a party to amend its pleading after a responsive pleading has been served "only by leave of court . . . ; and leave shall be freely given when justice so requires."

---

[4]The proposed First Amended Complaint also corrects several typographical errors included in the original Complaint. (Dkt. #106, at 3 n.1).

4

When deciding whether to grant leave to amend the Court must consider: (1) undue delay; (2) bad faith or dilatory motive on the part of movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of the amendment.  Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85, 89-90 (2d Cir. 1998)(citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

"Where a scheduling order has been entered, . . . the lenient standard under Rule 15, . . . must be balanced against the requirement under Rule 16(b) of the Federal Rules of Civil Procedure. . . ."  Senich v. American-Republican, Inc., 215 F.R.D. 40, 42 (D. Conn. 2003)(emphasis omitted)(citations omitted).  Rule 16(b) reads that a scheduling order "shall not be modified except upon a showing of good cause. . . ."

In this case, the parties held a telephonic Rule 26(f) Conference on December 12-13, 2002 pursuant to former Local Rule 38.[5] (Dkt. #42).  The Report of Parties' Planning Meeting indicates that "[p]laintiffs request to . . . file any motions to amend the pleadings on or before July 18, 2003[,]" whereas "[d]efendants request that plaintiffs . . . shall file any motions to amend the pleadings on or before January 17, 2003." (Id. at 11). The Court did not issue a Scheduling Order.

### A. PROPOSED COUNT XIII

According to plaintiffs, proposed Count XIII "clarifies and separates out a claim" based on the allegation in their initial Complaint that defendants used the franchises to defraud the taxing authorities.  (Dkt. #106, at 1-2; see generally id. at 4-7). However, according to defendants, the tax claim arises from "the same set of operative facts as the

---

[5]Now Local Rule 16(b).

5

claims in the original Complaint"; "plaintiffs knew of this claim prior to filing their Complaint"; plaintiffs have improperly delayed in bringing this claim; and the delay in bringing this claim will prejudice defendants since defendants have "assumed for some time that tax charges were not a part of this case." (Dkt. #114, at 2, 12-15).

Plaintiffs counter that defendants' assumption "cannot be true because the initial termination notice . . . plainly stated that [d]efendants' Franchise Agreements were being terminated for violation of tax laws" and this document was incorporated by reference in the Complaint. (Dkt. #124, at 7). Additionally, although defendants assert that they will be prejudiced by the assertion of this tax claim, there is no reason for such prejudice to exist since, according to plaintiffs, no additional fact discovery is needed and to the extent these issues need to be addressed, expert discovery continues until December 31, 2003. (Id. at 8-10).

Defendants' position appears inconsistent as they allege that the tax claim issues arise from the same set of operative facts as the claims in the original Complaint, thus conceding that the proposed amendment relates back to the original Complaint and that such Complaint put them on notice of the tax claim issues; however, defendants claim prejudice on grounds that they have "assumed for some time that tax charges were not a part of this case." (Dkt. #114, at 14). Defendants' contention that the "tax claim arises from the same set of operative facts as the claims in the original Complaint" reflects notice of these tax claims, and defendants were in receipt of the termination notice which was incorporated by reference in the Complaint. (Id.; Dkt. #106, Exh. 2). Plaintiffs also assert that they referenced this claim and the corresponding "obey all laws" clause on several

6

occasions in their filings with the Court.[6]  (Dkt. #124, at 8).  However, defendants respond that plaintiffs have "no good excuse" for delaying bringing this claim which "they knew about . . . yet waited [until] the close of discovery to assert it."  (Dkt. #114, at 13).

Although late amendments are "not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action," "mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for denial of leave to amend. . . ." Messier v. Southbury Training School, 1999 U.S. Dist. LEXIS 6992, at *8-9 (D. Conn. Jan. 5, 1999)(multiple citations & internal quotations omitted).  Moreover, the "Second Circuit has made it clear that delay, without more, cannot be the basis to deny an amendment and has routinely excused delays of more than two years." Concerned Citizens of Belle Haven v. Belle Haven Club, 2002 WL 32124959, at *5 (D. Conn. Oct. 25, 2002)(citation omitted).  However, leave to amend is often denied when a party files a Rule 15(a) motion after the completion of discovery or the nonmoving party has filed for summary judgment as such action may result in undue prejudice.  Messier, 1999 U.S. Dist. LEXIS 6992, at *10 (citations omitted).

