UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUNKIN' DONUTS INCORPORATED and DUNKIN' DONUTS USA, INC., : Plaintiffs, : v. : 4 DONUTS, INC., GRANDO, INC., GLENN STETZER, KATHLEEN STETZER, GEORGE GERMANO, and JAMES MCMANAMA, : Defendants. | CIVIL ACTION NO. 3:02 CV 1920 (MRK) DECEMBER 2, 2003 |

## DEFENDANTS 4 DONUTS, INC., GRANDO, INC., AND GLENN STETZER'S REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY ANSWERS

Defendants 4 Donuts, Inc. ("4 Donuts"), Grando, Inc. ("Grando"), and Glenn Stetzer (collectively, the "defendants") respectfully submit this reply memorandum in further support of their motion dated October 28, 2003 to compel plaintiffs Dunkin' Donuts Incorporated and Dunkin' Donuts USA, Inc. to answer Interrogatory Nos. 1 and 3 and produce documents in response to Request No. 3 of defendants' Second Set of Interrogatories and Second Request for Production of Documents dated August 6, 2003 and in response to Plaintiffs' Opposition to Defendants 4 Donuts, Inc.'s, Grando, Inc.'s and Glenn Stetzer's Motion to Compel dated November 17, 2003.

The arguments raised in plaintiffs' opposition brief all fail to dent the straightforward conclusion in the motion to compel that plaintiffs must respond to defendants' interrogatories and document requests. Plaintiffs' argument that information regarding franchisee catering services is irrelevant misses the point that these records are necessary to show how plaintiffs

10451                                    1

have interpreted the section of the franchise agreement that they allege prohibits catering. Plaintiffs' argument that this catering information is protected by the work-product doctrine is similarly misplaced because the requested information is a summary of facts not prepared in anticipation of litigation.

Plaintiffs must also produce their Loss Prevention Underreporting Manual because it is relevant to showing plaintiffs' improper motivations and because plaintiffs do not dispute that a confidentiality agreement would sufficiently protect their interests in its secrecy.

## ARGUMENT

### POINT I

### PLAINTIFFS' RESPONSE IN THEIR BRIEF SHOULD HAVE BEEN THEIR RESPONSE TO INTERROGATORY NO. 1

Interrogatory No. 1 asks the plaintiffs to: "Identify each employee that plaintiffs contend was a foreigner working illegally in any of the franchises operated by the defendants." In their opposition brief, plaintiffs stated that "Dunkin' Donuts has not alleged that any foreigner has worked illegally at Defendants' shops" and "[a]t no time has Dunkin' contended that employees worked illegally at the franchises." Opp. Brief at 2. This is the answer plaintiffs should have given in their response to Interrogatory No. 1.

Instead, plaintiffs forced defendants to make this motion in light of plaintiffs' enigmatic response to Interrogatory No. 1, which stated: "the answer to this Interrogatory may be derived or ascertained from Defendants' general ledgers and banking records." Exhibit A to Motion to Compel. This response was improper because the interrogatory sought the names of the people who plaintiffs contended were foreigners working illegally, and defendants' search of their own records could not reveal who plaintiffs believed was working illegally. If, despite plaintiffs' line

of questioning at depositions, they truly are not contending that defendants hired illegal workers, they should have said so in their response to Interrogatory No. 1 rather than obfuscate.

In their opposition brief, plaintiffs also go on at length regarding the sufficiency of defendants' discovery responses. Opposition Brief at 3-4. This discussion has no relevance in a motion to compel discovery from plaintiffs.

## POINT II

## PLAINTIFFS SHOULD PROVIDE INFORMATION ABOUT CATERING BUSINESSES IN RESPONSE TO INTERROGATORY NO. 3

Interrogatory No. 3 asks plaintiffs to:

> 3. Identify each franchisee (other than defendants) in the Dunkin' Donuts system that has provided "catering" as described in Paragraph 39 of the Complaint and, for each such franchisee, describe the catering services provided, the dates such services were provided, and the actions taken by plaintiffs or Allied Domecq with regard to such catering services.

**A.    Interpretation of the Franchise Agreement Is at Issue**

Plaintiffs argue that any investigation of another franchisee conducting catering services is irrelevant because evidence of leniency toward other franchisees is not a defense to a breach of the franchise agreement. Opp. Brief at 5-6. This misses the point. Plaintiffs' treatment of other franchisees who provide catering services is necessary evidence of how plaintiffs themselves have interpreted Section 8.A.3. or 8.0.3 of the franchise agreements, which plaintiffs contend prohibit catering despite the fact that the word "catering" does not appear in those sections. Due to the prevalence of catering services offered by franchisees, defendants believe that an answer to Interrogatory No. 3 will reveal that plaintiffs have not, in fact, prohibited other franchisees from conducting catering services. This would be strong evidence that plaintiffs have not interpreted Sections 8.A.3. or 8.0.3 to prohibit catering and would support defendants' claim that plaintiffs' lawsuit is simply an attempt to retaliate against defendant Glenn Stetzer for filing an

10451

3

earlier lawsuit against Dunkin' Donuts. As a result, such evidence would support defendants' defenses and counterclaims that plaintiffs lack the "good cause" required for termination of defendants' franchises under the Connecticut Franchise Act, Conn. Gen. Stat. § 42-133f.

