IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x

DUNKIN' DONUTS INC. ET AL.        :        3:02 CV 1920 (MRK)

v.

4 DONUTS, INC. ET AL.             :        DATE: DECEMBER 9, 2003

---------------------------------------------------------x

## RULING ON DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY ANSWERS

The factual and procedural history of this protracted lawsuit is set forth in considerable detail in the nine prior discovery rulings issued in this case, familiarity with which is presumed.  (Dkts. ##54, 58, 79, 100, 101, 103, 111, 112, 136).  The Ruling on Plaintiffs' Motion to Compel, filed September 11, 2003 (Dkt. #100) ordered that all fact discovery be completed by October 31, 2003.  (At 23-24).[1]  On October 29, 2003, two days prior to this deadline, defendants 4 Donuts, Grando and Glenn Stetzer filed the pending Motion to Compel Production of Documents and Interrogatory Answers and brief in support.  (Dkts. ##115-16).[2]  On November 18, 2003, plaintiffs filed their brief in opposition.  (Dkt. #132).[3]  Defendants filed their reply brief on December 3, 2003.  (Dkt. #138).

---

[1] The deadline subsequently was extended to December 22, 2003.  (See Ruling on Plaintiffs' Motion to Amend, filed December 3, 2003.  (Dkt. #136, at 20-21).

[2] The following seven exhibits were attached to defendants' brief: copy of plaintiff's Answers to Defendants' Second Set of Interrogatories, dated September 9, 2003 (Exh. A); copy of plaintiff's Responses to Defendants' Second Request for Production of Documents, dated September 9, 2003 (Exh. B); copies of correspondence between counsel, dated September 19, September 30, and October 6, 2003 (Exhs. C-F); and excerpts from the deposition transcript of Joseph McGowan, taken on July 30 & August 1, 2003 (Exh. G).

[3] The following seventeen exhibits were attached: copy of "Consumer Contact Report," dated November 16, 2001 (Exh. 1); excerpts from the deposition transcript of defendant McManama, taken on October 15, 2003 (Exh. 2); copy of correspondence between counsel, dated October 30, 2003 (Exh. 3); excerpts from the deposition transcript of defendant Glenn Stetzer, taken on October 13, 2003 (Exh. 4); excerpts from the deposition transcript of Kathleen Jarvie

For the reasons stated below, defendants' Motion to Compel (Dkt. #115) is <u>granted in part and denied in part to the extent set forth below</u>.

## I. DISCUSSION

Only three discovery requests are at issue here – Interrogatories Nos. 1 and 3 of defendants' Second Set of Interrogatories and Request No. 3 of defendants' Second Request for Production of Documents.

<u>Interrogatory No. 1</u> asks plaintiffs to "[i]dentify each employee that plaintiffs contend was a foreigner working illegally in any of the franchises operated by the defendants." (Dkt. #116, Exh. A, at 3). Plaintiff Dunkin' Donuts, Incorporated ["plaintiff"] has objected on the basis of attorney-client privilege and work product doctrine, but without waiving its privilege, indicates that defendants may derive this information from their own records, and further indicates that "its investigation of this issue is continuing and it will provide a supplemental answer if necessary." (<u>Id.</u>).[4] Defendants acknowledge that while plaintiffs have not made an "express claim" in their Complaint that defendants have breached their Franchise Agreements by hiring illegal foreigners, at a number of depositions, plaintiffs' counsel have asked questions about the nationality and work status of certain employees. (Dkt. #116, at 3 & Dkt. #132, Exhs. 4-7). Defendants reiterated that discovery "is almost completed." (Dkt. #116, at 4). As a result, defendants argued that "if plaintiffs are not aware of any foreigner working illegally in any of the franchises, they should state this in their answer." (<u>Id.</u> See also Dkt. #138, at 2-3).

---

(Exh. 5); excerpts from the deposition transcript of Anthony Matusik, taken on September 9, 2003 (Exh. 6); excerpts from the deposition transcript of Christopher Matusik, taken on July 17, 2003 (Exh. 7); excerpts from the deposition transcript of Anthony Citerella, taken on October 24, 2003 (Exh. 8); copies of case law (Exhs. 9-13, 15-17) and; affidavit of Charles Reno, dated November 18, 2003 (Exh. 14).

[4]Plaintiff Dunkin' Donuts USA, Inc. did not respond to these discovery requests. (Dkt. #116, Exh. B & Exh. C, at 1).

2

In their brief in opposition, plaintiffs argue that they have not identified any foreigners working illegally at any of the franchises because they have not made any allegations to that effect, and "[t]hus far, [plaintiffs have] been unable to definitively identify any of [d]efendants' employees who are citizens of another country and working at their shops illegally." (Dkt. #132, at 2). While plaintiffs do not contend that any employees have "worked illegally at the franchises," "there is some evidence developed through the discovery process to support at least the inference that unauthorized employees were used as production workers at [d]efendants' shops," as evidenced by defendants' alleged failures to maintain IRS Forms 1099's and W-9's; such failures are alleged to violate the Franchise Agreements. (Id. at 2-4). Plaintiffs argue that they are unable to identify any foreign illegal workers, as they do not have access to defendants' handwritten payroll checks or Forms I-9's, if they exist. (Id. at 4).

