# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DUNKIN' DONUTS INCORPORATED and DUNKIN' DONUTS USA, INC., | : | CIVIL ACTION NO. 3:02 CV 1920 (MRK) |
| Plaintiffs, | : | |
| v. | : | |
| 4 DONUTS, INC., GRANDO, INC., GLENN STETZER, KATHLEEN STETZER, GEORGE GERMANO, and JAMES MCMANAMA, | : | DECEMBER 16, 2003 |
| Defendants. | : | |

## DEFENDANTS 4 DONUTS, INC., GRANDO, INC., GLENN STETZER AND GEORGE GERMANO'S OBJECTION TO RULING ON DEFENDANTS' MOTION TO COMPEL

Defendants 4 Donuts, Inc. ("4 Donuts"), Grando, Inc. ("Grando"), Glenn Stetzer and George Germano (collectively, the "defendants") respectfully object to portions of Magistrate Judge Margolis' Ruling on Defendants' Motion to Compel dated December 9, 2003, and received by defendants on December 11, 2003. Specifically, defendants object to the Ruling regarding Interrogatory No. 3 and Document Request No. 3.

Defendants 4 Donuts, Grando and Glenn Stetzer's motion to compel was dated October 28, 2003; defendant George Germano's motion to compel was dated December 5, 2003; plaintiffs' opposition brief was dated November 17, 2003; defendants 4 Donuts, Grando and Glenn Stetzer's reply brief was dated December 2, 2003; and defendants 4 Donuts, Grando and Glenn Stetzer's corrected reply brief was dated December 8, 2003.

## BACKGROUND

On October 29, 2002, plaintiffs filed their Complaint seeking to terminate defendants' Dunkin' Donuts' franchises. On November 28, 2002, defendants filed their Answer, alleging as

**ORAL ARGUMENT IS REQUESTED**

an affirmative defense the doctrine of unclean hands and asserting a counterclaim for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Defendants' Answer, Verified Counterclaims and Jury Demand at 12, 21. The basis for the affirmative defense and counterclaim was the allegation that plaintiffs sought to terminate defendants' franchises without the requisite good cause under the Connecticut Franchise Act and only as a vendetta for defendant Glenn Stetzer's earlier lawsuit against plaintiffs.

On August 6, 2003, defendants served on plaintiffs a Second Set of Interrogatories and a Second Request for Production of Documents.[1] Plaintiff Dunkin' Donuts Incorporated responded on September 9, 2003 largely by objecting to defendants' interrogatories and document requests. Exhibits A and B, respectively, to Defendants' Memorandum in Support of Motion to Compel (the "Motion to Compel"). On October 28, 2003, defendants filed a Motion to Compel[2] plaintiffs to respond to Interrogatories Nos. 1 and 3 of the Second Set of Interrogatories and Document Request No. 3 of the Second Request for Production of Documents.

Interrogatory No. 3 asked plaintiffs to:

> Identify each franchisee (other than defendants) in the Dunkin' Donuts system that has provided "catering" as described in Paragraph 39 of the Complaint and, for each such franchisee, describe the catering services provided, the dates such services were provided, and the actions taken by plaintiffs or Allied Domecq with regard to such catering services.

---

[1] Defendant George Germano served on plaintiffs an identical Second Set of Interrogatories and a Second Request for Production of Documents dated August 11, 2003. Plaintiffs provided the same responses to defendant George Germano as it did for defendants 4 Donuts, Grando and Glenn Stetzer on September 9, 2003.
[2] Defendant George Germano filed a Motion to Compel on December 5, 2003 incorporating all of the arguments set forth defendants 4 Donuts, Grando and Glenn Stetzer's Motion to Compel.

10600                                    2

Dunkin' Donuts objected, stating that catering services provided by other franchisees were not relevant and that the discovery of such information was protected by the attorney work-product doctrine. Plaintiffs' Opposition to Motion to Compel at 4-8.

In the Motion to Compel, defendants argued that this Interrogatory was relevant because plaintiffs alleged that Section 8.A.3 or 8.0.3 (depending on the standardized version used at the time) of the Franchise Agreements prohibited catering despite the fact that this section did not contain the word "catering." Motion to Compel at 5-6. Therefore, defendants wished to learn if plaintiffs had interpreted this section to prohibit catering with respect to other franchisees. Evidence showing that the plaintiffs had not interpreted this section to prohibit catering with respect to other franchisees would support defendants' vendetta theory and their affirmative defense of unclean hands and their CUTPA counterclaim.

