UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DUNKIN' DONUTS INCORPORATED     :
and DUNKIN' DONUTS USA, INC.,   :    CIVIL ACTION NO.
                                :    3:02 CV 1920 (MRK)
        Plaintiffs,             :
                                :
    v.                          :
                                :
4 DONUTS, INC., GRANDO, INC.,   :
GLENN STETZER, KATHLEEN         :
STETZER, GEORGE GERMANO,        :
and JAMES MCMANAMA,             :    DECEMBER 16, 2003
                                :
        Defendants.             :

### DEFENDANTS 4 DONUTS, INC., GRANDO, INC., GLENN STETZER AND GEORGE GERMANO'S OBJECTION TO RULING ON PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR FIRST AMENDED COMPLAINT

Defendants 4 Donuts, Inc. ("4 Donuts"), Grando, Inc. ("Grando"), Glenn Stetzer and George Germano (collectively, "defendants") respectfully object to a portion of Magistrate Judge Margolis' Ruling on Plaintiffs' Motion For Leave To File Their First Amended Complaint dated December 3, 2003, and received by defendants on December 5, 2003. Specifically, defendants object to Section II.A. of the Ruling granting plaintiffs leave to amend their complaint to add a claim that defendants breached their franchise agreements by allegedly failing to file proper tax returns.

Plaintiffs' motion for leave to amend was dated October 3, 2003; defendants 4 Donuts, Grando, and Stetzer's opposition brief was dated October 23, 2003; defendant George Germano's opposition brief was dated October 30, 2003; and plaintiffs' reply brief was dated November 10, 2003.

**ORAL ARGUMENT IS REQUESTED**

## BACKGROUND

One year ago on October 24, 2002, plaintiffs sent defendant Glenn Stetzer a notice of termination of his Dunkin' Donuts franchises. In that termination notice, plaintiffs stated in a vague manner a number of purported reasons for the termination. In particular, plaintiffs stated: "Based on a variety of evidence, Dunkin' Donuts has concluded that you have used your Dunkin' Donuts franchised business to defraud the taxing authorities." Notice of Termination at 3, a copy of which is attached as **Exhibit A**.

A few days after sending this notice, plaintiffs filed their Complaint on October 29, 2002, alleging that defendants: (i) underreported their gross sales (Count I); (ii) transferred an interest in the franchises without plaintiffs' consent (Counts II, VI); (iii) violated various provisions of the franchises through an alleged assault of a former employee (Counts III, IV, VIII); (iv) conducted a catering business (Count V); and (v) violated various statutes by contesting their termination and continuing to operate their shops (Counts VII, IX, X, XI, XII). Plaintiffs did not include a count alleging tax violations.

On July 2, 2003, plaintiff Dunkin' Donuts Incorporated moved to compel certain documents and interrogatories from defendants. In Magistrate Judge Margolis' ruling on the motion dated September 11, 2003, the Court acknowledged defendants' argument that plaintiff Dunkin' Donuts Incorporated was searching for tax violations not alleged in the Complaint. The Court stated: "Moreover, plaintiffs' request for information pursuant to the 'obey all laws clause' in the Franchise Agreements is being used as an umbrella to include claims not accounted for in plaintiffs' complaint." Ruling On Motion to Compel dated September 11, 2003 at 23, a copy of which is attached as **Exhibit B**.

10551

2

In the Ruling on Motion to Compel, the Court also extended the discovery deadline from September 12, 2003 to October 31, 2003. Plaintiffs had requested a greater extension and defendants had opposed any extension.

On October 3, 2003, plaintiffs moved to amend their Complaint to add two new charges and counts: (i) that defendants defrauded the tax authorities (Count XIII); and (ii) that defendants breached the franchise agreement by selling donuts to Aromas Coffee and Bake Shop (Count XIV). On December 3, 2003, Magistrate Judge Margolis denied plaintiffs leave to amend their Complaint to add the charge regarding Aromas Coffee and Bake Shop, but granted plaintiffs leave to amend their Complaint to add the tax claim (Count XIII).

## ARGUMENT

Magistrate Judge Margolis' Ruling that plaintiffs may amend their Complaint to add a claim that defendants breached their franchise agreements by allegedly failing to file proper tax returns must be overruled because it is clearly erroneous and contrary to law.

