for personal financial records of their families and for the personal information not related to their capacities as directors. Id. at 1133-34. However, the FDIC, unlike plaintiffs, has broad statutory power to issue agency subpoenas, limited only by the Constitution. Id. at 1134. Thus, the Second Circuit concluded that production of the directors' personal information was relevant to determining their liability, to determining whether pursuit of claims against them would be cost-effective, to determining whether they transferred assets to family members and to determining whether to seek an attachment of the assets. Id. at 1134 & 1136. However, the Second Circuit "recognized certain 'rights to privacy' of individuals. . . . Among these protected rights is the 'individual interest in avoiding disclosure of personal matters.'" Id. at 1136-37 (multiple citations omitted). The issue, therefore, becomes, whether "by virtue of marriage or other familial relationship the family members have somehow relinquished protection of these rights." Id. at 1137. The Second Circuit concluded that they had not, and for such privacy rights to be outweighed, there must be a "showing of need for the material sought beyond its mere relevance to a proper investigation." Id. at 1138 (citation omitted).

In this case, plaintiffs have shown that defendants have transferred a substantial amount of money to at least one outside business, HMS Racing, without a full accounting of the advertising costs associated; some of the documents produced from defendants' franchises, to date, show significant cash expenditures for "food expenses," including payments categorized as such issued to employees (Dkt. #91, at 3-4 & Exhs. 3 & 5); approximately one month of defendants' wholesale sales were not reported (Dkt. #91, at 4 & Exhs. 6-7); and plaintiffs' Retail Sales Analysis found an approximately five thousand

20

dollar difference between what should have been reported and what was reported.[21] (Dkt. #91, at 4 & Exh. 8).  Although significant, the evidence uncovered thus far does not satisfy the heightened scrutiny applicable to discovery of family members' personal financial documents.  <u>To the extent that plaintiffs seek documents from defendants' spouses or dependent children, plaintiffs' requests are overbroad, without prejudice to plaintiffs later seeking additional information.</u>

Plaintiffs are correct to demand production of documents already ordered to be produced by this Court's February Ruling. (Dkt. #91, at 5-6).  <u>Thus, defendants' personal and business-related financial information directly or *indirectly* relating to the franchises involved in this case from 1998 to present must be produced **on or before September 29, 2003**, without prejudice to plaintiffs later seeking additional information.</u>  This includes production of documents and answer of interrogatories related to bank statements and bank-issued credit cards (Document Request Nos. 1-4; Interrogatory Nos. 1-2),[22] audits and IRS audits or investigations (Document Request Nos. 6-7),[23] loans (Document Request No. 8; Interrogatory No. 4),[24] property in which each franchisee holds an interest (Document

---

[21]The Retail Sales Analysis which plaintiffs cite shows a weekly variance of $1,419.06. (Dkt. #91, Exh. 8).

[22]Plaintiffs should be in receipt of defendants' bank records for the past three years, as ordered by this Court's February Ruling (Dkt. #54, at 11); thus production of two more years of records would not be unduly burdensome. To the extent plaintiffs have such documents, defendants are not required to duplicate their production. (<u>Id.</u>; Dkt. #95, at 2-3).

Defendants may protect their privacy interest in any records by preparing a confidentiality agreement governing the production of documents.

[23]Production is compelled in light of plaintiffs' claims and the evidence presented thus far of unaccounted for payroll taxes.

[24]To the extent plaintiffs have such documents, defendants are not required to duplicate their production. (Dkt. #80, at 24-25).

21

Request No. 9; Interrogatory No. 6),[25] businesses in which the franchisees have an interest (Document Request No. 12),[26] automobiles (Document Request No. 16; Interrogatory No. 10);[27] documents relating to the wholesale or branded products account or customer of defendants or the franchise (Document Request No. 17; Interrogatory No. 9),[28] payroll records relating to the operation of the franchises (Document Request No. 18),[29] and documents relating to any transfers of interest in the franchised business (Document Request No. 22).[30] To the extent there are documents for which defendants seek guidance as to their production, they may submit copies of such to this Magistrate Judge for her *in camera* review **on or before October 1, 2003**.

Defendants need not respond to requests regarding lawsuits (Interrogatory No. 12), as such information now is readily available as public information, gifts (Document Request No. 10; Interrogatory No. 5), as such information is not directly or indirectly related to defendants' participation in the franchises, and similarly need not respond to the request regarding royalties (Document No. 15), as they already have answered such request.

---

[25]See footnote 20 supra.

