A.    **VIOLATION OF THE CONNECTICUT FRANCHISE ACT AND
CUTPA CONSTITUTES IRREPARABLE HARM PER SE**

The Connecticut Franchise Act expressly provides for injunctive relief for violation of its

provisions regarding termination.  Conn. Gen. Stat. § 42-133g(a).  The Connecticut Unfair Trade

Practices Act ("CUTPA") also provides for injunctive relief.  Conn. Gen. Stat. § 42-110g(d).

Therefore, violation of the Connecticut Franchise Act or CUTPA, as alleged in the First Claim For

Relief and Second Claim For Relief in the Verified Counterclaim, is proof per se of irreparable harm

and lack of an adequate remedy at law.

A federal court sitting in diversity and construing a state statute providing for injunctive relief,

as here, must apply the state standards for issuing injunctions.  Port of New York Authority v.

Eastern Air Lines, Inc., 259 F. Supp. 745, 753 (E.D.N.Y. 1966).  In Burns v. Barrett, 212 Conn. 176,

193, 561 A.2d 1378, 1387 (1989), cert. denied, 493 U.S. 1003 (1989), the Connecticut Supreme

Court held that:

> Where a statute expressly provides for equitable remedies in addition to the
> ordinary legal ones, it may be presumed that there is no adequate legal remedy,
> because the legislature would not have provided the additional remedies if they
> were not needed.

See also Gelinas v. Town of West Hartford, 225 Conn. 575, 588, 626 A.2d 259, 267 (1993);

Conservation Commission v. Price, 193 Conn. 414, 429-30, 479 A.2d 187, 196 (1984).

In <u>Petereit v. S.B. Thomas, Inc.</u>, 63 F.3d 1169, 1186-87 (2d Cir. 1995), the court stressed that

the franchisor must comply with the procedural and notice requirements of the Connecticut Franchise

Act and that it "may be enjoined to compel future compliance with the procedural requirements of the

Act." Additionally, the Connecticut Supreme Court affirmed the trial court's issuance of an

injunction prohibiting the termination of the franchisee in <u>Hartford Electric Supply Co. v. Allen-</u>

<u>Bradley Co., Inc.</u>, 250 Conn. 334, 736 A.2d 824 (1999). Dunkin' Donuts has failed to comply with

the procedural and notice requirements of the Connecticut Franchise Act. Accordingly, Dunkin'

Donuts' violation of the Connecticut Franchise Act and CUTPA constitutes irreparable harm.

**B.    COMPLETE TERMINATION OF A FRANCHISE CONSTITUTES IRREPARABLE HARM**

In <u>Petereit</u>, the court held that injunctive relief may be available to some of the franchisees on

remand if they:

> show that the lost profits resulting from a realignment by [the
> manufacturer] of such magnitude as to threaten the viability of [the
> franchisees'] businesses. Major disruption of a business can be as
> harmful as its termination and thereby constitute irreparable injury.
> Upon such a showing, plaintiffs may be entitled to injunctive relief.

63 F.3d at 1186 (emphasis added), <u>citing</u> <u>Semmes Motors, Inc. v. Ford Motor Co.</u>, 429 F.2d 1197,
1205 (2d Cir. 1970) (temporary injunction pending litigation proper where dealership completely
terminated); <u>Automotive Elec. Serv. Corp. v. Ass'n of Automotive Aftermarket Distribs.</u>, 747 F.
Supp. 1483, 1513-14 (E.D.N.Y. 1990) (permanent injunction issued where, under the circumstances,
loss of one-third gross sales that would result from termination threatened existence of business).

Implicit in this passage is the Second Circuit's understanding that complete termination of a franchise would constitute irreparable harm and that preliminary injunctive relief would be appropriate to prevent termination pending litigation. Clearly, the total loss of counterclaimants' franchises and business after over fifteen years of hard work and dedication to the Dunkin' Donuts system would constitute an irreparable harm to them.

