UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUNKIN' DONUTS INCORPORATED,<br>  a Delaware corporation, and<br>DUNKIN' DONUTS USA, INC.,<br>  a Michigan corporation,<br><br>                    Plaintiffs,<br><br>         v.<br><br>4 DONUTS, INC.,<br>  a Connecticut corporation,<br>GRANDO, INC.,<br>  a Connecticut corporation,<br>GLENN STETZER,<br>KATHLEEN STETZER,<br>GEORGE GERMANO, and<br>JAMES MCMANAMA,<br><br>                    Defendants. | C.A. No. 302 CV 1920 (MRK)<br><br><br><br><br><br><br><br>DECEMBER 18, 2003 |

**PLAINTIFFS' OBJECTION, IN PART, TO THE COURT'S
DECEMBER 3, 2003 RULING ON PLAINTIFFS' MOTION
FOR LEAVE TO FILE THEIR FIRST AMENDED COMPLAINT**

Plaintiffs Dunkin' Donuts Incorporated and Dunkin' Donuts USA, Inc. (hereinafter "Dunkin'" or "Dunkin' Donuts") respectfully object, in part, to the Ruling of December 3, 2003 on Plaintiffs' Motion for Leave to File their First Amended Complaint (hereinafter referred to as the "Ruling"). In the Ruling, Magistrate Judge Margolis denied Dunkin's motion to bring a claim alleging that Defendants breached the terms of their Franchise Agreements by establishing and supplying a competing doughnut and coffee business within one mile of their network of doughnut shops. Dunkin' Donuts is not objecting to the portion of the Ruling granting its motion to clarify its claim in the Complaint that Defendants violated various tax laws.

The Ruling's conclusion that Dunkin' was required to allow Defendants the opportunity to cure this breach ignores paragraph 9.G of the Franchise Agreements, which states that Dunkin's remedies are not exclusive, but are instead cumulative in nature. Because the Franchise Agreements did not specifically prohibit Dunkin' from terminating Defendants for establishing and supplying a competing business without an opportunity to cure, Dunkin' is permitted to take such an action. Aside from noting that Dunkin' relied on this provision and quoting it, the Ruling never addressed why paragraph 9.G does not apply in this circumstance. As demonstrated below, it does apply under black letter principles of contract law. In addition, the Ruling does not address the question of whether Defendants actually cured the breach. The only cure proffered by the Defendants—ceasing deliveries to the competing business—could not, by its very nature, cure their fraud-based breach of the Franchise Agreements. Therefore, even if the Franchise Agreements required Dunkin' to allow Defendants the opportunity to cure their breach of the in-term covenant not to compete, they failed to effectuate a cure. Dunkin' thus should be allowed to bring a separate claim in this action based on Defendants' establishing and supplying a competing business. In support of this Objection, Plaintiffs rely on the attached memorandum of law, the attachments thereto, and the entire record herein.

                                            Respectfully submitted,

                                            Robert L. Zisk ct 13503
                                            Jeffrey L. Karlin ct 14965
                                            Christopher M. Loveland ct 24169
                                            SCHMELTZER, APTAKER & SHEPARD, P.C.
                                            2600 Virginia Avenue, N.W.
                                            Suite 1000
                                            Washington, D.C. 20037
                                            (202) 333-8800