Although plaintiffs filed this Motion for Leave to Amend on the eve of the close of fact discovery, it was the extensive discovery of financial information that allowed for clarification of this particular claim.  Plaintiffs have used the discovery process to receive documents necessary to substantiate and separate out the assertion of this specific tax fraud claim.  Thus, although plaintiffs delayed in bringing a specific tax fraud claim, the delay was not

---

[6]Plaintiffs referred to the "obey all laws" clause in relation to tax fraud issues in their opposition to defendants' Motion to Quash and in its Motion to Compel.  In this Court's Ruling on Plaintiffs' Motion to Compel, filed September 11, 2003, this Court noted that "plaintiffs' request for information pursuant to the 'obey all laws clause' in the Franchise Agreements is being used as an umbrella to include claims not accounted for in plaintiff's [C]omplaint."  (Dkt. # 100, at 22).  Accordingly, plaintiffs now seek to add this claim by way of the First Amended Complaint.

AO 72A
(Rev. 8/82)

undue and good cause exists because plaintiffs' claim for tax fraud arose out of the discovery of relevant information and evolved from the initial breach of the Franchise Agreement claims made in the Complaint.

Defendants assert that they have been prejudiced by plaintiffs' delay because "[d]efendants have assumed for some time that tax charges were not a part of this case." (Dkt. #114, at 14). The resulting prejudice to defendants is the most important factor in the court's analysis when deciding whether to grant leave to amend. Concerned Citizens, 2002 WL 32124959, at *4 (citation omitted). To determine "prejudice," the court must consider whether the assertion of proposed Count XIII would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent . . . plaintiff[s] from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)(multiple citations omitted). Plaintiffs have represented to this Court that plaintiffs "will need no additional discovery since the basis for the tax law claims is [d]efendants' own personal and corporate records . . . which have already been the focus of this case." (Dkt. #124, at 9). Moreover, according to plaintiffs, "the scheduling order affords the parties until December 31, 2003 to conduct expert discovery, which will address these claims." (Id.).[7] Thus, defendants will not be required to expend additional significant resources to continue discovery and the resolution of this dispute will not be inordinately delayed.

Therefore, plaintiffs' Motion for Leave to File Their First Amended Complaint is granted regarding proposed Count XIII.

---

[7]The December 31, 2003 deadline was set in this Court's Ruling on Plaintiffs' Motion to Compel, filed September 11, 2003. (Dkt. #100, at 24).

8

### B. PROPOSED COUNT XIV

Plaintiffs assert that proposed Count XIV is based on recently discovered evidence that "[d]efendants have violated the terms of their Franchise Agreements by supplying doughnuts and other products to a competing doughnut and coffee business," named Aromas Coffee and Bake Shop ["Aromas"]; this conduct violates the in-term covenant not to compete and the goodwill clauses in the Franchise Agreements. (Dkt. #106, at 3; see generally id. at 8-9). Defendants contend that such amendment would be futile as it fails to state a claim upon which relief can be granted because the activity does not violate the Franchise Agreements since supplying wholesale products does not constitute a breach of such Agreements and plaintiffs have not alleged that defendants failed to cure any alleged default, nor have plaintiffs alleged that defendants violated notice procedures in making the wholesale sales. (Dkt. #114, at 1, 4-11). Moreover, according to defendants, the wholesale sale claim is unrelated to previous allegations. (Id. at 11-12).

Plaintiffs respond that their new claim for violation of the covenant not to compete is based on evidence that defendants supplied and established a competing business which cannot be cured by discontinuing their deliveries to the shop. (Dkt. #124, at 1-7). Specifically, plaintiffs contend that the Supplemental Notice is not retroactive (id. at 3); plaintiffs had a right to terminate the contracts for material breach without affording defendants an opportunity to cure (id. at 3-5); even assuming there could be a cure, defendants' action of ceasing deliveries while concealing the rest of their involvement in the business is not a "cure" (id. at 6); plaintiffs have satisfied the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure in the assertion of the facts in its Amended Complaint (id. at 6-7); plaintiffs have acted diligently to amend their Complaint to include the Aromas transactions since plaintiffs only learned of McManama's interest in and the

9

existence of Aromas in the preceding months (id. at 7-10); and "although [plaintiffs] would not oppose additional discovery related to Aromas, little discovery would be needed because all of the facts are already known by [d]efendants and the evidence supporting this claim is in their own records." (Id. at 10-11).