Consequently, plaintiffs' citation of cases regarding leniency to others is not material and does not undermine defendants' arguments. In <u>The Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.</u>, 970 F.2d 273 (7th Cir. 1992), the defendant admitted to breaching the franchise agreement but argued that the franchisor had not always terminated franchisees who breached the franchise agreement. That is very different from the situation here, where defendants vigorously deny breaching the franchise agreements and where plaintiffs contend that conduct not expressly prohibited in the franchise agreement is nonetheless a breach of its terms. Similarly, neither <u>John Keenan Co. v. Norrell Corp.</u>, 2001 U.S. Dist. LEXIS 10473 (E.D. La. 2001), nor <u>Jaguar Cars v. Blackhorse Motorworks, Ltd.</u>, 1998 U.S. Dist. LEXIS 22858 (E.D. Ky. 1998), involved an interpretation of the franchise agreements.

Plaintiffs cite <u>Smith v. Dowson</u>, 158 F.R.D. 138 (D. Minn. 1994), and <u>Hall v. Harleysville Ins. Co.</u>, 164 F.R.D. 172 (E.D. Pa. 1995), for the proposition that a request for information concerning third-parties merits issuance of a protective order. Opp. Brief at 5-6. As defendants pointed out in their moving brief, however, <u>Smith</u> is irrelevant because it deals with an action for false arrest and <u>Hall</u> supports defendants' position because the court there stated that an improper document request could be refashioned into an interrogatory, because "an interrogatory asking about other lawsuits, claims or notices will be more efficacious and less expensive." <u>Id</u>. at 173. Here, defendants have fashioned their request as an interrogatory.

10451

4

**B.    The Work-Product Doctrine and Privacy Concerns Do Not Apply**

Plaintiffs argue that relevant information is protected by the attorney work-product doctrine because "any investigation of a third party is protected by the work product privilege." Opp. Brief at 6. Interrogatory No. 3 sought, however, *the identities* of franchisees who have provided catering services, *a description* of the type of catering services provided, *a description* of the dates such services were provided, and *a description* of "actions taken by plaintiffs" regarding such catering services.

This information called for in the interrogatory, therefore, was straightforward. It did not call for documents but merely descriptions. The existence of such franchisees and the actions taken by plaintiffs regarding them are facts that are not assembled by an attorney in anticipation of litigation. Instead, plaintiffs try to make it appear as if defendants had demanded the complete case files of any investigation of a franchisee in the Dunkin' Donuts system and then argue that investigations are prepared in anticipation of litigation and are, therefore, protected. Opp. Brief at 6.

Plaintiffs also voice their concerns that production of the names of franchisees whom plaintiffs are investigating will "compromise any pending investigations." Opp. Brief at 7. Plaintiffs do not explain anywhere, however, why the protections of a confidentiality agreement would not be sufficient to allay this concern.

Plaintiffs also contend that they are concerned about the privacy of "third party franchisees." Opp. Brief at 7. They do not, however, explain why any of the information defendants have requested would violate a franchisee's privacy rights. Taking each piece of information requested by Interrogatory No. 3, (a) the identities of franchisees who have provided catering; (b) a description of the catering services; and (c) the dates such services were provided

10451                                    5

cannot be deemed "private" because all three involve actions and facts that are in the public knowledge, especially with respect to the customers of the franchisee. Furthermore, the actions taken by plaintiffs regarding catering services would be public to the extent that plaintiffs have commenced legal action against such franchisees or otherwise terminated or sought to terminate the franchises.

Even if the Court were to accept plaintiffs' arguments, therefore, the plaintiffs should at least be compelled to produce: (i) a list of franchisees conducting catering services, (ii) a description of those catering services and the dates of the services, and (iii) a list of such franchisees where plaintiffs took no action.

In addition, plaintiffs' arguments, even if accepted, would not apply in situations where the investigation was already made public, such as when the investigation resulted in litigation or when plaintiffs revealed that an investigation of catering services was taking place by issuing subpoenas to catering customers. Therefore, even accepting plaintiffs' arguments, their work-product and privacy arguments would apply in very few – if any – cases.