Defendants, however, are entitled to an answer to this interrogatory, even if the answer is simply, in plaintiffs' own words, that "[t]hus far, [plaintiffs have] been unable to definitively identify any of [d]efendants' employees who are citizens of another country and working at their shops illegally." Plaintiffs shall serve a supplemental response **on or before December 16, 2003**.

Interrogatory No. 3 asks plaintiffs to identify each franchisee other than defendants in plaintiffs' system that has "provided 'catering' . . . and, for each such franchisee, describe the catering services provided, the dates such services were provided, and the actions taken by plaintiffs . . . with regard to such catering services." (Dkt. #116, Exh. A, at 4). Plaintiff has objected on the grounds that the interrogatory is irrelevant, vague, overly broad, unduly burdensome, and the information sought is protected by the attorney-client privilege and work product doctrine. (Id.). Defendants argue that this interrogatory is relevant in that

3

plaintiffs allege that defendants have breached Sections 8.A.3 or 8.O.3 of the Franchise Agreements by providing catering services, an activity which defendants contend "is widely prevalent in [plaintiffs'] system and has continued without plaintiffs' reprimand of other franchisees or termination of their franchises." (Dkt. #116, at 5). Defendants contend that if plaintiffs have failed to object to such activities by other franchisees, "this would be strong evidence that plaintiffs have interpreted section 8.A.3 to allow catering" and would further support defendants' claim that this lawsuit was filed as a "vendetta" against defendant Glenn Stetzer. (Id. See also Dkt. #138, at 3-4). Defendants also dispute that this information is protected by either the attorney-client privilege or the work product doctrine. (Dkt. #116, at 6-9. See also Dkt. #138, at 5). In their reply brief, defendants indicate that they are willing to abide by a confidentiality agreement, if necessary, and even assuming arguendo that plaintiffs are correct, at a minimum plaintiffs should be compelled to produce: (i) a list of franchisees conducting catering service, (ii) a description of those catering services and the dates of the services, and (iii) a list of such franchisees where plaintiffs took no action. (Dkt. #138, at 5-6)

Plaintiffs counter that under "well-established case law," the fact that a franchisor may treat other franchisees more leniently is not a defense to a breach of contract action. (Dkt. #132, at 4-6)(citing multiple cases). Plaintiffs further argue that to the extent that any investigations were made in preparation for litigation, such reports are protected work product. (Id. at 6-7 & Exh. 14). Plaintiffs additionally express concern that disclosure of any investigations would "compromise any pending investigations" and would "trample[]" the privacy interests of third party franchisees. (Dkt. #132, at 7-8).

Plaintiffs are correct that a franchisor is under no obligation to treat all franchisees equally. See, e.g., Original Great American Chocolate Chip Cookie Co. v. River Valley

4

Cookies, 970 F.2d 273, 279 (7th Cir.), reh. denied, 1992 U.S. App. LEXIS 20894 (7th Cir. 1992); Jaguar Cars v. Blackhorse Motorworks, Ltd., 1998 U.S. Dist. LEXIS 22858, at *17 (E.D. Ky. Nov. 2, 1998).  However, what is relevant here is how plaintiffs have interpreted Sections 8.A.3 or 8.O.3 of the Franchise Agreements with respect to the provision of catering services, not the penalties they have imposed upon other franchisees which have engaged in such activities.  According to the affidavit of Charles Reno, plaintiffs' Divisional Manager of Loss Prevention ["Reno Affidavit"], plaintiffs have investigated several franchisees suspected of operating unauthorized catering businesses, which investigations "were undertaken with an eye towards litigation because of the company's zero-tolerance policy for the operation of an unauthorized catering business."  (Dkt. #132, Exh. 14, ¶ 12).  The Reno Affidavit further indicates that if these suspicions are confirmed by the Loss Prevention Department, then "the matter is forwarded to the legal department to terminate the franchisee's Franchise Agreement and to determine whether litigation is necessary to enforce the termination."  (Id.).  Under these circumstances, plaintiffs are correct that the work product doctrine is implicated.  Jason's Enters., Inc. v. General Accident Ins. Co. of America, 1996 U.S. App. LEXIS 15350, at *14-16 (4th Cir.  June 25, 1996); NRLB v. Building & Constr. Traders Council, 1989 U.S. App. LEXIS 9411, at *5-9 (3d Cir. Apr. 6, 1989).  Plaintiffs' concerns that "disclosure would directly compromise existing and future investigations" and their concerns regarding the privacy interests of third party franchisees are legitimate, unless the matter is one of public record due to litigation or publicity.  (See Dkt. #138, at 6; Dkt. #132, at 10).