Similarly, Document Request No. 3 called for production of "The Allied Domecq Loss Prevention Underreporting Manual in effect in 2001 and 2002." Defendants learned about this manual in the deposition of Joseph McGowan, Dunkin' Donuts' Loss Prevention Consultant. This manual sets out certain procedures for investigating underreporting. Mr. McGowan claimed that Dunkin' Donuts had followed these procedures in their investigation of defendants and that this investigation led them to the conclusion that defendants had underreported their sales. Defendants sought the production of the manual because any failure by plaintiffs to follow the procedures in the manual would tend to support defendants' vendetta theory by demonstrating that plaintiffs had not conducted a legitimate investigation of defendants. Motion to Compel at 10. Such proof would also support defendants' unclean hands defense and CUTPA claim that Dunkin' Donuts had committed an unfair trade practice by attempting to terminate one of its own franchisees based on an improper and inadequate investigation motivated by a vendetta.

On December 9, 2003, Magistrate Judge Margolis issued her Ruling On Defendants' Motion to Compel. Regarding Interrogatory No. 3, she ordered plaintiffs to produce *in camera* "copies of plaintiffs' written investigations" of several franchisees that plaintiffs alluded to in their opposition as having conducted unauthorized catering businesses. Ruling at 5. The Court stated that it would review these documents "for the purpose of shedding light upon how plaintiffs have interpreted Sections 8.A.3 or 8.0.3 of the Franchise Agreements." Ruling at 5-6.

The Court also ordered plaintiffs to produce *in camera* their Loss Prevention Underreporting Manual for 2001 and 2002 in response to Document Request No. 3 for the purpose of reviewing the manual in order to determine whether plaintiffs' "investigation of these defendants was grossly at odds with plaintiffs' own procedures and policies." Ruling at 8.

## ARGUMENT

Magistrate Judge Margolis' ruling contains errors of fact and law and should be reversed. Specifically, because Magistrate Judge Margolis has not participated in the depositions, read all the pertinent transcript portions, or reviewed all the pertinent documents, with all due respect, she is not in the position to adequately assess whether the information supports defendants' defenses and counterclaims. She also incorrectly ruled that the attorney work-product doctrine protected certain information related to Interrogatory No. 3.

In addition, her Ruling only addresses the fourth component of Interrogatory No. 3. The first three components are ignored. Finally, the Ruling does not address why the protections of a confidentiality agreement would not be sufficient to protect plaintiffs' concerns regarding the production of the Loss Prevention Underreporting Manual.

10600                                                                4

## POINT I

### MAGISTRATE JUDGE MARGOLIS DOES NOT HAVE SUFFICIENT KNOWLEDGE OF THE PERTINENT EVIDENCE TO ADEQUATELY ASSESS THE VALUE OF THE MATERIALS ORDERED FOR *IN CAMERA* INSPECTION

With all due respect, defendants object to Magistrate Judge Margolis' Ruling to the extent it calls for her to analyze whether or not the *in camera* materials provide any support for defendants' counterclaims and defenses. This analysis should be conducted by defendants' attorneys, not by a judge.

By ordering plaintiffs to produce the documents *in camera*, Magistrate Judge Margolis has acknowledged that the information is relevant because it may support defendants' affirmative defenses and counterclaims. Regarding Interrogatory No. 3 concerning catering information, she explicitly agreed with defendants' arguments, stating: "what is relevant here is how plaintiffs have interpreted Sections 8.A.3 or 8.0.3 of the Franchise Agreements with respect to the provision of catering services . . . ." Ruling at 5.

Because the information requested is relevant, defendants' attorneys have a right to analyze it. This right is essential to defendants' right to defend themselves against plaintiffs' claims, because only defendants' attorneys have the necessary familiarity with the issues and facts of this case to properly determine whether or not the information supports their defenses or counterclaims.