Courts have denied motions to amend when the movant has offered no good reason for delaying assertion of their claims. The Court in Messier v. Southbury Training School, 1999 U.S. Dist. LEXIS 6992 at *7 (D. Conn. Jan. 5, 1999), stated: "District courts may deny leave to amend where the motion is made after an inordinate delay, the movant offers no adequate excuse for the delay, and the nonmovant would suffer undue prejudice."

Furthermore, courts have denied motions to amend where the plaintiff had knowledge of the claim but neglected to bring it. The court in Turner v. Mitchell Pontiac, Inc., 771 F. Supp. 530, 535 (D. Conn. 1991), stated that denying a motion to amend was "within the sound discretion of the district court where, for example, there was 'extended delay and failure to raise

initially claims of which . . . [the plaintiff] was well aware,'" quoting <u>Oreck Corp. v. Whirlpool Corp.</u>, 639 F.2d 75, 81 (2d Cir. 1980).

Significantly, the court in <u>Turner</u> denied the motion to amend where the plaintiff waited eight months to file claims based on the same "nucleus of operative facts" as its original claims and that plaintiff knew or should have known about earlier. <u>Id</u>.

Here, the original Complaint did not put defendants on notice of the tax claim. It does not even contain the word "tax." The evidence also shows that plaintiffs had knowledge of the tax claim prior to filing their Complaint in October of 2002, yet delayed bringing their motion to add the claim until the close of discovery. This delay unduly prejudiced defendants by denying them the ability to conduct fact discovery of the tax claims. In particular, defendants were denied the ability to learn the specifics of the claim through contention interrogatories and to gather evidence in support of their affirmative defense of unclean hands or their counterclaim for violation of the Connecticut Unfair Trade Practices Act.

<u>**POINT I**</u>

<u>**MAGISTRATE JUDGE MARGOLIS INCORRECTLY RULED THAT DEFENDANTS WERE ON NOTICE OF THE TAX CLAIM**</u>

Magistrate Judge Margolis ruled that defendants were on notice of the tax claim because the tax claim was referenced in the original Complaint and because the tax claim arose from the same set of facts alleged in the original Complaint. Ruling at 6-7. This is incorrect both factually and as a matter of law.

Magistrate Judge Margolis first found that the original Complaint put defendants on notice of the tax claim. Ruling at 6. This is incorrect for three reasons. First, the original Complaint does not include any language indicating that tax charges were part of the claims against defendants. Rather, it was only plaintiffs' *Notice of Termination* that mentioned taxes

but just in a single, vague, and conclusory line: "Based on a variety of evidence, Dunkin' Donuts has concluded that you have used your Dunkin' Donuts franchised business to defraud the taxing authorities." Notice of Termination at 3.

The original Complaint includes this single line: "Pursuant to the applicable provisions of the Franchise Agreements, on October 22, 2002, Dunkin' sent Defendants a Notice of Default and Termination . . . ." Original Complaint ¶ 40. It then goes on to allege twelve claims, none of which has anything to do with taxes. In fact, the word "tax" appears nowhere in the original Complaint. Rather than draw the inference that this single line put the defendants on notice of the tax claim, the total absence of the tax allegation in the Complaint does just the opposite: it gives defendants the impression that the vague tax allegation in the notice of termination had been purposefully omitted.

Second, Magistrate Judge Margolis found that plaintiffs only sought to bring the claim after having found "clarification" of the claim during discovery. Ruling at 7. This finding is at odds with her finding that the Complaint put defendants on notice of the claim and puts defendants in the impossible situation of being held to have been on notice of a claim that was not made in the Complaint (hence the need for leave to add the claim) and that had not yet allegedly been discovered or clarified by plaintiffs.

Third, in ruling on an earlier discovery motion, Magistrate Judge Margolis agreed with defendants' argument that the tax claim was not in the Complaint, stating: "plaintiffs' request for information pursuant to the 'obey all laws clause' in the Franchise Agreements is being used as an umbrella to include claims not accounted for in plaintiffs' complaint." Exhibit B.