[26]Defendants need not produce duplicates of documents produced thus far (see Dkt. #80, at 25-26); however, to the extent defendants have not produced information relating to 4 Donuts, 2 Donuts, Grando or any other business, defendants must produce that information in accordance with this Ruling.

[27]Under ordinary circumstances, such information would be irrelevant. However, it is appropriate here given the documents referencing a "Jeep" and "Escort." See Section II.B. supra.

[28]Defendants contend plaintiffs are in receipt of this information from subpoenas to defendants' customers. (Dkt. #80, at 27-28). Additionally, in their surreply brief, defendants contend that plaintiffs have "records of wholesale accounts" (Dkt. #95, at 3); thus, to the extent such information is in defendants' possession from 1998 to present, defendants are not compelled to duplicate such documents.

[29]To the extent plaintiffs have such documents, defendants are not required to duplicate their production. (Dkt. #95, at 2-3).

[30]To the extent there are additional transfers of interests in the franchised businesses, beyond 2 Donuts (see Dkt. #80, at 29), such related documents must be produced.

AO 72A
(Rev. 8/82)

Plaintiffs' request for all computer files of the franchised business (Document Request No. 21), although relevant, is not narrowly tailored to request specific information; thus, such request, as worded, is unduly burdensome. Moreover, plaintiffs' request for information pursuant to the "obey all laws clause" in the Franchise Agreements is being used as an umbrella to include claims not accounted for in plaintiffs' complaint.

E. DISCOVERY DEADLINE

Like everything else in this litigation, counsel disagreed as to whether a further extension of time to complete discovery is necessary and what precipitated the need for such delay. (Dkt. #75, at 2; Dkt. #78, at 3; Dkt. #80, at 31-32; Dkt. #86, at 5-6; Dkt. #91, at 10). As previously indicated, on August 28, 2003, plaintiffs filed a Supplemental Memorandum (Dkt. #96), arguing why a continuance is necessary (id. at 2-4), but also indicating that counsel for defendants McManama and Germano consented to such extension, and that counsel for defendants Glenn Stetzer, 4 Donuts, and Grando provisionally consented, as long as discovery was limited to depositions already noticed by the parties. (Id. at 2). However, counsel for 4 Donuts, Grando and Glenn Stetzer disputes that he reached any agreement with plaintiffs' counsel. (Dkt. #99, at 1-4).

As the Magistrate Judge noted in the March Ruling:

[T]he Court will not engage in the micro managing that counsel apparently seeks. . . .

    This lawsuit is barely five months old, and already has generated unnecessary acrimony between counsel. Counsel are hereby forewarned that the Court will not tolerate counsel treating one another . . . in an unprofessional and disrespectful manner.

(Dkt. #58, at 7 n.3).

As the nine briefs (with fifty-eight exhibits) and this twenty-five page ruling on a single discovery motion amply demonstrate, the Court has been forced to micro manage discovery

AO 72A
(Rev. 8/82)

here, much of which should, and could, have been resolved by counsel, had they been behaving like mature adults. The behavior of counsel here borders on shocking – the *ad hominem* attacks of counsel on one another are a poor reflection upon a vocation which views itself as a "profession."    The Court is not unsympathetic to defendants' characterization of plaintiffs having "embarked on a scorched-earth discovery plan," particularly if the amounts at dispute prove to be as insignificant as defendants claim. (Dkt. #80, at 2, 5, n.3, 17; Dkt. #95, at 5-7 & nn.1-2).   This case does not involve alleged defalcations of the magnitude of Enron or WorldCom.  Defense counsel is correct that a substantial delay in the completion of discovery will transfer this lawsuit into a "war of attrition." (Dkt. #80, at 31)(emphasis omitted).

Accordingly, all fact discovery shall be completed **on or before October 31, 2003** and all expert discovery shall be completed **on or before December 31, 2003**.  There shall be no further extensions, absent compelling and unforeseeable circumstances.    A settlement conference will be held before this Magistrate Judge in early November 2003; counsel are to contact Chambers to schedule same.

### III. CONCLUSION

Accordingly, for the reasons stated above, plaintiffs Motion to Compel (Dkt. #74) is granted in part and denied in part to the extent set forth above.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same)**; FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit)**.

24

Dated at New Haven, Connecticut, this 11th day of September, 2003.

_____
Joan Glazer Margolis
United States Magistrate Judge

# EXHIBIT C

30 APRIL 02

FOLLOWING DOCUMENTS / ITEMS TAKEN FOR COPYING
BY JOE McGOWAN, AN AGENT OF ALLIED DOMECQ, WSR.