## II.    LIKELIHOOD OF SUCCESS ON THE MERITS

### A.    THE COUNTERCLAIMANTS' SHOPS ARE FRANCHISES SUBJECT TO THE CONNECTICUT FRANCHISE ACT

The Counterclaimants' shops are franchises within the meaning of and protected by the Connecticut Franchise Act, Connecticut General Statutes §§ 42-133e through 42-133h because the Counterclaimants' relationship with Dunkin' Donuts falls within its definitions of "franchise," "franchisor," and "franchisee":

> (b)    "Franchise" means an oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, . . . and (2) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate, and includes any agreement between a manufacturer, refiner or producer and a distributor, wholesaler or jobber, between a manufacturer, refiner or producer and a retailer, or between a distributor, wholesaler or jobber and a retailer;

> (c)    "Franchisor" means a person who grants a franchise to another person, including a manufacturer, refiner or producer or a distributor, wholesaler or jobber

who grants to a distributor, wholesaler or jobber or retailer, as the case may be, the authority to use a trademark, tradename, service mark or other identifying symbol or name under a franchise;

(d)     "Franchisee" means a person to whom a franchise is granted, including a distributor, wholesaler or jobber or retailer who is granted the authority under a franchise to use a trademark, tradename, service mark or other identifying symbol or name.

Conn. Gen. Stat. § 42-133e.

In its Complaint, Dunkin' Donuts admits that it is "in the business of franchising independent business persons to operate Dunkin' Donuts shops throughout the United States" and that "Dunkin' is the franchisor of the Dunkin' Donuts franchise system." See Compl. ¶1, 12.   Therefore, Dunkin' Donuts does not dispute that it is subject to the Connecticut Franchise Act.

### B.     DUNKIN' DONUTS HAS ATTEMPTED TO TERMINATE COUNTERCLAIMANTS' FRANCHISES IN VIOLATION OF THE CONNECTICUT FRANCHISE ACT

Dunkin' Donuts attempt to terminate the Counterclaimants' franchises violates the Connecticut Franchise Act because the Counterclaimants substantially complied with their obligations as franchisees under the Franchise Agreements.  Under the Connecticut Franchise Act, a franchise can be terminated only (1) for good cause, (2) by written notice 60 days before the

termination, and (3) by written notice stating the good cause.[1]  Dunkin' Donuts without good cause

and proper notice is attempting to force the Counterclaimants out of the Dunkin' Donuts system.

The ten-year renewal term for the Sargent Drive shop expired on June 21, 2002.  The Sargent

Drive Franchise Agreement requires that the Sargent Drive shop be remodeled no later than the tenth

anniversary of the original opening date, which was on June 21, 2002.  On January 26, 2001, in

preparation for remodeling of the Sargent Drive shop, Glenn Stetzer and James McManama, met with

two agents of Dunkin' Donuts, Joe Chaves and David Crisfulla.  During the January 26, 2001

meeting, Glenn Stetzer requested an extension or renewal of the Sargent Drive Franchise Agreement

for an additional ten-year term prior to incurring the expense of remodeling.  Glenn Stetzer explained

to Joe Chaves and David Crisfulla that it would make sense to incur the expense of remodeling if he

---

[1] **§ 42-133f.  Termination, or cancellation of, or failure to renew a franchise**

> No franchisor shall, directly, or through any officer, agent or employee, terminate,
> cancel or fail to renew a franchise, <u>except for good cause</u> which shall include, but not
> be limited to the franchisee's refusal or failure to comply substantially with any
> material and reasonable obligation of the franchise agreement or for the reasons stated
> in subsection (e) of this section. The franchisor shall give the franchisee written notice
> of such termination, cancellation or intent not to renew, at least sixty days in advance
> to such termination, cancellation or failure to renew with the cause stated thereon;
> provided, in the event the franchisor elects not to renew a franchise pursuant to
> subsection (e) of this section, the franchisor shall give the franchisee written notice of
> such intent not to renew at least six months prior to the expiration of the current
> franchise agreement...