|                              |                                    |
|------------------------------|------------------------------------|
|                              | Paul D. Sanson ct 05477            |
|                              | Alexandra M. McHugh ct 22428       |
|                              | SHIPMAN & GOODWIN LLP              |
|                              | One American Row                   |
|                              | Hartford, CT 06103-2819            |
|                              | (860) 251-5612                     |
|                              |                                    |
|                              | Attorneys for Plaintiffs           |
|                              | Dunkin' Donuts Incorporated,       |
| Dated: December 18, 2003     | Dunkin' Donuts USA, Inc.           |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUNKIN' DONUTS INCORPORATED,<br>  a Delaware corporation, and<br>DUNKIN' DONUTS USA, INC.,<br>  a Michigan corporation,<br><br>               Plaintiffs,<br><br>v.<br><br>4 DONUTS, INC.,<br>  a Connecticut corporation,<br>GRANDO, INC.,<br>  a Connecticut corporation,<br>GLENN STETZER,<br>KATHLEEN STETZER,<br>GEORGE GERMANO, and<br>JAMES MCMANAMA,<br><br>               Defendants. | C.A. No. 302 CV 1920 (MRK)<br><br><br><br><br><br>DECEMBER 18, 2003 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OBJECTION, IN PART, TO THE COURT'S DECEMBER 3, 2003 RULING ON PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR FIRST AMENDED COMPLAINT**

Plaintiffs Dunkin' Donuts Incorporated and Dunkin' Donuts USA, Inc. (hereinafter "Dunkin'" or "Dunkin' Donuts") respectfully object, in part, to the Ruling of December 3, 2003 on Plaintiffs' Motion for Leave to File their First Amended Complaint (hereinafter referred to as the "Ruling"). In the Ruling, Magistrate Judge Margolis denied Dunkin's motion to bring a claim alleging that Defendants breached the terms of their Franchise Agreements by establishing and supplying a competing doughnut and coffee business within one mile of their network of doughnut shops. Dunkin' Donuts is not objecting to the portion of the Ruling granting its motion to clarify its claim in the Complaint that Defendants violated various tax laws.

The Ruling's conclusion that Dunkin' was required to allow Defendants the opportunity to cure this breach ignores paragraph 9.G of the Franchise Agreements, which states that Dunkin's remedies are not exclusive, but are instead cumulative in nature. Because the Franchise Agreements did not specifically prohibit Dunkin' from terminating Defendants for establishing and supplying a competing business without an opportunity to cure, Dunkin' is permitted to take such an action. Aside from noting that Dunkin' relied on this provision and quoting it, the Ruling never addressed why paragraph 9.G does not apply in this circumstance. As demonstrated below, it does apply under black letter principles of contract law. In addition, the Ruling does not address the question of whether Defendants actually cured the breach. The only cure proffered by the Defendants—ceasing deliveries to the competing business—could not, by its very nature, cure their fraud-based breach of the Franchise Agreements. Therefore, even if the Franchise Agreements required Dunkin' to allow Defendants the opportunity to cure their breach of the in-term covenant not to compete, they failed to effectuate a cure. Dunkin' thus should be allowed to bring a separate claim in this action based on Defendants' establishing and supplying a competing business.

## BACKGROUND

1. Defendants are Dunkin' Donuts franchisees for five shops in Connecticut.

2. Defendants' Franchise Agreements require that they not to do or perform, directly or indirectly, any act injurious or prejudicial to the good will associated with Dunkin' Donuts' proprietary marks and the Dunkin' Donuts system and not "[o]wn, maintain, engage in, be employed by, or have any interest in any other business which sells or offers to sell any product of a type offered by a DUNKIN' DONUTS SHOP." (Ruling at 12; Ex. 8 to Pls.' Reply to Mot. for Leave to Am. Compl at ¶¶ 8.A.1 and 8.A.3.)

3.      On October 3, 2003, Dunkin' Donuts served Defendants with a Supplemental Notice of Default and Termination for establishing and supplying a competing doughnut business called Aromas Coffee and Bake Shop, without an opportunity to cure. (Ruling at 4.) The Supplemental Notice also provided that "[a]lternatively, if it should be determined as a matter of law that your defaults are curable, then Dunkin' Donuts hereby gives you thirty (30) days from the receipt of this Notice in which to do those acts which you contend constitute a "cure" of the defaults under the Franchise Agreements." (Ruling at 17.)

4.      Records from the State of Connecticut show that Aromas, LLC was created on February 6, 2002 (more than a year and a half before it opened for business), that the general manager of Defendants' franchises, James McManama, was listed as its sole owner, and that Aromas' business address was also the address of Defendants' accountant, Anthony Citerella. (Ruling at 15-16; Ex. 3 to Pls.' Reply to Mot. for Leave to Am. Compl.)