### 1. FUTILITY OF THE AMENDMENT

The propriety of granting a motion to amend remains within the sound discretion of the district court, and futility of the amendment is one valid reason to deny leave. Zahra v. Town of Southold, 48 F.3d 674, 685-86 (2d Cir. 1995)(citation omitted). An amendment is futile if it would not survive a motion to dismiss pursuant to Rule 12(b)(6). Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)(citation omitted)(failure to state a claim upon which relief can be granted renders a proposed amendment futile). Therefore, the Court must examine plaintiffs' assertions in the proposed amendment in light of the Rule 12(b)(6) standard of review.

In deciding a motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiffs. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984). The issue on a motion to dismiss "is not whether plaintiff[s] will prevail, but whether [they are] entitled to offer evidence to support [their] claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990)(citing Scheuer, 416 U.S. at 236); see also In re AMF Bowling Sec. Litig., 2003 U.S. Dist. LEXIS 7389, at *4-5 (S.D.N.Y. May 2, 2003)(quoting Foman, 371 U.S. at 182)(regardless of the ultimate strength or weakness of plaintiffs' claims, plaintiffs "ought to be afforded an opportunity to test [the] [additional] claims on the merits.").

10

## a. ADEQUATE NOTICE PLEADING

Defendants urge that plaintiffs' proposed amendment adding the wholesale sale claim would be futile, so leave to amend the complaint to add this claim must be denied. (Dkt #114, at 4-11). Federal Rule of Civil Procedure 8(a)(2) dictates that plaintiffs' Amended Complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief" and must give defendants "fair notice of the claim." Bish v. Aquarion Servs. Co., 2003 U.S. Dist. LEXIS 18846, at *14-15, 18 (D. Conn. Oct. 14, 2003)(citations & internal quotations omitted); see Conley v. Gibson, 355 U.S. 41, 47 (1957). In their Amended Complaint, plaintiffs allege that:

> 26.  Under the terms of the State Street Franchise Agreement, the Frontage Road Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise Agreement, and the Sargent Drive Franchise Agreement, [d]efendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer and George Germano agreed to do certain things, including the following:
>
> . . .
>
> l)  not to divert or attempt to divert any business or customer of the Dunkin' Donuts shop to any competitor, by direct or indirect inducement or otherwise (Paragraph 8.A.1 or 8.0.1)
>
> . . .
>
> 43.  Defendants are also in default of their Franchise Agreements by supplying doughnuts and other products to a competing doughnut and coffee business. Upon information and belief, [d]efendants have supplied doughnuts and other products to a business called Aromas Coffee and Bake Shop. Aromas Coffee and Bake Shop is a doughnut and coffee business located near [d]efendants' and other Dunkin' franchises.
>
> . . .
>
> 94.  The conduct described in paragraph 43 constitutes a breach of contractual provisions of the Franchise Agreements described in paragraphs 22, 23, 26 and 28, warranting termination [of] the Franchise Agreements.

(Dkt. #106, Exh. 1).

11

Paragraphs 22, 23, 26 and 28 of the Proposed First Amended Complaint refer, inter alia, to Paragraphs 8.A.1. and 8.A.3 of the Franchise Agreements. (See Dkt. #106, Exh. 1, ¶¶ 22, 23, 26, 28; Dkt. #114, at 5). These provisions of the Franchise Agreements read:

> 8. A. During the term of this Agreement or any extension thereof, and for a period of two (2) years thereafter, regardless of the cause of termination, neither FRANCHISEE, nor any partner, if FRANCHISEE is a partnership, nor any shareholder, if FRANCHISEE is a corporation, shall, except with respect to the ownership or operation by the FRANCHISEE of additional licenses DUNKIN' DONUTS shops:

> 8. A.1.  Divert or attempt to divert any business or customer of the DUNKIN DONUTS SHOP to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with DUNKIN' DONUTS PROPRIETARY MARKS and the DUNKIN' DONUTS SYSTEM;

> . . .

> 8. A.3.  Own, maintain, engage in, be employed by, or have any interest in any other business which sells or offers to sell any product of a type offered by a DUNKIN' DONUTS shop; provided that, during the two (2) year period following expiration or termination of this Agreement only, the provisions of this subparagraph 3. shall not apply to another business located more than five (5) miles from the DUNKIN' DONUTS SHOP or from any other DUNKIN' DONUTS shop. . . .