## POINT III

### PLAINTIFFS MUST PRODUCE THE LOSS PREVENTION UNDERREPORTING MANUAL

Document Request No. 3 asked for: "The Allied Domecq Loss Prevention Underreporting Manual in effect in 2001 and 2002." Plaintiffs contend that the Manual is a trade secret, that it is confidential commercial information, and that it is irrelevant. Opp. Brief 8-12. Nowhere, however, do plaintiffs dispute the point raised by defendants on page 11 of the moving brief that entering into a confidentiality agreement would sufficiently protect any concerns the plaintiffs may have. To the extent that plaintiffs are concerned that "disclosure would directly compromise existing and future investigations because it would 'teach' rogue franchisees

Dunkin's investigative techniques," Opp. Brief at 10, plaintiffs can designate particularly sensitive portions of the Manual as "Highly Confidential – For Attorneys' Eyes Only," a practice routinely followed under many confidentiality agreements in this Court.

Moreover, the cases cited by plaintiffs in support of their argument that the Manual should be protected bear no resemblance to the facts here. Both <u>Pate v. Nat'l Fund Raising Consultants of Arkansas, Inc.</u>, 20 F.3d 341 (8th Cir. 1994), and <u>Snelling & Snelling, Inc. v. Armel, Inc.</u>, 360 F. Supp. 1319 (W.D. La. 1973), involved franchisees who used training manuals that were described in the franchise agreements as trade secrets to set up businesses that competed with the franchisor. Here, the Loss Prevention Underreporting Manual, an internal auditing device, cannot be used to set up a competing business.

Plaintiffs also argue that the Manual is irrelevant because "evidence of a franchisor's 'pretext' or 'motive' is irrelevant and inadmissible when valid grounds to terminate a franchise otherwise exist." Opp. Brief at 12. As discussed previously, however, because no valid grounds for termination have yet been established here, plaintiffs' pretextual motives are highly relevant to the weight to be given their evidence. Plaintiffs have been unable to prove the claims asserted in their original complaint and are now attempting to amend their complaint in the hopes of finding something that will stick. Plaintiffs' motivations are, therefore, highly relevant under the "good cause" standard of the Connecticut Franchise Act because they explain why plaintiffs sought to terminate Mr. Stetzer on extremely weak evidence of underreporting and why they have doggedly continued their attempt to terminate the franchises.

In addition, in the discovery phase of litigation, plaintiffs' argument goes too far because it would allow them to defeat discovery requests on the basis of what they claim might be proven at trial. Under this broad brush, virtually no discovery request would pass muster because the

plaintiffs could simply claim that the material sought is irrelevant because plaintiffs will ultimately prevail at trial.

None of the cases on which plaintiffs rely were decided under the good cause requirement for termination under the Connecticut Franchise Act. Plaintiffs do not cite a single case holding that pretextual motives of a franchisor cannot under any circumstances deprive a franchisor of any good cause it may have under the Connecticut Franchise Act to terminate a franchisee. Furthermore, they ignore defendants' fourth affirmative defense that plaintiffs' claims are barred by the doctrine of unclean hands. Defendants' Answer, Verified Counterclaims and Jury Demand at 12.

Additionally, most, if not all, of plaintiffs' allegations about defendants' actions arise from the investigation plaintiffs conducted purportedly in accordance with the Loss Prevention Manual. If plaintiffs failed to follow the policies and procedures of the Manual, the conclusions that they drew may have been erroneous. Defendants should be permitted to test plaintiffs' investigation against plaintiffs' own Manual.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court order plaintiffs to answer Interrogatory Nos. 1 and 3 and produce documents in response to Request No. 3 of defendants' Second Set of Interrogatories and Second Request for Production of Documents dated August 6, 2003.

                              DEFENDANTS,
                              4 DONUTS, INC., GRANDO, INC., and
                              GLENN STETZER

By:   /s/ Richard S. Order
        Richard S. Order (ct 02761)
        Eric L. Palmquist (ct 24166)
        AXINN, VELTROP & HARKRIDER LLP
        90 State House Square
        Hartford, CT 06103-3702
        Telephone: 860-275-8100
        Facsimile: 860-275-8101
        Email:    rso@avhlaw.com

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing has been sent via first-class U.S. mail, postage prepaid, this 2nd day of December, 2003 to:

Robert L. Zisk, Esq.
Jeffrey L. Karlin, Esq.
Christopher M. Loveland, Esq.
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Avenue, Northwest
Suite 1000
Washington, DC 20037-1922

Paul D. Sanson, Esq.
Alexandra M. McHugh, Esq.
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819

Robert K. Walsh, Esq.
Law Offices of Robert K. Walsh LLC
193 State Street
P.O. Box 777
North Haven, CT 06473-0777

Paul N. Gilmore, Esq.
Brad N. Mondschein, Esq.
Amy Leete Van Dyke, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street
Hartford, CT 06123-1277

By: /s/ Eric L. Palmquist
    Eric L. Palmquist, Esq.
    Axinn, Veltrop & Harkrider LLP