Accordingly, **on or before December 16, 2003**, plaintiffs are to forward to the Magistrate Judge's Chambers for her in camera review copies of plaintiffs' written investigations of the "several franchisees" described in the Reno Affidavit, which will be

5

reviewed primarily for the purpose of shedding light upon how plaintiffs have interpreted Sections 8.A.3 or 8.O.3 of the Franchise Agreements with respect to the provision of catering services.[5]

Document Request No. 3 seeks a copy of the Allied Domecq Loss Prevention Underreporting Manual in effect in 2001 and 2002. (Dkt. #116, Exh. B, at 3). Plaintiff has objected on the grounds that this request is irrelevant, and the information sought contains confidential commercial information and is protected by the attorney-client privilege, work product doctrine, and trade secret privilege. (Id.).

Joseph McGowan, plaintiffs' Loss Prevention Consultant, testified at his deposition that he conducted his investigation of defendants in accordance with plaintiffs' Loss Prevention Underreporting Manual ["Manual"], a black looseleaf binder approximately four inches thick that he has at home. (Dkt. #116, at 9-10 & Exh. G, at 30-31). Defendants argue that this Manual is relevant and "extremely important" to their defense, in that it will allow defendants "to assess whether the investigation was appropriate and was conducted in accordance with plaintiff's own procedures and policies" or whether the investigation was a "sham" and brought as a "vendetta against [defendant Glenn] Stetzer as revenge for a lawsuit he had brought against [plaintiffs] in 1997." (Dkt. #116, at 10). While they dispute that the Manual is a trade secret and contains commercial information (id. at 12-13), defendants nonetheless are willing to sign a confidentiality agreement. (Id. at 11). Defendants also dispute that the Manual is protected by the attorney-client privilege or work product privilege, as "it is a commercial and financial tool." (Id. at 11-12. See also Dkt. #138, at 6-8).

---

[5]To the extent any production is ordered, such documents will be subject to a Protective Order.

6

The Reno Affidavit indicates that Allied, plaintiffs' parent company, considers the Manual to be confidential and distributed to only "a select few employees" within the company (plaintiffs' Legal Department, and the Loss Prevention Managers, a Loss Prevention Analyst, the Division Managers and the Director of Allied's Loss Prevention Department), and recipients are instructed to keep it confidential and not to disclose it to anyone inside or outside the company. (Reno Affidavit, ¶¶ 2, 5-6). When outside investigators are hired by plaintiffs, these investigators are not given the Manual, but only instructions on investigation procedures, and they sign a confidentiality agreement not to disclose the investigation process. (Id. ¶ 7). According to Reno, disclosure of the Manual would cause "severe harm" to plaintiffs, by compromising existing and future investigations, and would assist dishonest franchisees in avoiding detection of underreporting. (Id. ¶¶ 8-9).

Under these circumstances, the Loss Prevention Manual constitutes a trade secret. Wilson v. Electro Marine Sys., Inc., 915 F.2d 1110, 1115 (7th Cir. 1990); Republic Sys. & Programming, Inc. v. Computer Assistance, Inc., 322 F. Supp. 619, 627-28 (D. Conn. 1970), aff'd, 440 F.2d 996 (2d Cir. 1971)(per curiam). (See also Dkt. #132, at 8-11).

Plaintiffs contend that the Manual is irrelevant because a franchisor's motivations, whether pretextual or retaliatory, have no bearing upon a franchisee's breach of a material term of a franchise agreement. McDonald's Corp. v. Robertson, 147 F.3d 1301, 1308-09 (11th Cir. 1998); Dunkin' Donuts Inc. v. Martinez, 2003 U.S. Dist. LEXIS 2694, at *33-34 (S.D. Fla. Feb. 21, 2003)(& multiple citations therein); Major Oldsmobile v. GMC, 1995 U.S. Dist. LEXIS 7418, at *26-27 (S.D.N.Y. May 31, 1995)(& multiple citations therein), aff'd mem., 101 F.3d 684 (2d Cir. 1996).

Accordingly, in an abundance of caution, **on or before January 5, 2004**, plaintiffs are to forward to the Magistrate Judge's Chambers for her in camera review a copy of Allied

7

Domecq Loss Prevention Underreporting Manual in effect in 2001 and 2002. Disclosure is not likely to be required unless plaintiffs' investigation of these defendants was grossly at odds with plaintiffs' own procedures and policies.[6]

## II. CONCLUSION

Accordingly, for the reasons stated above, defendants' Motion to Compel (Dkt. #115) is <u>granted in part and denied in part to the extent set forth above</u>.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 9th day of December, 2003.

Joan Glazer Margolis
United States Magistrate Judge

---

[6]To the extent any production is ordered, such documents will be subject to a strict Protective Order.

8