For example, Magistrate Judge Margolis states that she will analyze the Loss Prevention Underreporting Manual to determine whether "plaintiffs' investigation of these defendants was grossly at odds with plaintiffs' own procedures and policies." Ruling at 8. With all due respect, Magistrate Judge Margolis has little knowledge of the investigation plaintiffs conducted in this case. Her knowledge is limited to the thumbnail summaries occasionally provided in a motion or

10600                                    5

brief to illustrate a particular point. It is likely, therefore, that she will not be in a position to determine whether plaintiffs followed or violated the procedures described in the manual in their investigation of defendants.

Also, defendants sought the manual to determine whether, by defendants' calculations, the procedures would lead to the conclusion that defendants had underreported their sales. In other words, the manual describes a procedure to investigate underreporting. Plaintiffs claim that by following this procedure they determined that defendants were underreporting. Defendants would like to test this claim, and their attorneys are in the best position to do so.

Regarding Interrogatory No. 3, Magistrate Judge Margolis stated that she will review copies of plaintiffs' written investigations of some franchisees who allegedly provided catering services "for the purpose of shedding light upon how plaintiffs have interpreted Sections 8.A.3 or 8.0.3 of the Franchise Agreements." Ruling at 6. Once again, it is defendants' attorneys who are intimately familiar with the Franchise Agreements at issue and can, therefore, determine how the materials affect the analysis of Section 8.A.3 and any other sections of the franchise agreements that may be called into play.

While defendants appreciate Magistrate Judge Margolis' willingness to undertake this work, she is not in the best position to determine whether the information to be produced *in camera* supports defendants' defenses and counterclaims. Once Magistrate Judge Margolis made the finding that the information and documents requested were relevant, she should have ordered plaintiffs to comply with the discovery requests. She could have addressed plaintiffs' concerns by issuing an appropriate protective order safeguarding any confidential information, as she did indicate she would ultimately do. Ruling at 6 n. 5, 8 n. 6.

## POINT II

## THE ATTORNEY WORK-PRODUCT PROTECTION DOES NOT APPLY TO THE REQUESTED CATERING INFORMATION

Magistrate Judge Margolis ruled that the attorney work-product doctrine could protect certain of plaintiffs' documents regarding the investigation of unauthorized catering by franchisees. Ruling at 5. This is incorrect.

The work-product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003). The existence of franchisees conducting catering and the actions taken by plaintiffs regarding them are facts that are not assembled by an attorney in anticipation of litigation. Taking each piece of information requested by Interrogatory No. 3, (a) the identities of franchisees who have provided catering; (b) a description of the catering services; and (c) the dates such services were provided cannot be protected by the attorney work-product doctrine because all three involve actions and facts that are in the public knowledge, especially with respect to the customers of the franchisee.

Furthermore, the actions taken by plaintiffs regarding catering services would be public to the extent that plaintiffs have commenced legal action against such franchisees or otherwise terminated or sought to terminate the franchises. Therefore, even if the Court believes that the work-product doctrine may apply in certain situations, the plaintiffs should at least be compelled to produce: (i) a list of franchisees conducting catering services, (ii) a description of those catering services and the dates of the services, (iii) a list of such franchisees where plaintiffs took no action or where the action taken has already been revealed to the public, and (iv) a description of the actions taken by plaintiffs where such actions have already been revealed to the public.

## POINT III

## THE RULING IMPROPERLY LIMITED THE SCOPE OF INTERROGATORY NO. 3

Interrogatory No. 3 asked for four separate components of information regarding catering: (1) the identities of franchisees who provide catering services, (2) a description of the services, (3) the dates the service was provided, and (4) a description of plaintiffs' actions with regard to the catering services. The Ruling, however, ordered plaintiffs to produce *in camera* only documents related to the investigations of several franchisees referred to in Exhibit 14 of Plaintiffs' Opposition to the Motion to Compel dated November 17, 2003. Ruling at 5-6. This information relates only to the fourth part of defendants' request and does not even profess to be a complete answer to that. Because this information is just a fraction of the information requested by defendants, plaintiffs should be ordered to supply answers to all components of Interrogatory No. 3.