Despite this earlier pronouncement, Magistrate Judge Margolis here found that the defendants had notice of the tax claim because: "Defendants' contention that the 'tax claim

10551

5

arises from the same set of operative facts as the claims in the original Complaint' reflects notice of these tax claims." Ruling at 6. This holding is incorrect because, as a matter of law, the fact that a new proposed claim arises from the same set of operative facts as the original claims does not automatically mean that a defendant was on notice of such a claim. This effectively disregards the admonitions of Messier and Turner, because rather than requiring plaintiffs to bring all their claims arising from the same set of facts in a timely manner, it puts the burden on defendants to predict what unalleged claims might be brought in the future.

## POINT II

### PLAINTIFFS HAD PRIOR KNOWLEDGE OF THE TAX CLAIM BUT CHOSE NOT TO BRING IT UNTIL THE CLOSE OF DISCOVERY

Plaintiffs had knowledge of the tax claim before filing their original Complaint but delayed bringing it until it was too late for defendants to engage in discovery on the claim.

Plaintiffs had knowledge of their tax claim because they mentioned it in their Notice of Termination prior to the filing of their Complaint. Notice of Termination at 3. Furthermore, in April 2002, six months before sending out the notice of termination, plaintiffs' investigator, Joe McGowan, conducted an audit of defendants' franchises and took away and copied three years' worth of defendants' tax returns and other financial records. Notes of Joe McGowan, a copy of which are attached as **Exhibit C**. Plaintiffs, therefore, had all the information necessary to bring the claim before filing the Complaint in October of 2002.

At the time plaintiffs filed their motion to add the tax claim in October of 2003, the fact discovery deadline in this case was due to end on October 31, 2003. Given the 30-day response period set forth in Federal Rules 33(b)(3) and 34(b), the final day for interrogatories or document requests to be served was October 1, 2003. Plaintiffs waited to bring their motion until October 3, thereby precluding defendants from conducting discovery on the tax claim.

## POINT III

## DEFENDANTS SUFFER PREJUDICE BY THE ADDITION OF THE TAX CLAIM

Magistrate Judge Margolis ruled that the defendants will not be prejudiced by the addition of the tax claim. Ruling at 8. Her conclusion was founded on the plaintiffs' statement that the basis for the tax law claims lies within defendants' own documents and that, therefore, defendants do not need to conduct discovery. Id. She further found that expert discovery will allow defendants to conduct adequate discovery on the issue. Id.

These findings are mistaken for four reasons. First, they are inconsistent. If defendants need expert discovery to defend themselves on these claims, then it cannot be said that discovery is unnecessary. Second, even if it is true that the basis for tax law claims lie within defendants' own records, this does not provide defendants with any information as to what the specific allegations are, something that contention interrogatories could have discovered. Under this logic, defendants in business cases would never be accorded discovery because all the information would be within their own records.

Third, expert discovery is not an adequate substitute for fact discovery because defendants will be expected to choose and prepare an expert with virtually no knowledge of the details of the tax claims, aside from what plaintiffs ultimately choose to disclose in their expert's report. Experts base their opinions on large part on the facts uncovered during the discovery process. Expert discovery, therefore, is not about collecting facts, but about analyzing facts uncovered during fact discovery. Pointing out that defendants can use expert discovery to make up for the absence of fact discovery is, therefore, an inadequate and inappropriate alternative.

Fourth, defendants need fact discovery to defend themselves on this claim and pursue their own counterclaims. For example, defendants raised the affirmative defense of unclean

10551  7

hands and brought a counterclaim under the Connecticut Unfair Trade Practices Act ("CUTPA") alleging that plaintiffs brought this suit as a vendetta against Glenn Stetzer for an earlier lawsuit filed by Mr. Stetzer against Dunkin' Donuts. Defendants' Answer, Verified Counterclaims and Jury Demand at 12, 21-22, a copy of which is attached at **Exhibit D**. Defendants would, therefore, benefit from discovery on the issues of when plaintiffs first learned about the alleged tax claim and of plaintiffs' apparent pattern of filing baseless termination actions alleging certain conduct in the hope of uncovering through discovery tax violations to supplant the original reasons for termination when they prove unsupportable. Such evidence would support defendants' affirmative defense and counterclaim.