1.) COPIES OF TAX RETURNS  1998 - 2000  FOR:
   A. GLENN & KATHLEEN STETZER (PERSONAL)
   B. 4 DONUTS INC.
   C. GRANDO INC
   D. 2 DONUTS INC.

2.) WHOLESALE INVOICES  NOV. 01 - APR. 02
   A. YALE HOSPITAL
   B. ST. RAPHAEL'S HOSPITAL

3.) BANK STATEMENTS  NOV. 01 - MAR. 01
   A. GRANDO INC.        C. 2 DONUTS INC.
   B. 4 DONUTS INC.

4.) WEEKLY SALES REPORTING FORMS (FEE CARDS)
   W/E 17 NOV - 9 MAR. 02 - SIX STORES

5.) SIX FOLDERS CONTAINING FINISHING / THROWAWAY RECORDS
   FOR SIX STORES.

6.) SALES & USE TAX FORMS (OS-114) FOR:
   A. GRANDO INC.   } NOV. - MAR.
   B. 4 DONUTS INC. }

7.) PRODUCTION RECORDS - 4 PAGES - FOR:
   A. STATE ST. HAMDEN STORE (KILL PRODUCER)

8.) 1 YELLOW ENVELOPE CONTAINING VARIOUS PRODUCT MIX TAPES.

PAGE 1 OF 2

9.) SIX "SETS" OF DAILY CASH REPORTS FOR SIX STORES
17 NOV. Ø1 - 9 MAR. Ø2

10.) DCP INVOICES FOR GRANDO INC & 4 DONUTS INC.
NOV. Ø1 - MAR. Ø2 - APPEAR TO BE COMPLETE.

11.) PAYROLL RECORDS - '14 LYS, EMP. LISTINGS, TOTALS REPORT
99, 2000, 2001 - VARIOUS RECORDS.

12.) P&L's (CONSOLIDATED) FOR SIX STORES ~~1998 99~~ 1999-20..

13.) W-2s FOR GRANDO INC & 4 DONUTS INC. (2001)

14.) 2 BOXES CONTAINING VARIOUS CASH REGISTER TAPE
& COUPONS. CURSORY INSPECTION SHOWS TAPES ARE
NOT IDENTIFIABLE BY DATE OR STORE

NOTHING FOLLOWS

30 APR Ø2

PAGE 2 OF 2

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DUNKIN' DONUTS INCORPORATED,<br> a Delaware corporation, and<br>DUNKIN' DONUTS USA, INC.,<br> A Michigan corporation,<br><br>     Plaintiffs,<br><br>  v.<br><br>4 DONUTS, INC.,<br> a Connecticut corporation<br>GRANDO, INC.<br> a Connecticut corporation<br>GLENN STETZER<br>KATHLEEN STETZER<br>GEORGE GERMANO, and<br>JAMES MCMANAMA | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br>C.A. No. 302CV1920 (JBA)<br><br><br><br><br><br><br><br><br>NOVEMBER 18, 2002 |

## DEFENDANTS' ANSWER, VERIFIED COUNTERCLAIMS AND JURY DEMAND

Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, and James McManama (the "Defendants") answer plaintiff's Complaint dated October 29, 2002 as follows:

1.     The Defendants admit that Dunkin' Donuts, Incorporated is engaged in the business of franchising "Dunkin' Donuts" shops.  With regard to the remaining allegations of Paragraph 1, the Defendants do not have sufficient knowledge of information upon which to from a belief and therefore leave the plaintiffs to their proof.

303490

2.     With regard to the allegations of Paragraph 2, the Defendants do not have sufficient knowledge of information upon which to from a belief and therefore leave the plaintiffs to their proof.

3.     The Defendants deny that the Frontage Road shop Franchise Agreement is dated April 1, 1993.  The remaining allegations of Paragraph 3 are admitted.

4.     The allegations of Paragraph 4 are admitted.

5.     The Defendants deny that Glenn Stetzer is an owner of the Forbes Avenue shop.  The Defendants admit the remaining allegations of Paragraph 5.

6.     To the extent that the allegations in Paragraph 6 are not directed to answering Defendants, no response is required.

7.     To the extent that the allegations in Paragraph 7 are not directed to answering Defendants, no response is required.

8.     The Defendants deny the allegations in Paragraph 8.

9.     As the allegations contained in Paragraph 9 are not factual, but rather contain the plaintiff's statement of jurisdiction, no response is required or made.