Conn. Gen. Stat. § 42-133f(a) (emphasis added).

stood to enjoy the benefits of the remodeling for a substantial period of time.  In response to Glenn Stetzer's request, David Crisfulla stated that Dunkin' Donuts would not allow the renewal of any of Glenn Stetzer's six franchises in retaliation for a previous lawsuit brought by Glenn Stetzer against Dunkin' Donuts.

In a letter dated March 19, 2001 to Dunkin' Donuts, another request was made for an additional ten year term of the Sargent Drive Franchise Agreement.  In a letter dated March 23, 2001, Dunkin' Donuts responded, "The franchise agreement for the Sargent Drive location does not expire until June 21, 2002.  We are not prepared to make a determination on renewal at this time.  Your client will be advised approximately 6 months prior to the expiration of our decision based on a review of all factors at that time."

In another letter dated April 17, 2001 to Dunkin' Donuts, a request was made for Dunkin' Donuts to confirm or deny David Crisfulla's statement regarding nonrenewal and, if the statement were confirmed, to provide all grounds for nonrenewal.

In August 29, 2001, Dunkin' Donuts advised Glenn Stetzer that he should wait to begin remodeling the Sargent Drive shop until he receives Dunkin' Donuts determination on renewal.  Dunkin' Donuts confirmed that so long as Glenn Stetzer begins his remodel in a timely manner after receiving confirmation of renewal, Dunkin Donuts will allow Glenn Stetzer additional time after June 21, 2002 to complete the remodel of the Sargent Drive location and will not consider Glenn Stetzer in

default of the Sargent Drive Franchise Agreement for not completing the remodel on or before June 21, 2002. In a letter dated August 31, 2001 to Dunkin' Donuts, a request was made for confirmation regarding the renewal of the Sargent Drive Franchise Agreement by January 21, 2002.

In April, 2002, a Dunkin' Donuts representative examined the books and records ("Examination") of the six franchise shops operated by counterclaimants. The results of the Examination were never disclosed to counterclaimants.

On June 11, 2002, another request was made to Dunkin' Donuts regarding the renewal of the Sargent Drive Franchise Agreement. By June 21, 2002, despite numerous inquiries to Joe Chaves by Glenn Stetzer, Dunkin' Donuts had still not confirmed its renewal of the Sargent Drive Franchise Agreement even though the six months had long passed and the Franchise Agreement was on the verge of expiration.

Dunkin' Donuts failed to adequately respond to counterclaimants' repeated requests for assistance regarding the renewal for the Sargent Drive Franchise Agreement. Since Dunkin' Donuts failed to either send a notice of nonrenewal, termination or cancellation to 4 Donuts, Inc. or Glenn Stetzer sixty (60) days prior to June 21, 2002, the Sargent Drive Franchise Agreement automatically renewed. Since the Sargent Drive Franchise Agreement automatically renewed, counterclaimants retained architects and had plans prepared for the Sargent Drive remodel. The plans were submitted

to Dunkin' Donuts for approval as required by the Sargent Drive Franchise Agreement and Dunkin' Donuts approved the plans.

Dunkin' Donuts did not send the notice to counterclaimants prior to October, 2002 despite Dunkin' Donuts' knowledge that counterclaimants relied on the renewal of the Sargent Drive Franchise Agreement and that counterclaimants would begin the remodeling process once the Sargent Drive Franchise Agreement was renewed. Dunkin' Donuts did not provide counterclaimants any notice of a possible termination prior to October, 2002 despite Dunkin' Donuts' knowledge that counterclaimants relied on the renewal of the Sargent Drive Franchise Agreement and that counterclaimants would begin the remodeling process once the Sargent Drive Franchise Agreement was renewed.

The State Street Franchise Agreement states, "FRANCHISOR shall maintain a continuing advisory relationship with FRACHISEE, including consultation in the areas of marketing, merchandising and general business operations." The State Street Franchise Agreement does not expire until November, 2012. The State Street Franchise Agreement requires that the State Street shop be remodeled no later than the tenth anniversary of the original opening date, which was on November 1, 2002. The remodeling plans were submitted to Dunkin' Donuts for approval as required by the State Street Franchise Agreement and Dunkin' Donuts approved the plans on July 22, 2002.