5.      Aromas is located in East Haven, Connecticut, and is less than a mile from the Defendants' franchise on 87 Frontage Road, East Haven, Connecticut. Aromas is located inside a Citgo gas station. (Ruling at 15.)

6.      In February and May 2002, Defendant 4 Donuts, Inc. paid for some of Aromas' start-up costs, including its registration fee to the Secretary of State, as well as a payment to the Commissioner of Revenue. (Ruling at 15; Ex. 4 to Pls.' Reply to Mot. for Leave to Am. Compl.)

7.      Defendant McManama failed to identify Aromas, LCC as one of the companies in which he held an interest in his interrogatory answer served on February 3, 2003. (Answer attached hereto as Exhibit 1.) McManama also omitted Aromas from his supplemental answer to this interrogatory, which was served on Dunkin' Donuts on February 11, 2003. (Supplemental Answer attached hereto as Exhibit 2.) Likewise, on June 23, 2003, McManama again amended

3

his response to this interrogatory and failed to identify Aromas, LLC. (Amended Answer attached hereto as Exhibit 3.)

8. Although Defendant McManama testified at his deposition that he did not obtain any equipment used to outfit Aromas from Defendants 4 Donuts, Inc. or Glenn Stetzer, and instead bought it from brokers and an internet auction site (the names of which he cannot recall), Dunkin' has obtained information that equipment installed and used at Aromas (including cash registers, toasters and coffee brewers) was actually supplied by 4 Donuts. (Ruling at 16, fn. 8.)

9. Within a week of receiving the Supplemental Notice, Glenn Stetzer directed his general manager to cease all deliveries and sales to Aromas because he "didn't want to put doughnuts so close to [his] other store." (Ruling at 15.)

10. Defendants' Franchise Agreements also provide that they may be immediately terminated "if FRANCHISEE fails to cure to DUNKIN' DONUTS satisfaction with the applicable period following notice." (Ex. 8 to Pls.' Reply to Mot. for Leave to Am. Compl. at ¶ 9.D.)

## **THE RULING**

On October 3, 2003, Plaintiffs filed a Motion for Leave to File their First Amended Complaint. On December 3, 2003, Magistrate Judge Margolis issued a Ruling denying that portion of Plaintiffs' motion which sought to add a new breach of contract count for Defendants' violation of the Franchise Agreements' in-term covenant not to compete based on the operation of Aromas. The Ruling found that the establishment and/or supplying of Aromas, if proven, constitutes a breach of the Franchise Agreements. (Ruling at 13-14.) In addition, the Ruling rejected Defendants' argument that Dunkin' could not bring a claim based on the operation of Aromas even though they contended it was merely a "permissible wholesale customer." *Id.* at

4

15. The Ruling explained that the only evidence Defendants provided on this point—a wholesale account registration form submitted to Dunkin' before the notice of termination was issued—was "misleading" because it identified the only customer as the East Haven Citgo station and not the fact that the deliveries were really being made to Aromas, a business in competition with other Dunkin' shops that was located inside the service station. *Id.* The Ruling noted that Defendants must have known about the true nature of the Aromas shop since their general manager had established the account and they paid for some of the costs of setting up Aromas, LLC, the company that was created to operate Aromas Coffee and Bake Shop. *Id.* at 15-16. Moreover, such knowledge could also be assumed because one of the individual defendants, James McManama—who until recently ran the Stetzer donut network—was the sole owner of Aromas, LLC and Aromas Coffee and Bake Shop. *Id.*