(Dkt. #114, Exh. B).

Paragraph 43 of the proposed First Amended Complaint gives defendants fair notice that defendants are in violation of this provision by "supplying doughnuts and other products to a competing doughnut and coffee business . . . located near [d]efendants' and other Dunkin' franchises." (Dkt. #106, Exh. 1). Thus, a plain reading of paragraphs 26.l, 43 and 94 of the proposed First Amended Complaint which identify the activities alleged and the name of the business at issue and which incorporate by reference Sections 8.A.1. and 8.A.3. of the Franchise Agreements makes clear that plaintiffs have given defendants "fair notice" of a claim "showing that the pleader is entitled to relief." See Bish, 2003 U.S. Dist. LEXIS 18846, at *14-15, 18 (citations & internal quotations omitted).

### b. BREACH OF THE FRANCHISE AGREEMENT

According to defendants, paragraphs 22, 23, 26 and 28 of the proposed First Amended Complaint, which incorporate by reference Paragraphs 8.A.1. and 8.A.3. of the Franchise Agreements, do not apply to the activity alleged in proposed Count XIV. Specifically, defendants contend that because plaintiffs have not alleged that Glenn Stetzer had an ownership interest in Aromas, plaintiffs cannot claim a violation of Paragraph 8.A.3. (Dkt. #114, at 5-6).

As previously indicated, in Paragraph 43 of the proposed First Amended Complaint, plaintiffs allege that "[d]efendants are also in default of their Franchise Agreements by supplying doughnuts and other products to a competing doughnut and coffee business." (Dkt. #106, Exh. 1, ¶ 43). Supplying doughnuts and other products to a competing business may constitute "engag[ing] in . . . any other business which sells or offers to sell" products similar to those offered by plaintiffs. (See Dkt. #114, Exh. B).

Again, as previously indicated, Paragraph 8.A.1. of the Franchise Agreements prohibits a franchisee from diverting customers and from hurting the goodwill of Dunkin' Donuts proprietary marks; according to defendants, servicing a wholesale account does not violate this provision, and thus "plaintiffs have not . . . stated any breach of the [F]ranchise [A]greements." (Dkt. #114, at 6-7 & Exh. B). To the contrary, proposed Count XIV of plaintiffs' proposed First Amended Complaint alleges that "[d]efendants are . . . in default of their Franchise Agreements by supplying doughnuts and other products to a competing doughnut and coffee business . . . called Aromas . . ." and "[t]he conduct described in paragraph 43 constitutes a breach of contractual provisions of the Franchise Agreements described in paragraphs 22, 23, 26 and 28, warranting termination [of] the Franchise Agreements." (Dkt. #106, Exh. 1, ¶¶ 43, 94). Again, Paragraphs 22, 23, 26 and 28

13

reference Paragraph 8.A.1 which prohibits a franchisee or a franchisee's partner from: "[d]ivert[ing] or attempt[ing] to divert any business or customer of the DUNKIN' DONUTS SHOP to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with DUNKIN' DONUTS PROPRIETARY MARKS and the DUNKIN' DONUTS SYSTEM. . . ." (Dkt. #114, Exh. B).

### c. REPORTING PROCEDURES

Defendants contend that plaintiffs cannot state a claim based on defendants' involvement with Aromas because the shop was a permissible wholesale customer of which they gave notice to plaintiffs consistent with plaintiffs' procedures entitled "Approval and Reporting of Wholesale Accounts," dated February 4, 2002. (Dkt. #114, at 6, 10-11; Exh. C). Defendants also contend that "[b]ecause plaintiffs have not alleged that defendants failed to follow the notification procedures or that defendants refused to stop servicing the account when asked, [proposed] Count XIV does not state a claim upon which relief can be granted." (Dkt. #114, at 10).

Under plaintiffs' procedures entitled, "Approval and Reporting of Wholesale Accounts," dated February 4, 2002, the Franchise Agreement "requires approval by Allied Domecq QSR of all [w]holesale accounts" and "[t]he wholesale account shall be deemed approved by Allied Domecq QSR unless [the franchisees] are notified by certified mail that the account is not approved." (Dkt. #114, Exh. C)(emphasis omitted). According to defendants, Frank Basler, plaintiffs' Business Consultant for defendant Glenn Stetzer, received the notice and did not disapprove the account, and on September 15, 2003, during a surprise inspection of one of defendant Glenn Stetzer's stores, Basler received a list of the new wholesale accounts, including the Citgo account, and again voiced no objection.