Plaintiffs' response regarding every franchisee providing catering services, not just a handpicked few, is relevant here. The information to be provided *in camera* only pertains to a select few incidents involving investigations of catering. This information will not reveal the numerous other times in which plaintiffs did not interpret this section to prohibit catering. There could be 5,000 Dunkin' Donuts franchisees conducting catering with no complaints from plaintiffs. If out of those 5,000 franchisees only 13 were investigated by plaintiffs, this would be strong evidence that plaintiffs only bring a catering charge when they want to get rid of a franchisee for some other reason. This, in turn, would undermine plaintiffs' claim that Section 8.A.3 of the franchise agreements prohibits catering and would support defendants' affirmative defense of unclean hands and their CUTPA counterclaim that plaintiffs brought this suit as a vendetta for Glenn Stetzer's earlier lawsuit against Dunkin' Donuts.

10600

8

Furthermore, Magistrate Judge Margolis ordered plaintiffs to produce *in camera* "copies of written investigations" concerning underreporting. Ruling at 5. This overlooks the fact that this inquiry was an interrogatory, not a document request. Defendants did not seek the internal investigatory documents of plaintiffs. Rather, defendants sought a written answer to their question. Plaintiffs should, therefore, be ordered to respond to the question regardless of the contents of the documents provided *in camera* to Magistrate Judge Margolis.

**POINT IV**

**A CONFIDENTIALITY AGREEMENT WILL PROTECT PLAINTIFFS'
INTERESTS IN THE LOSS PREVENTION UNDERREPORTING MANUAL**

During the briefing of this motion, defendants offered to enter into a confidentiality agreement to mollify plaintiffs' concerns regarding the secrecy of the Loss Prevention Underreporting Manual. Motion to Compel at 11; Reply in Further Support of Motion to Compel at 6-7. In their opposition brief, plaintiffs did not dispute that a confidentiality agreement would suitably protect them. While Magistrate Judge Margolis acknowledged defendants' offer on page 6 of the Ruling, she did not analyze the offer.

Even by viewing the manual as a trade secret, Magistrate Judge Margolis has found that it is relevant to defendants' defenses and counterclaims by ordering its production *in camera*. Because the manual is an internal auditing device that cannot be used by defendants to establish or operate competing businesses, there is no reason why a confidentiality agreement will not protect plaintiffs' interests. The plaintiffs, therefore, should be ordered to produce the manual to defendants regardless of the results of Magistrate Judge Margolis' review.

## CONCLUSION

For the foregoing reasons, Magistrate Judge Margolis' Ruling on Defendants' Motion to Compel should be overruled and the plaintiffs should be ordered to answer Interrogatory No. 3 and to produce the Loss Prevention Underreporting Manual.

DEFENDANTS,
4 DONUTS, INC., GRANDO, INC., and
GLENN STETZER

By:     /s/_____
        Richard S. Order (ct 02761)
        Eric L. Palmquist (ct 24166)
        AXINN, VELTROP & HARKRIDER LLP
        90 State House Square
        Hartford, CT  06103-3702
        Telephone:  860-275-8100
        Facsimile:  860-275-8101
        Email:     rso@avhlaw.com

DEFENDANT,
GEORGE GERMANO

By:     /s/_____
        Paul N. Gilmore, Esq. (ct 03347)
        Brad N. Mondschein, Esq. (ct 13800)
        Amy Leete Van Dyke, Esq. (ct 23181)
        UPDIKE, KELLY & SPELLACY, P.C.
        One State Street
        Hartford, CT  06123-1277
        Telephone: 860-548-2600
        Facsimile:  860-548-2680
        Email:     pgilmore@uks.com

10600

# CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing has been sent via first-class U.S.

mail, postage prepaid, this 16th day of December, 2003 to:

Richard L. Zisk, Esq.
Jeffrey L. Karlin, Esq.
Christopher M. Loveland, Esq.
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Avenue, Northwest
Suite 1000
Washington, DC  20037-1922

Paul D. Sanson, Esq.
Alexandra M. McHugh, Esq.
Shipman & Goodwin LLP
One American Row
Hartford, CT  06103-2819

Robert K. Walsh, Esq.
Law Offices of Robert K. Walsh LLC
193 State Street
P.O. Box 777
North Haven, CT  06473-0777

Paul N. Gilmore, Esq.
Brad N. Mondschein, Esq.
Amy Leete Van Dyke, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street
Hartford, CT  06123-1277

James McManama
1 Wheatfield Dr.
Wallingford, CT 06492


By: /s/_____
    Eric L. Palmquist, Esq.
    Axinn, Veltrop & Harkrider LLP

10600