Also, defendants could benefit from contention interrogatories to discover the details of the new tax claim. Without the answers to such interrogatories, defendants have no idea what the specific charges against them are and on what evidence they are based.

By allowing this late amendment, Magistrate Judge Margolis has allowed plaintiffs the benefit of discovery while at the same time denying defendants discovery on the same issue. This rewards plaintiffs for delaying their tax claim until the close of discovery despite claiming to have knowledge of it before filing their Complaint.

Plaintiffs' unnecessary delay, when they had full knowledge of the claim before commencing this litigation, foreclosed defendants from conducting any discovery on this claim. This is exactly the scenario that the courts in <u>Messier</u> and <u>Turner</u> sought to prevent.

10551                                    8

## CONCLUSION

For the foregoing reasons, Magistrate Judge Margolis' Ruling allowing plaintiffs to amend their complaint to add their tax claim (Count XIII) should be overruled and the Court should deny plaintiffs leave to add that claim.

DEFENDANTS,
4 DONUTS, INC., GRANDO, INC., and
GLENN STETZER

By: _____
Richard S. Order (ct 02761)
Eric L. Palmquist (ct 24166)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103-3702
Telephone: 860-275-8100
Facsimile: 860-275-8101
Email: rso@avhlaw.com


DEFENDANT,
GEORGE GERMANO

By: _____
Paul N. Gilmore, Esq. (ct 03347)
Brad N. Mondschein, Esq. (ct 13800)
Amy Leete Van Dyke, Esq. (ct 23181)
UPDIKE, KELLY & SPELLACY, P.C.
One State Street
Hartford, CT 06123-1277
Telephone: 860-548-2600
Facsimile: 860-548-2680
Email: pgilmore@uks.com

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing has been sent via first-class U.S. mail, postage prepaid, this 16th day of December, 2003 to:

Richard L. Zisk, Esq.
Jeffrey L. Karlin, Esq.
Christopher M. Loveland, Esq.
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Avenue, Northwest
Suite 1000
Washington, DC  20037-1922

Paul D. Sanson, Esq.
Alexandra M. McHugh, Esq.
Shipman & Goodwin LLP
One American Row
Hartford, CT  06103-2819

Robert K. Walsh, Esq.
Law Offices of Robert K. Walsh LLC
193 State Street
P.O. Box 777
North Haven, CT  06473-0777

Paul N. Gilmore, Esq.
Brad N. Mondschein, Esq.
Amy Leete Van Dyke, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street
Hartford, CT  06123-1277

James McManama
1 Wheatfield Dr.
Wallingford, CT 06492

By: _____
Eric L. Palmquist, Esq.
Axinn, Veltrop & Harkrider LLP

# EXHIBIT A

October 24, 2002



**ALLIED DOMECQ**
QUICK SERVICE RESTAURANTS

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Glenn Stetzer
291 Ferry Street
New Haven, CT

4 Donuts, Inc.
Glenn Stetzer
George Germano
1950 State Street
Hamden CT

4 Donuts, Inc.
Glenn Stetzer
George Germano
87 Frontage Road
East Haven, CT

Grando, Inc.
Glenn Stetzer
Kathleen Stetzer
475 Forbes Avenue
New Haven, CT 06513

4 Donuts, Inc.
Glenn Stetzer
George Germano
66 York Street
New Haven, CT

4 Donuts, Inc.
Glenn Stetzer
George Germano
200 Sargent Drive
New Haven, CT

Re: **Notice of Default and Termination**
New Haven, Connecticut (PC 304966)
Hamden, Connecticut (PC 308629)
East Haven, Connecticut (PC 302769)
New Haven, Connecticut (PC 330525)
New Haven, Connecticut (PC 302697)
New Haven, Connecticut (PC 302069)

Dear Franchisees:

You are hereby notified of certain defaults under the Franchise Agreements between Dunkin' Donuts Incorporated (hereinafter referred to as "Dunkin' Donuts") and the franchisees listed below, pursuant to which you operate Dunkin' Donuts franchises at the addresses listed:

| Franchisee | Date of Agreement | Location of Shop | |
|---|---|---|---|
| Glenn Stetzer | February 25, 1985 | 291 Perry Street New Haven, CT | 304966 |

ALLIED DOMECQ QSR
14 PACELLA PARK DRIVE PO BOX 317 RANDOLPH MA 02368 USA TEL...