10.     As the allegations contained in Paragraph 10 are not factual, but rather contain the plaintiff's statement of venue, no response is required or made.

11.     The allegations of Paragraph 11 are admitted.

12.     To the extent that "Dunkin'" refers to Dunkin Donuts, Incorporated, the allegations of Paragraph 12 are admitted.

13.     With regard to the allegations of Paragraph 13, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

14.     As to the allegations contained in Paragraph 14, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

15.     As to the allegations contained in Paragraph 15, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

16.     As to the allegations contained in Paragraph 16, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

17.     As to the allegations contained in Paragraph 17, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

18.     As to the allegations contained in Paragraph 18, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

19.     As to the allegations contained in Paragraph 19, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

20.     As to the allegations contained in Paragraph 20, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

21.     The Defendants admit the allegations of Paragraph 21.

22.     The Defendants admit that Glenn Stetzer agreed to do certain things under the Ferry Street Franchise Agreement dated February 25, 1985, which document speaks for itself.  The Defendants deny that Paragraphs 22(a) through 22(j) set forth an accurate or complete rendition of the terms of the Ferry Street Franchise Agreement.  With regard to the remaining allegations of Paragraph 22, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

23.     The Defendants admit that Glenn Stetzer agreed to do certain things under the Ferry Street Franchise Agreement dated February 25, 1985, which document speaks for itself.

303490                                    4

24.     To the extent that "The Franchise Agreement" refers to the Ferry Street Franchise Agreement, the Defendants admit that the Ferry Street Franchise Agreement dated February 25, 1985, which document speaks for itself, comprises of several pages of paragraphs which paragraphs are similar to those paragraphs quoted as Section 7.A and Sections 9.C and 9.C.2.

25.     The Defendants admit that Glenn Stetzer, Grando, Inc., and 4 Donuts, Inc. were licensed to use the Dunkin' Donuts trademarks, trade name and trade dress pursuant to certain franchise agreements. The Defendants further admit that James McManama was not licensed to use the Dunkin' Donuts trademarks, trade name and trade dress. To the extent that the allegations are directed to defendants other than the answering Defendants, no response is required.

26.     The Defendants admit that 4 Donuts, Inc. and Glenn Stetzer agreed to do certain things under the State Street Franchise Agreement, Frontage Road Franchise Agreement, and the Sargent Drive Franchise Agreement, which documents speak for themselves, and that 4 Donuts, Inc. agreed to certain things under the York Street Franchise Agreement, which document speaks for itself. The Defendants deny that Paragraphs 26(a) through 26(k) set forth an accurate or complete rendition of the terms of the State Street Franchise Agreement, Frontage Road Franchise Agreement, Sargent Drive Franchise Agreement, and York Street Franchise Agreement. With regard to the remaining allegations of Paragraph 26, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

27.    The Defendants admit that State Street Franchise Agreement, Frontage Road Agreement, York Street Franchise Agreement, and Sargent Drive Franchise Agreement, which documents speak for themselves, comprise of several pages of paragraphs which paragraphs are similar to that paragraph quoted as Sections 10.B or 10.1.  To the extent that the allegations are directed to defendants other than the answering Defendants, no response is required.

28.    The Defendants admit that 4 Donuts, Inc. and Glenn Stetzer agreed to do certain things under the State Street Franchise Agreement, Frontage Road Franchise Agreement and the Sargent Drive Franchise Agreement, which documents speak for themselves, and that 4 Donuts, Inc. agreed to certain things under the York Street Franchise Agreement, which document speaks for itself.  The Defendants deny that Paragraph 28 sets forth an accurate or complete rendition of Paragraphs 8.A.3 or 8.0.3 of these Franchise Agreements.  To the extent that the allegations are directed to defendants other than the answering Defendants, no response is required.

29.    The Defendants deny that every Defendant executed and agreed to the State Street Franchise Agreement, Frontage Road Franchise Agreement, York Street Franchise Agreement, and the Sargent Drive Franchise Agreement.  The Defendants admit that the State Street Franchise Agreement, Frontage Road Franchise Agreement, York Street Franchise Agreement, and the Sargent Drive Franchise Agreement, which documents speak for themselves, comprise of several pages of paragraphs which paragraphs are similar to those paragraphs quoted as Sections 7.A, 7.0, 9.F and

9.F.2, and 9.4 and 9.4.2. With regard to the remaining allegations of Paragraph 29, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof. To the extent that the allegations are directed to defendants other than the answering Defendants, no response is required.