Based on the approval of Dunkin' Donuts and in accordance with the State Street Franchise Agreement, counterclaimants remodeled the State Street shop expending a significant amount of money, time and effort. Counterclaimants used approved Dunkin' Donuts general contractors to remodel the State Street shop. Agents from Dunkin' Donuts had visited the newly remodeled State Street shop. Just two weeks before the opening of the remodeled State Street shop, Dunkin' Donuts sent counterclaimants a Notice of Default and Termination on October 24, 2002, purporting to terminate the Franchise Agreements.

Upon information and belief, Dunkin' Donuts has adopted a plan to revamp its franchise system to consist primarily, if not exclusively, of franchisees who each operate many shops and to weed from its system franchisees like counterclaimants who operate only a handful of shops.

The Notice of Default and Termination relies on alleged violations of the Franchise Agreements by counterclaimants that either occurred more than six (6) years prior to the issuance of the Notice or began years ago with the knowledge of Dunkin' Donuts. Further, Dunkin' Donuts relies upon the statement of a former manager of the State Street shop. Dunkin' Donuts knows that this statement was retracted. In order to undermine the retraction, Dunkin' Donuts has proffered an absurd allegation that as part of a conspiracy, counterclaimants obtained a false notary public's seal as to the authenticity of the former manager's signature on the retraction he signed.

Despite this knowledge, Dunkin' Donuts continues to make false allegations against counterclaimants as a pretext for terminating the Franchise Agreements in retaliation against counterclaimants for suing Dunkin' Donuts.  Dunkin' Donuts allowed counterclaimants to rely on the renewal of the Sargent Drive Franchise Agreement and begin the plans to remodel and allowed counterclaimants to rely on approval of the remodeling of the State Street shop for the purpose of inflicting greater harm on counterclaimants once Dunkin' Donuts terminated the Franchise Agreements.  Dunkin' Donuts' failure to assist and/or respond to counterclaimants request for renewal of the Sargent Drive Franchise Agreement, its approval of the remodeling of the State Street shop and subsequent termination of the State Street Franchise Agreement, its retaliation for a previous lawsuit brought by Glenn Stetzer against Dunkin' Donuts, and nondisclosure of the results of the Examination demonstrate Dunkin' Donuts' systematic plan to force out certain franchisees that do not fit Dunkin' Donuts' new business model.

Dunkin' Donuts is utilizing false allegations and inconsequential actions of counterclaimants as a pretext to terminate the Franchise Agreements.  Dunkin' Donuts is utilizing false allegations and inconsequential actions of counterclaimants to carry out a vendetta against counterclaimants for suing Dunkin' Donuts in the past.

Dunkin' Donuts' tactics are a clear violation of the Connecticut Franchise Act because Dunkin' Donuts has no good cause to terminate the Franchise Agreements.  Accordingly, there is more than a likelihood that counterclaimants will succeed on the merits of their Verified Counterclaim.

Lastly, assuming the Court is not inclined to find a likelihood of success on the merits at this time, counterclaimants have sufficiently demonstrated serious questions on the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the counterclaimants. Accordingly, counterclaimants have satisfied the alternative prong of the test for preliminary relief.

## POINT II

### THERE IS NO NEED TO REQUIRE COUNTERCLAIMANTS TO POST A BOND OR SECURITY

Under Rule 65(c) of the Federal Rules of Civil Procedure, an applicant for a temporary restraining order may be required to post a bond or security.  Under the circumstances of this case, however, no bond or security should be required.  Where, as here, Dunkin' Donuts will not be harmed by the issuance of a temporary restraining order, no bond or security is necessary, and the court has discretion to issue the restraining order without bond or security.  11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2954 at 293 (1995) ("the court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant").

Dunkin' Donuts will not be harmed if the Court issues a temporary restraining order or preliminary injunction enjoining the terminations pending this litigation. Because the Counterclaimants are willing to continue operating their franchises, they will continue to order and purchase products from Dunkin' Donuts and Dunkin' Donuts will continue to earn profits based on their sales to their customers.