Nevertheless, although it is not entirely clear from the Ruling, it appears that the Magistrate Judge concluded it was futile for Dunkin' to bring a claim based on Aromas because Dunkin' terminated the Franchise Agreements without allowing Defendants the opportunity to cure the breach. (Ruling at 18-19.) Specifically, the Ruling found that a provision of the Franchise Agreements (Paragraph 9.B), which allows franchisees a thirty-day cure period applied to violations of the in-term covenant. *Id.* at 19. This conclusion was reached, however, solely on the ground that another provision of the Franchise Agreements (Paragraph 9.B.4) sets forth certain types of breaches for which no cure would be allowed, that this list was exclusive, and did not include establishing or supplying a competing business. *Id.* Although the Ruling acknowledged that the Franchise Agreements include a provision (Paragraph 9.G) which states that "[n]o right or remedy conferred upon or reserved to DUNKIN' DONUTS is *exclusive* of any other right or remedy herein," the Ruling is silent on how this provision should be interpreted

along with Paragraphs 9.B and 9.B.4, or why Paragraph 9.G did not apply to this particular breach. *Id.* (emphasis added.)

Finally, the Ruling also noted in passing that the Supplemental Notice actually allowed the Defendants, in the alternative, the opportunity to cure if it is determined as a matter of law that the breach was curable. (Ruling at 17, fn. 9.) Not only does this contradict the finding that it was futile for Dunkin' to bring a claim based on Aromas because it terminated the Franchise Agreements without allowing Defendants the opportunity to cure the breach, but there is no evidence that the Defendants cured within the thirty-day period. *Id.* at 18-19. As mentioned above, Defendants ceased their deliveries from their Dunkin' shops to Aromas within a week of receiving the Supplemental Notice. However, nothing in the Ruling states whether this was sufficient to cure the breach or even how it could have cured Defendants' breach for establishing and supplying Aromas.

As mentioned above, Defendants ceased their deliveries from their Dunkin' shops to Aromas within a week of receiving the Supplemental Notice. However, nothing in the Ruling states whether this was sufficient to cure the breach or even how it could have cured Defendants' breach for establishing and supplying Aromas. contradicts the finding that it was futile for Dunkin' to bring a claim based on Aromas because it terminated the Franchise Agreements without allowing Defendants the opportunity to cure the breach. (Ruling at 18-19.)

## ARGUMENT

### I.  Standard Of Review

A magistrate's order regarding a non-dispositive pre-trial matter is reviewed under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636 (b)(1)(A). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. United States Gypsum Co.*, 333 U.S. 364, 995 (1948). As demonstrated below, the Magistrate Judge's December 3, 2003 Ruling that denied, in part, Dunkin's motion for leave to add a breach of contract count for Defendants' establishing and supplying a competing business was clearly erroneous.

### I. Establishing And Supplying A Competing Business Is An Incurable Breach Of The Franchise Agreements.

It is a well settled principle of contract law that unless an agreement's default and cure provisions are by their own terms the *exclusive* means for terminating the contract, they are *cumulative* of other common law remedies. *Southland Corp. v. Mir,* 748 F. Supp. 969, 983 (E.D.N.Y. 1990) (citing *Olin Corp. v. Central Industries, Inc.*, 576 F.2d 642, 647 (5th Cir. 1978). *See also* 6 *Corbin on Contracts* §1266 (Supp. 1997). Accordingly, when a franchisee materially breaches the franchise agreement, the franchisor may terminate it without providing a cure period if the notice and cure provisions, by their own terms, are not the exclusive means to terminate. *Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54, 59 (2d Cir. 1984) (applying the Petroleum Marketing Practices Act, the court held that selling misbranded gasoline was a breach "so serious as to undermine the entire relationship" between the parties such that notice and opportunity to cure were not required); *Mir,* 748 F. Supp. at 982-84 (upholding immediate termination of franchise agreement, despite contractual right to cure material breaches, because underreporting sales went to the very "essence of the contract"); *Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 246 (E.D.N.Y. 1999) (franchisor can terminate, without opportunity to cure, franchisee engaging in "schemes or gimmicks that deprive the" franchisor from the fruits of the

7

contract). Massachusetts law, which governs these contracts, applies this principle.[1] *Saxon Theatre Corp. v. Hayden*, 7 Mass. App. Ct. 695, 699, 389 N.E.2d 1020, 1022 (Mass. App. Ct. 1979).