14

(Dkt. #114, at 10-11 & Exhs. G-H; see also Dkt. #124, Exh. 2, at 2).

The notice to which defendants refer is a "Dunkin' Donuts Wholesale Account Registration," dated July 25, 2003, which states that the customer is "East Haven Citgo," not Aromas which was the recipient of the wholesale products. (Dkt. #114, at Exh. G). Thus, although defendants did follow plaintiffs' notice procedures and defendants correctly assert that plaintiffs do not allege that such procedures were violated, the notice provided by defendants was misleading as such notice reflects the establishment of a permissible wholesale account with East Haven Citgo, a gas station, not a competing doughnut and coffee business. Defendants did not put plaintiffs on "notice" of the establishment of a wholesale account with Aromas, a competing doughnut and coffee business, located within one mile of defendant Glenn Stetzer's Frontage Road franchise. (See Dkt. #124, Exh. 1, at 199).

Moreover, defendant Glenn Stetzer testified at his deposition that his general manager established a wholesale account at the Citgo gas station, at which Aromas is located, but he had reason to believe that the doughnuts that were delivered went to Citgo and not to Aromas; "[w]hen [he] found out about it, [he] stopped it" because "[he] didn't want to put doughnuts so close to [his] other store." (Dkt. #124, Exh. 1, at 199–203). Although it may be that defendant Glenn Stetzer had "no knowledge of Aromas, and no knowledge of whether the product supplied to the Citgo station was being sold by Aromas," thus making the breach "technical at most and certainly not intentional or knowing," defendant Glenn Stetzer's general manager presumably had knowledge of the destination of the wholesale products as he established the account; 4 Donuts issued checks to the Secretary of State and the Commissioner of Revenue on behalf of Aromas in February and May 2002, respectively; and defendant McManama is listed as the sole owner of Aromas Coffee and

15

Bake Shop. (Dkt. #124, Exhs. 2-4; Exh. 5, at 95).[8]

### d. SUPPLEMENTAL NOTICE OF DEFAULT AND TERMINATION

Defendants contend that even though defendant Glenn Stetzer "does not believe he has done anything wrong," he directed his general manager to cease all deliveries and sales to the Citgo Station or Aromas on October 23, 2003, "within one week" of receiving plaintiffs' "Supplemental Notice of Default and Termination," dated October 3, 2003 (which defendants claim is "void as a matter of law and is factually baseless"), "thereby curing any possible default that may have existed as a result of these sales within the applicable cure period under the [F]ranchise [A]greements (section 9.B.3. or 9.1) and the Connecticut Franchise Act . . . , which provide for a 30-day and 60-day cure period, respectively." (Dkt. #124, Exh. 2, at 1-3; see Dkt. #114, at 7-9).

The Supplemental Notice "serve[d] to supplement the Notice of Termination previously sent to [defendants] on October 24, 2002" and included notice of "violation and default" of Paragraphs 8.A.1. and 8.A.3 of the Franchise Agreements by "supplying doughnuts from [defendants'] Dunkin' Donuts shops to a competing doughnut business

---

[8]There is a factual dispute as to whether assets of defendant 4 Donuts were installed and used at the Aroma's location. In his affidavit, dated November 10, 2003, plaintiff's counsel has averred that plaintiffs "recently [have] obtained information that the equipment installed and used at Aromas was supplied by [defendant] 4 Donuts, Inc., including cash registers, toasters and coffee brewers." (Dkt. #124, Exh. 6, ¶ 4). At his deposition, taken on October 15, 2003, defendant McManama testified that he purchased used shelves and counters from a used restaurant supply broker in Wallingford (although he does not have a bill of sale for that cash transaction and does not remember how much he paid), that he purchased two used coffee machines from a broker located in New Haven (although he does not remember the broker's name, does not have a receipt for this cash transaction and does not remember how much he paid), and that he purchased a used cash register from an on-line website "[s]omething like e-Bay" (although he does not recall how much he paid); he denied having taken any equipment or cash from 4 Donuts, 2 Donuts, or Grando for Aromas. (Dkt. #124, Exh. 5, at 102-10).

On November 21, 2003, defendants 4 Donuts, Grando and Glenn Stetzer filed a Motion to Strike Certification of Christopher M. Loveland (Dkt. #133) regarding this affidavit. Such motion is denied without prejudice as moot, as the Court is not relying on any of this information in rendering this ruling.