Page Two
October 24, 2002

| | | | |
|---|---|---|---|
| 4 Donuts, Inc.<br>Glenn Stetzer<br>George Germano | August 27, 1992 | 1950 State Street<br>Hamden CT | 308629 |
| 4 Donuts, Inc.<br>Glenn Stetzer<br>George Germano | April 1, 1993 | 87 Frontage Road<br>East Haven, CT | 302769 |
| Grando, Inc.<br>Glenn Stetzer<br>Kathleen Stetzer | November 12, 1996 | 475 Forbes Avenue<br>New Haven, CT 06513 | 330525 |
| 4 Donuts, Inc.<br>Glenn Stetzer<br>George Germano | December 9, 1992 | 66 York Street<br>New Haven, CT | 302697 |
| 4 Donuts, Inc.<br>Glenn Stetzer<br>George Germano | May 28, 1992 | 200 Sargent Drive<br>New Haven, CT | 302069 |

It is a violation and default of the Franchise Agreements to fail to keep full, complete and accurate books and accounts in accordance with generally accepted accounting principles, and to fail to preserve for a period of three (3) years all accounting records and supporting documentation relating to the operation of the shop.

It is a violation and default of the Franchise Agreements to fail to report all gross sales to Dunkin' Donuts. Based on a variety of evidence, Dunkin' Donuts has concluded that you have intentionally and willfully failed to maintain accurate records of Gross Sales and other accounting records and supporting documentation, and to report all Gross Sales and pay franchise and advertising fees as required by the provisions of the Franchise Agreements. Due to the nature of the scheme, the amount by which you have underreported the Gross Sales and underpaid fees cannot be determined at this time.

It is a violation and default of the Franchise Agreements to engage in any other business which sells or offers to sell the same or substantially similar products to those offered by Dunkin' Donuts. Based on a variety of evidence, Dunkin' has concluded that you have operated a catering business in which you sold products that were the same or similar to the products

Page Three
October 24, 2002

offered for sale in your Dunkin' Donuts' shops. In addition, your use of the Dunkin' marks in connection with your catering business was injurious or prejudicial to the good will associated with Dunkin' Donuts' proprietary marks and constitutes use of Dunkin' Donuts' proprietary marks in a manner inconsistent with your Franchise Agreements.

It also is a violation and default of the Franchise Agreements to perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Dunkin' Donuts' proprietary marks and the Dunkin' Donuts system, or to fail to comply promptly with all applicable laws, rules, regulations, ordinances, and orders of public authorities. Based on a variety of evidence, Dunkin' Donuts has concluded that you have used your Dunkin' Donuts franchised business to defraud the taxing authorities. Your actions are in breach of the Franchise Agreements in that they are injurious or prejudicial to the goodwill associated with Dunkin' Donuts' proprietary marks and constitute a failure to comply promptly with all applicable laws.

It is a violation and default of the Franchise Agreements to interfere with an on-going investigation by Dunkin' Donuts of your sales reporting practices. Dunkin' Donuts' has obtained information that you have, with specific intent and without lawful authority, participated in, assisted, abetted and/or conspired in the assault and battery of a former manager of one of your Dunkin' Donuts shops who you knew to be cooperating with Dunkin' Donuts in its investigation of your sales reporting practices. Dunkin' Donuts has also obtained information that you have made or participated in the making of threats to your former manager and his parents and have damaged or participated in the damage of your former manager's personal property. Dunkin' has information that your actions were done, in part, to intimidate your former manager from providing information to Dunkin' Donuts that would assist Dunkin' in the examination of the books and records of your franchises, and in analyzing the operation of your businesses in accordance with Paragraph 6 of your Franchise Agreements. In addition, Dunkin' Donuts also has information that you participated in a conspiracy to obtain, by use of threats and violence, a retraction from your former manager of statements and information already provided to Dunkin' Donuts. As part of this conspiracy, you obtained a false notary public's seal as to the authenticity of the former manager's signature on a retraction he signed. These are additional breaches and defaults of the Franchise Agreements.