      30.     The Defendants admit that 4 Donuts, Inc. and Glenn Stetzer agreed to do certain things under the State Street Franchise Agreement, Frontage Road Franchise Agreement and the Sargent Drive Franchise Agreement, which documents speak for themselves, and that 4 Donuts, Inc. agreed to certain things under the York Street Franchise Agreement, which document speaks for itself. The Defendants deny that Paragraph 30 sets forth an accurate or complete rendition of Paragraphs 9.C.2 or 9.3 of these Franchise Agreements. To the extent that the allegations are directed to defendants other than the answering Defendants, no response is required.

      31.     The allegations of Paragraph 31 are admitted.

      32.     The Defendants admit that the York Street Franchise Agreement is subject to an Addendum, which document speaks for itself. The Defendants deny that Paragraph 32 sets forth an accurate or complete rendition of the terms of the Addendum. With regard to the remaining allegations of Paragraph 32, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

33.    The Defendants admit that the Forbes Street Franchise Agreement, contains a Schedule "A-3" entitled, "Additional Provisions for a Satellite Unit" and that the Ferry Street Franchise Agreement contains a document entitled, "Addendum to Dunkin' Donuts Franchise Agreement for a Satellite Unit (the "Dunkin' Donuts Shop")," which document speaks for itself. The Defendants deny that Paragraph 33 sets forth an accurate or complete rendition of the terms of the Addendum.   With regard to the remaining allegations of Paragraph 33, the Defendants do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof.

34.    The allegations of Paragraph 34 are denied.

35.    The allegations of Paragraph 35 are denied.

36.    The allegations of Paragraph 36 are denied.

37.    The allegations of Paragraph 37 are denied.

38.    The allegations of Paragraph 38 are denied.

39.    The allegations of Paragraph 39 are denied.

40.    The allegations of Paragraph 40 are admitted except that the Notice of Termination is dated October 24, 2002.

41.    The Defendants admit that they continue to operate under the Franchise Agreements. The remaining allegations of Paragraph 41 are denied.

42.    The Defendants' responses to Paragraphs 1 through 41 are incorporated by reference.

43.    The allegations of Paragraph 43 are denied.

44.    The allegations of Paragraph 44 are denied.

45.    The Defendants' responses to Paragraphs 1 through 44 are incorporated by reference.

46.    The Defendants admit only that an interest was transferred to James McManama sometime after May 28, 1992 in the State Street Franchise Agreement, York Street Franchise Agreement and Sargent Drive Franchise Agreement, but said interest was transferred back to Glenn Stetzer shortly thereafter.  The Defendants deny the remaining allegations of Paragraph 46.  To the extent that the allegations are directed to defendants other than the answering Defendants, no response is required.

47.    The allegations of Paragraph 47 are denied.

48.    The allegations of Paragraph 48 are denied.

49.    The Defendants' responses to Paragraphs 1 through 48 are incorporated by reference.

50.    The allegations of Paragraph 50 are denied.

51.    The allegations of Paragraph 51 are denied.

52.    The Defendants' responses to Paragraphs 1 through 51 are incorporated by reference.

53.    The allegations of Paragraph 53 are denied.

54.    The allegations of Paragraph 54 are denied.

55.   The Defendants' responses to Paragraphs 1 through 54 are incorporated by reference.

56.   The allegations of Paragraph 56 are denied.

57.   The allegations of Paragraph 57 are denied.

58.   The Defendants' responses to Paragraphs 1 through 58 are incorporated by reference.

59.   The allegations of Paragraph 59 are denied.

60.   The allegations of Paragraph 60 are denied.

61.   The Defendants' responses to Paragraphs 1 through 60 are incorporated by reference.

62.   The allegations of Paragraph 62 are admitted.  To the extent that the allegations are directed to defendants other than the answering Defendants, no response is required.

63.   The Defendants admit that they are continuing to operate under the Franchise Agreements.  The remaining allegations of Paragraph 63 are denied.

64.   The allegations of Paragraph 65 are denied.

65.   The Defendants' responses to Paragraphs 1 through 64 are incorporated by reference.

66.   The allegations of Paragraph 66 are denied.

67.   The allegations of Paragraph 67 are denied.

68.   The Defendants' responses to Paragraphs 1 through 67 are incorporated by reference.

69.   The allegations of Paragraph 69 are denied.

70.   The allegations of Paragraph 70 are denied.