## **CONCLUSION**

For the foregoing reasons, the Court should issue a Temporary Restraining Order and Preliminary Injunction enjoining Dunkin' Donuts from terminating counterclaimants' Ferry Street Franchise Agreement, State Street Franchise Agreement, Frontage Road Franchise Agreement, Forbes Avenue Franchise Agreement, York Street Franchise Agreement, and Sargent Drive Franchise Agreement.

DEFENDANTS/COUNTERCLAIM PLAINTIFFS,
4 DONUTS, INC., ET AL.


By_____
    RICHARD S. ORDER, ESQ.
    Federal Bar Number CT02761
    BRAD N. MONDSCHEIN, ESQ.
    Federal Bar Number CT13800
    AMY LEETE VAN DYKE, ESQ.
    Federal Bar Number CT23181
    Updike, Kelly & Spellacy, P.C.
    One State Street
    Hartford, CT  06123-1277
    Tel. (860) 548-2600

## <u>CERTIFICATION</u>

**THIS IS TO CERTIFY** that a copy of the foregoing has been served by hand delivery

this 18th day of November, 2002, to the following counsel of record:

**PAUL D. SANSON, ESQ.**
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819

By: _____
       AMY LEETE VAN DYKE, ESQ.
       Updike, Kelly & Spellacy, P.C.

303639

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUNKIN' DONUTS INCORPORATED,<br>   a Delaware corporation, and<br>DUNKIN' DONUTS USA, INC.,<br>   A Michigan corporation,<br><br>        Plaintiffs,<br><br>      v.<br><br>4 DONUTS, INC.,<br>   a Connecticut corporation<br>GRANDO, INC.<br>   a Connecticut corporation<br>GLENN STETZER<br>KATHLEEN STETZER<br>GEORGE GERMANO, and<br>JAMES MCMANAMA | C.A. No. 302CV1920 (JBA)<br><br><br><br><br><br><br><br><br>NOVEMBER 18, 2002 |

### AFFIDAVIT UNDER RULE 65(b)

STATE OF CONNECTICUT )
                      ) ss. at Hartford:
COUNTY OF HARTFORD   )

     AMY LEETE VAN DYKE, ESQ., being duly sworn, deposes and says:

     1.    I am an associate at Updike, Kelly & Spellacy, P.C., counsel for counterclaimants, I

am over the age of eighteen and understand the obligations of an oath.  I submit this Affidavit on my

303637

personal knowledge in support of defendant/counterclaim plaintiffs' Application for a Temporary

Restraining Order and pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

    2.    On November 18, 2002, I telephoned Paul D. Sanson, Esq. of Shipman & Goodwin in

Hartford, Connecticut who I know represents the plaintiff/counterclaim defendant Dunkin' Donuts

Inc. The purpose of my telephone call was to inform Attorney Sanson that the counterclaimants

intended to commence an action today and apply for a Temporary Restraining Order and Preliminary

Injunction.

    3.    Upon the filing of this Application, a copy of the Answer, Verified Counterclaims and

Jury Demand, the Application, and the accompanying papers will be delivered by hand to Attorney

Sanson.

 

AMY LEETE VAN DYKE, ESQ.

Sworn and subscribed before
me, this 8th day of November,
2002.

Commissioner of the Superior Court

## CERTIFICATION

**THIS IS TO CERTIFY** that a copy of the foregoing has been served by hand delivery this

18th day of November 2002, to the following counsel of record:

**PAUL D. SANSON, ESQ.**
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819

By: _____
AMY LEETE VAN DYKE, ESQ.
Updike, Kelly & Spellacy, P.C.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DUNKIN' DONUTS INCORPORATED,<br>  a Delaware corporation, and<br>DUNKIN' DONUTS USA, INC.,<br>  a Michigan corporation,<br><br>       Plaintiffs,<br><br>    v.<br><br>4 DONUTS, INC.,<br>  a Connecticut corporation<br>GRANDO, INC.<br>  a Connecticut corporation<br>GLENN STETZER<br>KATHLEEN STETZER<br>GEORGE GERMANO, and<br>JAMES MCMANAMA | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 302CV1920 (JBA)<br><br><br><br><br><br><br><br><br>NOVEMBER 18, 2002 |

### ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**WHEREAS**, the attached Application for a Temporary Restraining Order and Preliminary

Injunction and Affidavit having been presented to the Court, and the Court having reviewed the

Answer, Verified Counterclaim and Jury Demand; and

**WHEREAS**, it appearing to the Court (a) that there is a substantial likelihood that the

Counterclaimants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, and James McManama will succeed on

303643

the merits at trial or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships decidedly in favor of the Counterclaimants, and that the Counterclaimants will suffer immediate and irreparable injury, loss, and damage if a Temporary Restraining Order and Preliminary Injunction is not issued because plaintiff Dunkin' Donuts Inc. ("Dunkin Donuts") has indicated that on or about December 24, 2002 it will be terminating the Counterclaimants franchise agreements, and that such termination will cause Counterclaimants to go out of business, and that the requested Temporary Restraining Order and Preliminary Injunction ought to issue without bond or security because the Temporary Restraining Order and Preliminary Injunction carries no risk of monetary loss to Dunkin' Donuts,

　　　　**IT IS HEREBY ORDERED** that Dunkin' Donuts show cause before this Court, at _____ on the _____ day of _____, 2002, in Courtroom _____ of the Courthouse located at _____, in _____, Connecticut, why an Order should not be entered, pursuant to Rule 65 of the Federal Rules of Civil Procedure and pending final determination of this action, preliminarily enjoining and prohibiting Dunkin' Donuts and its officers, directors, agents, representatives, servants, employees, and attorneys and all persons in active concert or participation with them from terminating the Counterclaimants' Ferry Street Franchise Agreement, State Street Franchise Agreement, Frontage Road Franchise Agreement, Forbes Avenue Franchise Agreement, York Street Franchise Agreement, and Sargent Drive Franchise Agreement.

**IT IS FURTHER ORDERED** that, pursuant to Rule 65 of the Federal Rules of Civil Procedure, until further Order of this Court, Dunkin' Donuts and its officers, directors, agents, representatives, servants, employees, and attorneys and all persons in active concert or participation with them are hereby temporarily restrained from terminating the Counterclaimants' Ferry Street Franchise Agreement, State Street Franchise Agreement, Frontage Road Franchise Agreement, Forbes Avenue Franchise Agreement, York Street Franchise Agreement, and Sargent Drive Franchise Agreement.

**IT IS FURTHER ORDERED** that any responsive papers shall be filed and served by Dunkin' Donuts on Counterclaimants' counsel, Brad N. Mondschein, Esq., Updike, Kelly & Spellacy, P.C., One State Street, P.O. Box 231277, Hartford, CT 06123-1277, (860) 548-2680 (fax), by personal service or fax transmission on or before the _____ day of _____, 2002 by _____ __.m. Any reply thereto shall be filed and served by fax on Dunkin' Donuts' counsel on or before _____, _____, 2002 by ____ __.m.

**IT IS FURTHER ORDERED** that no bond or security should be required on the grounds that Dunkin' Donuts will not be harmed by a Temporary Restraining Order or Preliminary Injunction preserving the status quo.

**IT IS FURTHER ORDERED** that the Counterclaimants shall give notice to Dunkin' Donuts of the pendency of the Application For Preliminary Injunction and of the time when it will be heard

303643                                                    3

by causing a copy of the Application for Temporary Restraining Order and Preliminary Injunction,

Answer, Verified Counterclaim And Jury Demand, and this Order to be served upon Dunkin' Donuts

in accordance with the Federal Rules of Civil Procedure on or before the _____ day of

_____, 2002.

      Dated: _____, _____, 2002 at ____ ___.m.


                                           _____

                                         UNITED STATES DISTRICT JUDGE