And in fact, the notice-and-cure provisions in Defendants' Franchise Agreements are *expressly* cumulative. For example, Paragraph 9.G of the State Street Franchise Agreement provides:

> No right or remedy herein conferred upon or reserved to DUNKIN' DONUTS is exclusive of any other right or remedy herein, or by law or equity provided or permitted, but *each shall be cumulative* of every other right or remedy hereunder.

(State Street Franchise Agreement, Ex. 8 to Pls.' Reply to Mot. for Leave to Am. Compl.) (emphasis added). Aside from quoting it, however, the Ruling failed to take into account Paragraph 9.G or explain why it should not be read in harmony with other provisions that (1) allowed Dunkin' to terminate the Franchise Agreements for violating the in-term covenant (¶¶ 8.A.1 and 8.A.3) and (2) allowed Dunkin' to terminate the Franchise Agreements in certain circumstances without the opportunity to cure (¶ 9.B.4). Failing to apply paragraph 9.G had the effect of reading it out of the contract, which in itself violates basic contract law principles. *Murphy v. Noonan*, 30 Mass. App. Ct. 950, 951 (1991) (a contract must be read in its entirety when interpreting specific provisions). There can be no reason for such a conclusion, nor was one proffered in the Ruling. There is no language in Paragraph 9.B.4 that states that the defaults listed therein—including abandonment, underreporting and the falsification of financial data—comprise an exclusive list. This provision simply states that no cure period shall be available for

---

[1] The parties agreed that the Franchise Agreements would be interpreted according to Massachusetts law. (Ex. 8 to Pls.' Reply to Mot. for Leave to Am. Compl. at ¶ 16.A.)

8

those defaults, *not* that a cure would be unavailable for those defaults only.[2] Likewise, there is nothing in Paragraph 9.B, which gives franchisees a cure period of thirty days "except as otherwise provided in Paragraph 9," that restricts Dunkin's ability to terminate without the opportunity to cure for a violation of the in-term covenant. The right to cure defaults under Paragraph 9.B can only be read to include those breaches for which a cure is possible. The type of breach here—conducting a competing doughnut and coffee business—cannot be cured because the sale of coffee and doughnuts by Aromas cannot be undone, and the damage to Dunkin' has already occurred. The bell simply cannot be un-rung.

Termination without the possibility of cure is also justified because of the type of breach involved. Under Massachusetts law, which controls the interpretation of the Franchise Agreements, a material breach occurs when there is a breach of "an essential and inducing feature of the contract." *Lease-It, Inc. v. Massachusetts Port Auth.*, 33 Mass. App. Ct. 391, 600 N.E.2d 599, 602 (Mass. App. Ct. 1992). Such a material breach, by its very nature, cannot be cured. *Mir,* 748 F. Supp. at 982-84. The breaches at issue here—establishing and supplying a competing doughnut and coffee business—constitute material breaches of the Franchise Agreements, permitting Dunkin' to terminate Defendants' Agreements without the opportunity to cure. This is most readily seen in connection with the harm that these sales did to Dunkin's goodwill. The most valuable asset any franchisor has is the goodwill associated with the trademark that its franchisees pay royalties to use. No less than twelve paragraphs or sub-paragraphs of the Agreement contain covenants regarding Dunkin' Donuts' trademarks, the System they represent, and the goodwill associated with them. (Ex. 8 to Pls.' Reply to Mot. for

---

[2] For example, paragraph 9.D provides Dunkin' the right to terminate a Franchise Agreement is a breach is not cured to Dunkin's satisfaction. (Ex. 8 to Pls.' Reply to Mot. for Leave to Am. Compl.) Under the logic of the Ruling, this provision would be subject to a thirty-day cure period, which would lead to the nonsensical result of a never-ending cure period.