16

called Aromas Coffee and Bake Shop" and engaging in "actions . . . that . . . are injurious or prejudicial to the goodwill associated with Dunkin' Donuts' proprietary marks." (Dkt. #124, Exh. 7, at 2-3). The Supplemental Notice also informed defendants that "[a]s a matter of law, [defendants'] breache[s] cannot be cured and constitute good cause for termination of the Franchise Agreement . . . effective sixty (60) days from your receipt of this Notice" pursuant to Paragraph 9 of the Franchise Agreements. (Id. at 3).[9]

Plaintiffs contend that defendants' assertion that the Supplemental Notice is not proper because it relates back to the original notice of termination is incorrect since the Supplemental Notice states that it serves to terminate the Franchise Agreements "effective sixty (60) days from . . . receipt of this Notice." (Dkt. #124, at 3 & Exh. 7; Dkt. #114, at 8). Defendants apparently are misconstruing the Supplemental Notice. Although the Supplemental Notice states that such notice "serve[s] to supplement the Notice of Termination previously sent to [defendants] on October 24, 2002," the Notice does provide the sixty-day notice requirement in accord with the requirements of the Connecticut Franchise Act, CONN. GEN. STAT. § 42-133f(a). (Dkt. #124, Exh. 7) Nothing in plaintiffs' Supplemental Notice can be construed to nullify the sixty-day notice requirement or to relate back to the date of the original notice of termination.

---

[9]Plaintiffs also stated that "if it should be determined as a matter of law that your defaults are curable, then [plaintiffs] hereby give[ ] [defendants] thirty (30) days from the receipt of this Notice in which to do those acts which [defendants] contend constitute a 'cure' of the defaults under the Franchise Agreements. If, as a matter of law, a longer cure period is required, then that period is applicable to this Notice." (Id. at 4).

17

## e. OPPORTUNITY TO CURE

Because the Supplemental Notice is valid, the next issue is whether defendants have an opportunity to cure the alleged default prior to the termination of the Agreement. The Franchise Agreement provides:

> 9.B. Except as otherwise provided in Paragraph 9 of this Agreement, FRANCHISEE shall have the right to cure FRANCHISEE's default under this Agreement within the applicable period set forth below, following written notice of default from DUNKIN' DONUTS. In the event that a statute in the state wherein the DUNKIN' DONUTS SHOP is located requires a cure period for the applicable default which is longer than the cure period specified below, the statutory cure period shall apply.

(Dkt. #124, Exh. 8).[10]

The Connecticut Franchise Act requires that a franchisor "give the franchisee written notice of . . . termination . . ., at least sixty days in advance of such termination. . . ." CONN. GEN. STAT. § 42-133f(a).  Plaintiffs contend that a material breach, such as the breach in this case, provides the wronged party with a right to terminate a contract without affording the other party an opportunity to cure.  (Dkt. #124, at 3).  Connecticut statutory law contemplates such breach and provides that "No franchisor shall . . . terminate . . . , except for good cause which shall include, but not be limited to the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement" and the good cause and sixty day advance notice provisions shall not apply where there is "voluntary abandonment" or "conviction of the franchisee"; neither exception is applicable to this case.  CONN. GEN. STAT. § 42-133f(a).  Additionally, the Franchise

---

[10]A thirty day cure period applies if a franchisee "fails to comply with any of FRANCHISEE's obligations under this Agreement. . . ." (Dkt. #124, Exh. 8, ¶ 9.B.3.).

The Franchise Agreement supplied to this Court references an "Addendum" to Paragraph 9.B.3.; no addendum is attached. (Id.).

Agreement allows for no cure period if the franchisee abandons the shop, if the franchisee intentionally under reports gross sales or falsifies financial data, or if the franchisee's lease is terminated or expires. (Dkt. #124, Exh. 8, ¶ 9.B.4.)(emphasis added).[11] Thus, although it is a violation of the Franchise Agreement (¶¶ 8.A.1. and 8.A.3.), selling doughnuts to a competing shop is not one of the infractions that justifies termination without an opportunity to cure.