It also is a violation and default of each of the Franchise Agreements to transfer any interest in any Franchise Agreement, franchise, or corporate franchisee without the prior written consent of Dunkin' Donuts. Based on a variety of evidence, Dunkin' Donuts has concluded that you transferred ownership and/or control of one or more of the above franchises, Franchise Agreements, or shares of stock of a corporate franchisee, to James McManama and/or one or more third parties without the knowledge or consent of Dunkin' Donuts. Further, you have concealed from Dunkin' Donuts the identity of all persons with an interest in the franchises, Franchise Agreements, or corporations.

Page Four
October 24, 2002


As permitted by Paragraph 9 of the Franchise Agreements, and for the reasons stated in this Notice of Default and Termination, Dunkin' Donuts elects to and does hereby, without further notice, terminate your Franchise Agreements effective sixty (60) days from your receipt of this Notice.

Moreover, the termination of the Ferry Street Franchise Agreement also constitutes a default under the terms of the Forbes Avenue and Sargent Avenue Franchise Agreements, which cannot be cured as a matter of law and constitutes grounds for termination of the Forbes Avenue and Sargent Avenue Franchise Agreements. (Paragraph A-9.B.4.) The termination of the State Street Franchise Agreement also constitutes a default under the terms of the Frontage Road and York Street Franchise Agreements, which cannot be cured as a matter of law and constitutes grounds for termination of the Frontage Road and York Street Franchise Agreements. (Paragraph A-9.B.4.) Accordingly, as permitted by the Perry Street Franchise Agreement and the State Street Franchise Agreement, and for the reasons stated in this Notice of Termination, Dunkin' Donuts elects to and does hereby, terminate the Frontage Road, Forbes Avenue, York Street, and Sargent Avenue Franchise Agreements effective sixty (60) days from your receipt of this Notice.

Dunkin' Donuts further demands that you immediately take such actions as are necessary to comply with your post-termination obligations as set forth in the Franchise Agreements, including but not limited to, ceasing to use any methods associated with Dunkin' Donuts, ceasing to use any or all of the proprietary marks of Dunkin' Donuts, returning all manuals to Dunkin' Donuts, and complying with the post-termination obligations set forth in Paragraph 8 of the Franchise Agreements.

Alternatively, if it should be determined as a matter of law that your defaults are curable, then Dunkin' Donuts hereby gives you thirty (30) days from the receipt of this Notice in which to do those acts which you contend constitute a "cure" of the defaults under the Franchise Agreements. If, as a matter of law, a longer cure period is required, then that period is applicable to this Notice.

You are advised that if you contest the claimed defaults and contend that termination is not justified, Dunkin' Donuts will not enforce the termination by itself. Instead, it will submit the matter to a court to determine which party is right, and will seek judicial enforcement of the terminations and your post-termination obligations, as well as damages, attorneys' fees, costs and interest. If it should be determined that there is no good cause for termination of the Franchise Agreements, then Dunkin' Donuts will consider this Notice to be void. Any and all amounts paid and to be paid by you while in possession of the premises and operating under its trademarks may be accepted by Dunkin' Donuts without waiver of its rights and claims,

Page Five
October 24, 2002


including the right to terminate the Franchise Agreements, and the right to exercise its options under the Lease Option Agreements and lease rider. Nothing in this letter constitutes acquiescence by Dunkin' Donuts in your continued use of the Dunkin' Donuts proprietary marks.

Conversely, if at any time it is your position that the termination is valid and enforceable, please advise me immediately, in writing, so that we can take the appropriate legal steps to completely end the relationship.

To the extent that Dunkin' has the option to assume any leases for the franchised businesses after termination of the Franchise Agreements, Dunkin' will elect whether to exercise such options upon the issuance of an Order enforcing this Notice. To the extent that any of the franchises have EBO or other required remodels or other planned capital expenditures (other than those necessary to comply with repair and maintenance obligations under the Franchise Agreements) that would be effectuated in the coming weeks or months, you may hold the remodels or capital expenditures in abeyance until the court has ruled on the termination of the franchises. In the alternative, you may remodel or invest. However, please note that your decision to remodel or invest will not affect the termination of the franchises and you would be acting at your own risk should the terminations be enforced by the court.

Sincerely,

Jack Laudermilk
Assistant General Counsel