9

Leave to Am. Compl.) In each Agreement, Defendants acknowledged that the System, the marks, and the goodwill were developed "as the result of the expenditure of time, effort and money" and that their purpose for entering into the Agreement was "to make use of the trademark 'Dunkin' Donuts' and to enjoy the benefits of that mark, the other proprietary marks, and the Dunkin' Donuts System." *Id.* Defendants were granted "the right to use . . . the trademark 'Dunkin' Donuts', along with other Proprietary Marks . . . ." *Id.* at ¶ 1.A. Moreover, Defendants executed a personal guarantee of officers, shareholders and directors whereby they agreed to be personally bound by paragraph 8 of the Franchise Agreements. *Id.* at 12. There can be no question that breaching the covenant not to "do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Dunkin' Donuts' Proprietary Marks and the Dunkin' Donuts System" (*Id.* at ¶ 8.A.1.) is a material breach.

Courts have routinely interpreted the injury to goodwill clause (¶ 8.A.1) of the Dunkin' Franchise Agreement—the same paragraph at issue here—as permitting Dunkin' to terminate a franchisee for a material breach without an opportunity to cure. *See Dunkin' Donuts Incorporated v. Panagakos*, Bus. Franchise Guide (CCH) ¶ 11,174 (D.Mass. May 13, 1997) (finding involvement in a tax fraud scheme by the franchisee is a material breach of paragraph 8.A.1 of the Franchise Agreement warranting termination) (Ex. 10 to Pls.' Reply to Mot. for Leave to Am. Compl.); *Dunkin' Donuts Incorporated v. Chieng-Eung Thiem*, CV 93-0419JSAl (TX), slip op. at 3 (C.D. Cal. filed March 9, 1993) (finding breach of paragraph 8.A.1. constitutes "a noncurable breach of the Dunkin' Donuts Franchise Agreement, for which immediate termination is warranted") (Ex. 9 to Pls.' Reply to Mot. for Leave to Am. Compl.). The same approach has been taken with claims that are grounded in fraud and misrepresentation. *Froelich*, 41 F. Supp. 2d at 244 (franchisor's claim that franchisee committed fraud justified

10

termination without the opportunity for cure). The establishment and operation of Aromas fits within these principles. Defendants intentionally omitted any reference to Aromas in their interrogatory answers and, at the very least, misled Dunkin' on their wholesale application by listing the East Haven Citgo, not a competing business called Aromas. Dunkin' is thus entitled to terminate Defendants' Franchise Agreements without an opportunity to cure.

It is also apparent that the Magistrate Judge has confused the sixty-day notice requirement under the Connecticut Franchise Act with the cure period provided under the Franchise Agreements. In holding that Paragraph 9.B.4 of the Franchise Agreement allows no cure period for breaches such as abandonment and underreporting, the Court noted that the Connecticut Franchise Act did not require a notice period if the breach involved an abandonment of the franchise or the conviction of the franchisee. (Ruling at 18-19.) The two issues (notice and opportunity to cure) are, however, separate and distinct. Proper notice must be given under the Franchise Act regardless of whether a cure is allowed under the franchise agreement. Certainly, the notice provision in the Franchise Act should not be read to limit the types of breaches in Franchise Agreements that can lead to termination without the opportunity to cure. In fact, the Magistrate Judge has already held that Dunkin' gave the proper sixty day notice to the Defendants in the Supplemental Notice of Termination. *Id.* at 17. Having done so, the issue of notice is laid to rest without reference to considerations of cure.

Therefore, the Ruling's apparent conclusion that Dunkin's claim relating to Aromas was futile because Defendants were not given an opportunity to cure their breach should be overturned. The Franchise Agreements did not prohibit such an action and the very nature of the breach lent itself to the remedy Dunkin' imposed on Defendants. Dunkin' should thus be

11

allowed to amend its Complaint to add its breach of contract claim based on Defendants' violation of the in-term covenant not to compete.