Plaintiffs further contend that Paragraph 9.G. conveys the right to terminate without an opportunity to cure in circumstances other than those in Paragraph 9.B.4. and 9.E. (Dkt. #124, at 4). Paragraph 9.G. provides that "No right or remedy herein conferred upon or reserved to [plaintiffs] is exclusive of any other right or remedy herein, or by law or equity provided or permitted, but each shall be cumulative of every other right or remedy hereunder." (Dkt. #124, Exh. 8, ¶ 9.G.).

Plaintiffs' Franchise Agreement is comprehensive and carefully drafted. If plaintiffs had contemplated that the breach of "establishing and supplying a competing doughnut and coffee business" constitutes a material breach which allows for termination without the opportunity to cure, such provision would have been included in the Agreement. However, the Agreement explicitly provides that a thirty day opportunity to cure applies to a termination which results from a failure to comply with any of the franchisee's obligations under this Agreement, and such obligation, prohibiting a franchisee from "[o]wn[ing], maintain[ing], engag[ing] in . . . or hav[ing] any interest in any other business which sells or offers to sell any product of a type offered by" plaintiffs, instead is explicitly provided for in Paragraph 8.A.3. of the Franchise Agreement. (See Dkt. #124, Exh. 8, ¶¶ 8.A-8.E. & 9.A.4.).

---

[11]The Franchise Agreement supplied to this Court references an "Addendum" to Paragraph 9.B.4.; again, no addendum is attached. (Id.).

19

### 2. DELAY AND PREJUDICE

In light of the conclusion reached in Section II.B.1.e. <u>supra</u>, there is no need to address delay and prejudice.

Thus, plaintiffs' Motion for Leave to File Their First Amended Complaint is <u>denied regarding proposed Count XIV</u>.

### C. ADDITIONAL DISCOVERY

The Ruling on Plaintiff's Motion to Compel, filed September 11, 2003 (Dkt. #100), provided that all fact discovery was to be completed by October 31, 2003 and all expert discovery was to be completed by December 31, 2003, with no further extensions, "absent compelling and unforeseeable circumstances." (At 23-24). As of the present time, there are two discovery motions pending: (1) Motion to Compel filed by defendants 4 Donuts, Grando and Glenn Stetzer on October 29, 2003 (Dkt. #115); and (2) plaintiffs' Motion for Extension of Time to Depose James McManama and 4 Donuts, filed November 6, 2003 (Dkt. #118). The completion of briefing for the latter motion has been delayed by the pending Motions to Withdraw Appearance filed by counsel for defendant McManama. (Dkts. ##120-22, 135).

In addition, the Ruling on Defendants Germano and McManama's Motion for Clarification, filed October 24, 2003 (Dkt. #111), indicated that "[i]f any counsel believes that a further, and limited, extension of the discovery deadlines is necessary, he . . . should arrange for a telephonic status conference." (At 3 n.5). Such conference was held on November 13, 2003 (Dkt. #128), at which plaintiffs' counsel requested an additional four weeks to review documents recently received from defendants or to receive documents not yet produced (especially the cash receipts), to subpoena additional documents, and to complete discovery related to the pending motions. Defense counsel objected to this further extension, particularly because the cash receipts have been available at counsel's office

20

and plaintiffs' counsel never came to review them.

The deadline for the completion of fact discovery is extended until **December 22, 2003**, limited solely to the issues of new Count XIII, review of documents recently received from defendants, and review of the cash receipts. Additional limited extensions may be necessary in light of the two pending discovery motions. To the extent plaintiffs seek additional fact discovery beyond the three areas mentioned above and the two pending discovery motions, **on or before December 15, 2003**, they shall file a motion for extension of time, which sets forth, in detail, the additional discovery sought and why they were unable to complete such discovery before October 31, 2003.

All expert discovery shall be completed **on or before February 23, 2004**. A settlement conference will be held before this Magistrate Judge after the completion of fact discovery.

### III. CONCLUSION

Accordingly, for the reasons stated above, plaintiffs' Motion for Leave to File Their First Amended Complaint (Dkt. #105) is granted with respect to proposed Count XIII and the typographical errors in the original complaint, but is denied with respect to proposed Count XIV. Plaintiffs shall file an Amended Complaint consistent with this ruling **on or before December 15, 2003**. As indicated in footnote 8 supra, the Motion to Strike Certification, filed by defendants 4 Donuts, Grando and Glenn Stetzer (Dkt. #133) is denied without prejudice as moot.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

21

See 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same); FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

Dated at New Haven, Connecticut, this 3rd day of December, 2003.

.

Joan Glazer Margolis
United States Magistrate Judge

22