## II. Even If Defendants Could Cure Their Breaches Of The Franchise Agreements, They Have Not Taken The Necessary Steps To Cure.

According to Defendants, after receiving the notice of termination, they simply stopped deliveries to Aromas. (Ruling at 16.) This hardly cures the default, since the establishment of a competing business, the deliveries to a competing business, and the sale of those products cannot be undone; neither can the irreparable harm to goodwill that occurred through the operation of Aromas. *See* E. ALLAN FARNSWORTH, *Contracts,* §8.17, n.1 ("Cure is not always possible, as in the case of the singer who does not show up on the night of the opera"). The notion that "it is too late to undo the harm" has rendered incurable various acts of omission or commission by franchisees, including remaining closed for business for an impermissible period of time, *e.g., In re Deppe,* 110 B.R. 898 (D.Minn. 1990), and selling products outside a permitted territory, *McKeesport Beer Distrib., Inc. v. All Brand Importers, Inc.,* Bus. Franchise Guide (CCH) ¶10,005 (Pa. 1992) (Ex. 11 to Pls.' Reply to Mot. for Leave to Am. Compl.).

The actions that are most commonly considered to be incapable of a cure are those involving trust. As a leading treatise on contracts explains in discussing the inapplicability of a cure provision as applied to acts of theft by a distributor:

> The notice [to cure] provision assumed that the breaches which would be used to terminate the contract would be curable breaches. There was a frustration of purpose when a breach involving fundamental dishonesty by one party occurred, because no amount of payment for past thefts by [defendant] could ever restore the business trust and confidence which [plaintiff] wanted to have in its distributors. The "continuing sense of reliance and security" which is always "an important feature of the bargain" . . . had been completely destroyed, and could not possibly have been reinstated. Under the circumstances, then, [defendant's] breach was a vital breach, [and] it would have been sufficient to allow [plaintiff] to rescind the contract even if the contract had been in terms an absolute one for a fixed term with no right of termination at all; it seems strange to suggest that the

12

> right of immediate termination is lost because the parties expressly provided a
> means of terminating for lesser, curable breaches.

*Corbin on Contracts* §1266 at 23 (1997 Supp.) (discussing *Olin Corp. v. Central Indus., Inc.*, 576 F.2d 642 (5th Cir. 1978)). Thus, dealers, distributors and franchisees have been terminated without opportunity to cure for fraud on consumers, *Aamco Indus., Inc. v. DeWolf*, 250 N.W.2d 835 (Minn. 1977), fraud on manufacturers, *Olin Corp. v. Central Indus., Inc., supra*, and fraud on the franchisor, *Southland Corp. v. Mir*, 748 F. Supp. 969, 983-84 (E.D.N.Y. 1990). The reason for these cases is self-evident: "Good faith belief of the franchisor that the franchisee is untrustworthy or engages in fraudulent practices undermines the entire franchise relationship." *Humboldt Oil Co. v. Exxon Co., U.S.A.*, 695 F.2d 386, 389 (9th Cir. 1982).

The *Aamco* case cited above is particularly relevant because a state regulation at issue in that case required that the franchisee be given a twenty-four hour cure opportunity. 250 N.W.2d at 839-40. In *Aamco*, the franchisee was terminated for failing to follow the franchisor's procedures for repairing automobiles because it told consumers that expensive repairs were needed for minor malfunctions that could have been corrected at little cost to the consumer. *Id.* The court reasoned that an opportunity to cure the fraud committed on Aamco consumers would have been "a futile gesture" and held that no such cure period was necessary. *Id.* at 840.

For the same reasons, Defendants cannot undo the fact that they breached the trust of Dunkin' Donuts by establishing and supplying a competing business. The Court has already found that the Defendants—at the very least—misled Dunkin' Donuts by seeking permission to provide doughnuts and other products to a Citgo gas station for resale, not a competing business called Aromas Coffee and Bake Shop that was located less than a mile from one of Defendants' franchises. (Ruling at 15.) Additionally, Defendants have attempted to conceal the existence of Aromas from Dunkin' Donuts from the very outset of this case. In an interrogatory answer

13

served on Dunkin' Donuts on February 3, 2003, Defendant McManama failed to identify Aromas, LCC as one of the companies in which he held an interest. (Ex. 1.) McManama also omitted Aromas from his supplemental answer to this interrogatory, which was served on Dunkin' Donuts on February 11, 2003. (Ex. 2.) Likewise, on June 23, 2003, McManama again amended his response to this interrogatory and again failed to identify Aromas, LLC. (Ex. 3.) McManama omitted this information under oath *three times* before the Franchise Agreements were terminated. This is precisely the kind of fraudulent activity that justifies termination without the opportunity to cure. Thus, Defendants' contention that they cured their breaches of the Franchise Agreements, even if true, carries no weight because their breaches cannot be cured.

Even assuming for the sake of argument that Defendants breaches could be cured, they have failed to take the necessary steps to effectuate a cure. The only steps to "cure" taken by Defendants was to cease the delivery of product to Aromas. (Ruling at 16.) Had the doughnuts that were delivered to Aromas been sold at a Dunkin' Donuts shop, Dunkin' would have received a 5.0 percent advertising fee. (Ex. 8 to Pls.' Reply to Mot. for Leave to Am. Compl at ¶ 4.F.) To date, Defendants have not reimbursed Dunkin' for this lost fee. Additionally, since Aromas was admittedly competing with Dunkin' Donuts, customers were diverted from Dunkin' Donuts franchises to Aromas. No franchise or advertising fees were ever paid to Dunkin' for the sale non-doughnut products that were sold at Aromas, such as coffee. Given the fact that Aromas was in direct competition with other Dunkin' franchises, there is every reason to believe that these products would have otherwise been sold at Dunkin' Donuts had Defendants not diverted Dunkin' customers to Aromas. Additionally, the equipment provided to Aromas by 4 Donuts, Inc. has never been returned, along with any money that was paid for this equipment. Finally, Defendants have never taken any steps to cure their fraudulent behavior in trying to keep

Dunkin' from ever discovering they had established and supplied a competing business. Defendant McManama went as far as to omit information regarding Aromas from his sworn-to interrogatory answers. Moreover, there is no question that Defendants have failed to cure their breach to Dunkin's satisfaction, warranting termination pursuant to paragraph 9.D of the Franchise Agreements (another paragraph not mentioned in 9.B.4 that permits termination without opportunity to cure). At the very least, the issue of whether Defendants have satisfactorily cured their breach is an issue of fact for a trial.

Finally, permitting a franchisee to cure their breaches of a Franchise Agreement for establishing and supplying a competing business would set a disturbing precedent. If the ruling stands, franchisees could set up a competing business and, if caught, avoid termination by merely cutting off the supply of product. Such a ruling would undermine the efforts by franchisors to ensure that their franchisees do not engage in activities that could injure their goodwill and their ability to increase sales, which is the very point of in-term covenants not to compete.

## CONCLUSION

Accordingly, for the reasons stated above, Dunkin' Donuts respectfully requests that the Court grant its motion for leave to amend its complaint to include a breach of contract count for Defendants' establishing and supplying a competing business.

                                           Respectfully submitted,

                                           */s/*

Robert L. Zisk ct 13503
Jeffrey L. Karlin ct 14965
Christopher M. Loveland ct 24169
SCHMELTZER, APTAKER & SHEPARD, P.C.
2600 Virginia Avenue, N.W.
Suite 1000
Washington, D.C. 20037
(202) 333-8800

Paul D. Sanson ct 05477
Alexandra M. McHugh ct 22428
SHIPMAN & GOODWIN LLP
One American Row
Hartford, CT 06103-2819
(860) 251-5612

Attorneys for Plaintiffs
Dunkin' Donuts Incorporated,
Dunkin' Donuts USA, Inc.

Dated: December 18, 2003

16