## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUNKIN' DONUTS INCORPORATED,<br> a Delaware corporation, and<br>DUNKIN' DONUTS USA, INC.,<br> a Michigan corporation,<br><br>                Plaintiffs,<br><br>     v.<br><br>4 DONUTS, INC.,<br> a Connecticut corporation,<br>GRANDO, INC.,<br> a Connecticut corporation,<br>GLENN STETZER,<br>KATHLEEN STETZER,<br>GEORGE GERMANO, and<br>JAMES MCMANAMA<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 302 CV 1920 (MRK)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   DECEMBER 12, 2003 |

## FIRST AMENDED COMPLAINT

This is an action for breach of contract, breach of the covenant of good faith and fair dealing, and trademark infringement based on the operation of Dunkin' Donuts franchises by Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer, George Germano and James McManama. Among other things, Defendants have underreported gross sales and have failed to pay to Dunkin' Donuts all fees on gross sales as required under the Franchise Agreements. Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer and George Germano have also transferred an interest in one or more of their franchises to James McManama without the knowledge or approval of Dunkin' Donuts. Additionally, Defendants Glenn Stetzer, James McManama and others under their direction or control have: (1) engaged

in an assault and battery of a former manager of one of Defendants' Dunkin' Donuts shops, and

(2) have made or participated in the making of threats to a former manager to prevent him from

providing information to Dunkin' Donuts that would assist it in the examination of the books and

records of Defendants' franchises, and in analyzing the operation of the businesses in accordance

with Paragraph 6 of Defendants' Franchise Agreements.  Finally, Defendants 4 Donuts, Inc.,

Grando, Inc. and Glenn Stetzer have defrauded the taxing authorities.  Plaintiffs seek monetary,

injunctive, and other relief against Defendants for the reasons set forth below.

<u>**The Parties**</u>

1.      Plaintiff Dunkin' Donuts Incorporated is a Delaware Corporation with its

principal place of business at 14 Pacella Park Drive, Randolph, Massachusetts.  It is engaged in

the business of franchising independent business persons to operate "Dunkin' Donuts" shops

throughout the United States.  Dunkin' Donuts franchisees are licensed to use trade names,

service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts

system, which involves the production, merchandising, and sale of donuts and related products

utilizing a specially designed building with special equipment, equipment layouts, interior and

exterior accessories, identification schemes, products, management programs, standards,

specifications, proprietary marks and identification.

2.      Plaintiff Dunkin' Donuts USA, Inc. is a Michigan corporation with its principal

place of business at 3000 Town Center, Suite 3000, Southfield, Michigan 48075, and is a

wholly-owned subsidiary of Dunkin' Donuts Incorporated.  Dunkin' Donuts USA, Inc. is the

owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.

Dunkin' has the exclusive license to use and license others to use these marks and trade name and

has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

3.    Defendant 4 Donuts, Inc. is a Connecticut corporation with its principal place of business at 291 Ferry Street, New Haven, Connecticut. At all times relevant to this Complaint, Defendant 4 Donuts, Inc. was an owner and operator of Dunkin' Donuts shops located at 1950 State Street, Hamden Connecticut (the "State Street shop") pursuant to a Franchise Agreement dated August 27, 1992 (the "State Street Franchise Agreement"); 87 Frontage Road, East Haven, Connecticut (the "Frontage Road shop") pursuant to a Franchise Agreement dated April 1, 1993 (the "Frontage Road Franchise Agreement"); 66 York Street, New Haven, Connecticut (the "York Street shop") pursuant to a Franchise Agreement dated December 9, 1992 (the "York Street Franchise Agreement"); and 200 Sargent Drive, New Haven, Connecticut (the "Sargent Drive shop") pursuant to a Franchise Agreement dated May 28, 1992 (the "Sargent Drive Franchise Agreement"). At all times relevant to this Complaint, 4 Donuts, Inc. was the franchisee for the State Street shop, the Frontage Road shop, the York Street shop and the Sargent Drive shop.

4.    Defendant Grando, Inc. is a Connecticut corporation with its principal place of business at 475 Forbes Avenue, New Haven, Connecticut. At all times relevant to this Complaint, Defendant Grando, Inc. was an owner and operator of a Dunkin' Donuts shop located at 475 Forbes Avenue, New Haven, Connecticut (the "Forbes Avenue shop"), and was a Dunkin' franchisee for the shop pursuant to a Franchise Agreement dated November 12, 1996 (the "Forbes Avenue Franchise Agreement").

5.    Defendant Glenn Stetzer is a citizen and resident of the State of Connecticut. Defendant Glenn Stetzer, at all times relevant to this Complaint, was an owner and operator of a

3

Dunkin' Donuts shop located at 291 Ferry Street, New Haven, Connecticut (the "Ferry Street shop"), and was a Dunkin' franchisee for the shop pursuant to a Franchise Agreement dated February 25, 1985. At all times relevant to this Complaint, Defendant Glenn Stetzer was the owner, operator and franchisee for the State Street shop, the Frontage Road shop, the York Street shop, and the Sargent Drive shop. At all times relevant to this Complaint, Defendant Glenn Stetzer was also the owner and operator of the Forbes Avenue shop. Defendant Glenn Stetzer also personally guaranteed and agreed to perform 4 Donut, Inc.'s and Grando, Inc.'s obligations under the State Street Franchise Agreement, the Frontage Road Franchise Agreement, the York Street Franchise Agreement, the Sargent Drive Franchise Agreement, and the Forbes Avenue Franchise Agreement.

6.      Defendant Kathleen Stetzer is a citizen and resident of the State of Connecticut. Defendant Kathleen Stetzer was an owner and operator of the Forbes Avenue shop. Defendant Kathleen Stetzer is an officer and shareholder of Grando, Inc., and executed a Personal Guarantee pursuant to which she promised to personally perform and be bound by the provisions of the Forbes Avenue Franchise Agreement.

7.      Defendant George Germano is a citizen and resident of the State of Connecticut. Defendant Germano was an owner and operator of the State Street shop, the Frontage Road shop, the York Street shop and the Sargent Drive shop, and was a Dunkin' franchisee pursuant to the State Street Franchise Agreement, the Frontage Road Franchise Agreement, the York Street Franchise Agreement and the Sargent Drive Franchise Agreement. Defendant Germano is an officer and shareholder of 4 Donuts, Inc., and executed a Personal Guarantee pursuant to which he promised to personally perform and be bound by the provisions of the State Street Franchise

Agreement, the Frontage Road Franchise Agreement, the York Street Franchise Agreement and the Sargent Drive Franchise Agreement.

8.    Defendant James McManama is a citizen and resident of the State of New York. Upon information and belief, Defendant McManama, without the knowledge or consent of Dunkin' Donuts, was sold, given or otherwise transferred an interest as an owner and operator of State Street shop, the Frontage Road shop, the York Street shop, the Sargent Drive shop, and the Forbes Avenue, in breach of the Franchise Agreements.

## Venue and Jurisdiction

9.    This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332(a), 1338, and 1367.  The amount in controversy exceeds $75,000, exclusive of costs and interest.

10.    Venue is properly in this District pursuant to 28 U.S.C § 1391(b).

11.    This Court has *in personam* jurisdiction over the Defendants because they are residents and citizens of this District, they conduct business in this District, and the events giving rise to the claims occurred in this District.

## Background Facts

## Dunkin's Proprietary Marks

12.    Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

13.    Dunkin's wholly-owned subsidiary Dunkin' Donuts USA, Inc. is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.  Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

14.    Dunkin' Donuts USA, Inc. owns numerous federal registrations for the mark Dunkin' Donuts, and related marks.  Among those registrations are Registration Nos. 748,901, 1,148,165, and 1,159,354.  Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065.

15.    The trade dress of Dunkin' shops includes the signage, lettering style, pink and orange color scheme, exterior appearance, mansard roof, floor plans, and decor (including without limitation, doughnut cases, menu boards, display racks, and servers' uniforms) that are featured at Dunkin' Donuts shops operated by Dunkin' licensees.

16.    The Dunkin' trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality, and is nonfunctional.

17.    The Dunkin' trademarks and trade dress are utilized in interstate commerce.

18.    Dunkin' and its franchisees currently operate approximately 3,700 shops in the United States and 1,400 outside the United States.  In the fifty years since the Dunkin' Donuts system began, hundreds of millions of customers have been served in Dunkin' Donuts shops.

19.    The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years.  Dunkin' Donuts and its franchisees have expended approximately $875,000,000 in advertising and promoting the Dunkin' Donuts marks over the last twenty-nine years.  Dunkin' Donuts spent approximately $94,000,000 in fiscal year 2000 alone on advertising and promotion.

20.    As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with the products and services offered by Dunkin' and its franchisees.  The Dunkin' Donuts marks are among the best and most widely known

trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin's goodwill and favorable reputation.

### The Parties' Rights and Obligations Under the Franchise Agreements

21.    Defendant Glenn Stetzer was licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress in accordance with the terms of the Ferry Street Franchise Agreement.

22.    Under the terms of the Ferry Street Franchise Agreement, Defendant Glenn Stetzer agreed to do certain things, including the following:

a)    not to do or perform, directly or indirectly, any act injurious or prejudicial to the good will associated with Dunkin' Donuts' proprietary marks and the Dunkin' Donuts system (Paragraph 8.A.1);

b)    to pay Dunkin' Donuts a franchise fee of 4.9 percent of the gross sales of the business (Paragraph 4.E);

c)    to pay an advertising fee of 4 percent of the gross sales of the Dunkin' Donuts shops to the Dunkin' Donuts Franchise Owners Advertising and Sales Promotion Fund and to make additional payments to the Fund as supported by a majority of producing Dunkin' Donuts shops in Defendants' market (Paragraph 4.F);

d)    to accurately report on an approved form each week gross sales for the preceding calendar week, at which time all fees required to be paid were to be remitted (Paragraph 5.H.1);

e)    to keep full, complete, and accurate books and accounts in accordance with generally accepted accounting principles and in a form and manner as may be prescribed by Dunkin' Donuts (Paragraph 5.H);

f)    to make available for inspection at reasonable times all original books, records, and supporting documents, and to permit Dunkin' to perform such inspections, tests and analysis that may be necessary to verify gross sales (Paragraph 6.C and 6.D);

g)    to ring and record all sales on a cash register, including retail, wholesale, bulk discount sales, and sales for which payment may be deferred, at the time the product is delivered to the purchaser (Paragraphs 5.I);

h)    to preserve for a period of three years all accounting records and supporting documents relating to the operation of the Dunkin' Donuts shop (Paragraph 5.H.5);

i)    to pay the cost and expense, including reasonable accounting and legal fees, of any inspection, examination, or audit necessitated by a failure to prepare, deliver, or preserve statements or records required by the Agreement, or if such inspection discloses a discrepancy in the gross sales reported to Dunkin' Donuts (Paragraph 6.C);

j)    to pay interest on unpaid monies due under the Agreement (Paragraph 9.C.1); and

23.    Under the terms of the Ferry Street Franchise Agreement, Defendant Glenn Stetzer agreed not to "[o]wn, maintain, engage in, be employed by, or have any interest in any other business which sells or offers to sell any product of a type offered by a DUNKIN' DONUTS SHOP."  (Paragraph 8.A.3.)

24.    The Franchise Agreement executed by the Defendant Glenn Stetzer also contains acknowledgments and agreements by Defendant concerning the continued use of Dunkin's proprietary marks or any methods associated with the name "Dunkin' Donuts" after the termination of the Ferry Street Franchise Agreement.  The relevant sections include:

a.    Section 7.A:  The FRANCHISEE acknowledges that "DUNKIN' DONUTS" is a registered trademark, that said mark has been and is being used by

8

DUNKIN' DONUTS and by its franchisees and licensees, that said mark, together
with the other PROPRIETARY MARKS, presently owned by DUNKIN'
DONUTS or which may be acquired in the future, constitute part of the DUNKIN'
DONUTS SYSTEM and that valuable goodwill is associated with and attached to
said mark and the other PROPRIETARY MARKS.  The FRANCHISEE agrees to
use said mark and the other PROPRIETARY MARKS only in the manner and to
the extent specifically licensed by the Agreement.

      b.     Section 9.C and 9.C.2: Upon any termination or expiration of this
Agreement . . . The FRANCHISEE shall immediately thereafter cease to use, by
advertising or in any other manner whatsoever, any methods associated with the
name "DUNKIN' DONUTS", any or all of the PROPRIETARY MARKS and any
other trade secrets, confidential information, operating manuals, slogans, signs,
symbols or devices forming part of the DUNKIN' DONUTS SYSTEM or
otherwise used in connection with the operation of the DUNKIN' DONUTS
SHOP.

25.     Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer and

George Germano were licensed to use the Dunkin' Donuts trademarks, trade name, and trade

dress in accordance with the terms of the State Street Franchise Agreement, the Frontage Road

Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise

Agreement, and the Sargent Drive Franchise Agreement.  At no time was Defendant James

McManama licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress.

26.     Under the terms of the State Street Franchise Agreement, the Frontage Road

Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise

Agreement, and the Sargent Drive Franchise Agreement, Defendants 4 Donuts, Inc., Grando,

Inc., Glenn Stetzer, Kathleen Stetzer and George Germano agreed to do certain things, including

the following:

      a)     not to do or perform, directly or indirectly, any act injurious or prejudicial

to the good will associated with Dunkin' Donuts' proprietary marks and the Dunkin' Donuts

system (Paragraph 8.A.1 or 8.0.1);

   b)  to comply with all applicable laws, rules, regulations, ordinances, and orders of public authorities (Paragraph 5.Q or 5.1.7);

   c)  to pay Dunkin' Donuts a franchise fee of 4.9 percent of the gross sales of the business (Paragraph 4.E or 4.3);

   d)  to pay an advertising fee of 5 percent of the gross sales of the Dunkin' Donuts shops to the Dunkin' Donuts Franchise Owners Advertising and Sales Promotion Fund and to make additional payments to the Fund as supported by a majority of producing Dunkin' Donuts shops in Defendants' market (Paragraph 4.F or 4.4);

   e)  to accurately report on an approved form each week gross sales for the preceding calendar week, at which time all fees required to be paid were to be remitted (Paragraph 5.H.1 or 5.2.1);

   f)  to keep full, complete, and accurate books and accounts in accordance with generally accepted accounting principles and in a form and manner as may be prescribed by Dunkin' Donuts (Paragraph 5.H or 5.2);

   g)  to make available for inspection at reasonable times all original books, records, and supporting documents, and to permit Dunkin' to perform such inspections, tests and analysis that may be necessary to verify gross sales (Paragraph 6.C and 6.D or 6.2 and 6.3);

   h)  to ring and record all sales on a cash register, including retail, wholesale, bulk discount sales, and sales for which payment may be deferred, at the time the product is delivered to the purchaser (Paragraphs 5.I or 5.2.6);

   i)  to preserve for a period of three years all accounting records and supporting documents relating to the operation of the Dunkin' Donuts shops (Paragraph 5.H.5, 5.2.5);

j)      to pay the cost and expense, including reasonable accounting and legal fees, of any inspection, examination, or audit necessitated by a failure to prepare, deliver, or preserve statements or records required by the Agreements, or if such inspection discloses a discrepancy in the gross sales reported to Dunkin' Donuts (Paragraph 6.C or 6.2);

k)      to pay interest on unpaid monies due under the Agreements (Paragraph 9.C.1 or 9.3); and

27.    Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer and George Germano agreed to seek written approval from Dunkin' Donuts prior to any transfer of interest in their Dunkin' Donuts shops:

> Section 10.B or 10.1:  Except as hereinafter provided, neither FRANCHISEE, nor any partner, if FRANCHISEE is a partnership, nor any shareholder, if FRANCHISEE is a corporation, without DUNKIN' DONUTS' prior written consent, shall, by operation of law or otherwise, sell, assign, transfer, convey, give away, pledge, mortgage or otherwise encumber to any person, persons, partnership, association or corporation, any interest in this Agreement, or any interest in the franchise granted hereby, or any interest in any proprietorship, partnership, or corporation which owns any interest in the franchise, nor offer, permit or suffer the same.  Any purported assignment or transfer not having the prior written consent of DUNKIN' DONUTS shall be null and void and shall constitute default hereunder.

28.    Under the terms of the State Street Franchise Agreement, the Frontage Road Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise Agreement and the Sargent Drive Franchise Agreement, Defendants agreed not to own, maintain, engage in, or have any interest in any other business which sells or offers to sell any product of a type offered by a Dunkin' Donuts shop (Paragraph 8.A.3 or 8.0.3).

29.    The State Street Franchise Agreement, the Frontage Road Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise Agreement and the Sargent Drive Franchise Agreement executed by the Defendants also contain acknowledgments and agreements by Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer and

George Germano concerning the continued use of Dunkin's proprietary marks or any methods

associated with the name "Dunkin' Donuts" after the termination of the Franchise Agreements.

The relevant sections include:

    a.    Section 7.A: FRANCHISEE acknowledges that "DUNKIN'
DONUTS" is a registered trademark, that said mark has been and is being used by
DUNKIN' DONUTS and by its franchisees and licensees, that said mark, together
with the other PROPRIETARY MARKS, presently owned by DUNKIN'
DONUTS or which may be acquired in the future, constitute part of the DUNKIN'
DONUTS SYSTEM and that valuable goodwill is associated with and attached to
said mark and the other PROPRIETARY MARKS. FRANCHISEE agrees to use
said mark and the other PROPRIETARY MARKS only in the manner and to the
extent specifically licensed by the Agreement. FRANCHISEE further agrees that
any unauthorized use or continued use after the termination of this Agreement
shall constitute irreparable harm subject to injunctive relief.

    Section 7.0: FRANCHISEE acknowledges and agrees that
"DUNKIN' DONUTS" is a registered trademark; that said mark has been and is
being used by DUNKIN' DONUTS and by its franchisees and licensees; that said
mark, together with the other Proprietary Marks presently owned by DUNKIN'
DONUTS or which may be acquired in the future, constitutes part of the Dunkin'
Donuts System; that valuable goodwill is associated with and attached to said
mark and the other Proprietary Marks; and that any and all goodwill associated
with the Proprietary Marks, including any goodwill which might be deemed to
have arisen through FRANCHISEE's activities, inures directly and exclusively to
the benefit of DUNKIN' DONUTS.

    b.    Section 9.F and 9.F.2: Upon any termination or expiration of this
Agreement . . . FRANCHISEE shall immediately cease to use, by advertising or
in any other manner whatsoever, any methods associated with the name
"DUNKIN' DONUTS", any or all of the PROPRIETARY MARKS and any other
trade secrets, confidential information, operating manuals, slogans, signs, symbols
or devices forming part of the DUNKIN' DONUTS SYSTEM or otherwise used
in connection with the operation of the DUNKIN' DONUTS SHOP.
FRANCHISEE agrees that any unauthorized use or continued use after the
termination of this Agreement shall constitute irreparable harm subject to
injunctive relief.

    Section 9.4 and 9.4.2: Upon any termination or expiration of this
Agreement . . . FRANCHISEE shall immediately cease to use, by advertising or
in any other manner whatsoever, any methods associated with the Dunkin' Donuts
System, any or all of the Proprietary Marks and any other trade secrets,
confidential information, operating manuals, slogans, signs, symbols or devices
forming part of the Dunkin' Donuts System or otherwise used in connection with

the operation of the Dunkin' Donuts shop. FRANCHISEE agrees that any such unauthorized use or continued use after the termination of this Agreement shall constitute irreparable harm.

30.    Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer and George Germano agreed they would pay to Dunkin' Donuts all damages with interest, costs and expenses, including attorneys' fees, incurred by reason of any termination of the Franchise Agreements. (Paragraphs 9.C.2 or 9.3.)

31.    The Frontage Road Franchise Agreement and the York Street Franchise Agreement are the subject of an Addendum to Dunkin' Donuts Franchise Agreement for a Satellite Unit. Under the terms of the Addendum, the Frontage Road Franchise Agreement and the York Street Franchise Agreement are subject to immediate termination if the State Street Franchise Agreement is terminated.

32.    The Forbes Avenue Franchise Agreement and the Sargent Drive Franchise Agreement are the subject of an Addendum to Dunkin' Donuts Franchise Agreement for a Satellite Unit. Under the terms of the Addendum, the Forbes Avenue Franchise Agreement and the Sargent Drive Franchise Agreement are subject to immediate termination if the Ferry Street Franchise Agreement is terminated.

### Defendants' Defaults and Termination

33.    Defendants have knowingly and purposefully breached their Franchise Agreements by, without limitation, underreporting their gross sales, failing to pay franchise fees and advertising fees on gross sales, and failing to maintain accurate financial records, as required under the terms of their Franchise Agreements.

34.    By failing to accurately report their gross sales to Dunkin', Defendants have avoided paying the franchise fees and advertising fees owed under the Franchise Agreements.

35.     Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer and Kathleen Stetzer are in default of the terms of the State Street Franchise Agreement, the Frontage Road Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise Agreement, and the Sargent Drive Franchise Agreement for transferring an interest in the those Franchise Agreements to Defendant Jim McManama, without requesting or obtaining the written approval of Dunkin' Donuts.

36.     On or about September 17, 2002, Defendants Stetzer, McManama, and/or others under their control and direction, violated the terms of the Franchise Agreements by engaging in the following schemes: committing assault and battery on a former manager of the State Street shop, threatening the life of a former manager of the State Street shop and his family, and destroying the property of a former manager of the State Street shop.

37.     Defendants Stetzer and McManama also participated in a conspiracy to obtain, by use of threats and violence, a signature on a letter from their former manager that purported to retract statements and information already provided to Dunkin' Donuts.  As part of this conspiracy, a false notary public's seal as to the authenticity of the former manager's signature on a retraction he signed was also obtained.

38.     Defendants are in default of the terms of their Franchise Agreements for engaging in a business which sells or offers to sell the same or substantially similar products to those offered by Dunkin' Donuts.  Defendants have operated a catering business in which they sold products that were the same or similar to the products offered for sale in their Dunkin' Donuts' shops, without the knowledge or written approval of Dunkin' Donuts.

39.     Defendants are in default of the terms of the Franchise Agreements by using their franchises to violate tax laws.   This conduct is good cause for terminating the Franchise

Agreements. Defendants also, among other things, filed false tax returns that failed to accurately

reflect the true gross sales of the franchises, failed to state the true income earned by Defendants,

and misstated actual expenses of the franchises. At a bare minimum, this conduct violates 26

U.S.C. § 7201 (prohibiting the willful evasion of taxes), 26 U.S.C. § 7206 (criminalizing the

willful preparation of tax returns with false material facts), and 18 U.S.C. § 1001 (making it a

crime to knowingly and willfully falsify a material fact in any matter within the jurisdiction of

the federal government).

40.    Pursuant to the applicable provisions of the Franchise Agreements, on

October 22, 2002, Dunkin' sent Defendants a Notice of Default and Termination terminating the

Defendants' Franchise Agreements, and requesting that Defendants comply with their post-

termination obligations as set forth in the Franchise Agreements, effective sixty (60) days from

Defendants' receipt of the Notice of Termination.

41.    To date, Defendants have refused to accept termination and continue to operate

their shops as if they were licensed franchisees.

## COUNT I
### (Breach of all Franchise Agreements)

42.    The allegations of paragraphs 1 through 41 are hereby incorporated by reference.

43.    The conduct described in paragraphs 33 and 34 constitutes breaches of the

contractual provisions of the Franchise Agreements described in paragraphs 22 and 26.

44.    As a direct and proximate result of these breaches, Dunkin' Donuts has incurred

substantial losses, fees, and expenses in excess of $75,000.

## COUNT II
### (Breach of the State Street, Frontage Road, Forbes Avenue,
### York Street and Sargent Drive Franchise Agreements)

45.    The allegations of paragraphs 1 through 44 are hereby incorporated by reference.

46.    At a date unknown but sometime after May 28, 1992, Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer and Kathleen Stetzer transferred an interest in the State Street Franchise Agreement, the Frontage Road Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise Agreement, and the Sargent Drive Franchise Agreement to Defendant Jim McManama, without notifying Dunkin' Donuts.

47.    The actions of Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer, Kathleen Stetzer and Jim McManama constitute a material breach of the Franchise Agreements, which cannot be cured as a matter of law, and is good cause for terminating the State Street Franchise Agreement, the Frontage Road Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise Agreement, and the Sargent Drive Franchise Agreement.

48.    As a direct and proximate result of this breach, Dunkin' has incurred substantial losses, fees, and expenses.

## COUNT III
### (Breach of the State Street, Frontage Road, Forbes Avenue, York Street, and Sargent Drive Franchise Agreements)

49.    The allegations of paragraphs 1 through 48 are hereby incorporated by reference.

50.    The conduct described in paragraphs 36 and 37 of this Complaint violate applicable law and constitute material breaches of the contractual provisions of paragraph 5.Q or 5.1.7 of the State Street Franchise Agreement, the Frontage Road Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise Agreement and the Sargent Drive Franchise Agreement.  Defendants' conduct cannot be "cured" as a matter of law and is good cause for terminating the State Street Franchise Agreement, the Frontage Road Franchise Agreement, the Forbes Avenue Franchise Agreement, the York Street Franchise Agreement and the Sargent Drive Franchise Agreement.

51.    As a direct and proximate result of this breach, Dunkin' has incurred substantial losses, fees, and expenses.

## COUNT IV
## (Breach of the Franchise Agreements)

52.    The allegations of paragraphs 1 through 51 are hereby incorporated by reference.

53.    The conduct described in paragraph 36 and 37 of this Complaint is also a material breach of the contractual provisions of paragraphs 6.2 or 6.C of the Franchise Agreements in that Defendants actions interfered with Dunkin's right to examine the books and records of their franchises, and to conduct such tests and analyses as Dunkin' deems fit.  Defendants' conduct cannot be "cured" as a matter of law and is good cause for terminating the Franchise Agreements.

54.    As a direct and proximate result of this breach, Dunkin' has incurred substantial losses, fees, and expenses.

## COUNT V
## (Breach of all Franchise Agreements)

55.    The allegations of paragraphs 1 through 54 are hereby incorporated by reference.

56.    The conduct described in paragraph 38 of the Complaint constitutes breaches of the contractual provisions of the Franchise Agreements described in paragraphs 23 and 28.

57.    As a direct and proximate result of this breach, Dunkin' has incurred substantial losses, fees, and expenses.

## COUNT VI
## (Breach of all Franchise Agreements)

58.    The allegations of paragraphs 1 through 57 are hereby incorporated by reference.

59.    Pursuant to the applicable provisions of the Franchise Agreements, Dunkin' sent a Notice of Default and Termination to Defendants 4 Donuts, Inc., Grando, Inc., Glenn Stetzer,

Kathleen Stetzer and George Germano, which terminated the Franchise Agreements, and demanded that the Defendants immediately cease operating as Dunkin' Donuts franchisees, cease using Dunkin' Donuts' proprietary marks, pay all monies owed, and comply with all of their post-termination obligations, effective sixty (60) days from receipt of the Notice by Defendants.

60.     Defendants have failed to cease operating under the Dunkin' Donuts trademarks, trade name, and trade dress, and have failed to comply with their post-termination obligations under the Franchise Agreements.

61.     As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT VII
## (Breach of the Covenant of Good Faith and Fair Dealing)

62     The allegations of paragraphs 1 through 61 are hereby incorporated by reference.

63.     The conduct described in paragraph 36 and 37 of this Complaint is a violation of the covenant of good faith and fair dealing. Defendants' conduct cannot be "cured" as a matter of law and is good cause for terminating the Defendants' Franchise Agreements.

64.     As a direct and proximate result of this breach, Dunkin' has incurred substantial losses, fees, and expenses.

## COUNT VIII
## (Trademark Infringement)

65.     The allegations of paragraphs 1 through 64 are hereby incorporated by reference.

66.     Defendants' use of the Dunkin' Donuts trademarks, trade name, and trade dress outside the scope of the Franchise Agreements is likely to confuse or deceive the public into

18

believing, contrary to fact, that their shops are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin', or are in some other way connected or affiliated with Dunkin'. Such unlicensed use infringes Dunkin's exclusive rights in the Dunkin' Donuts trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114.

67.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

68.    As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IX
### (Trade Dress Infringement)

69.    The allegations of paragraphs 1 through 68 are hereby incorporated by reference.

70.    Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same "frankfurter" lettering style and in the same distinctive pink and orange color scheme as Dunkin' uses for the doughnut shops operated by Dunkin's licensees.

71.    Defendants' use of the trade dress that is identical or confusingly similar to Dunkin's trade dress constitutes a false designation of the origin of Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendants' shops with the Dunkin' shops operated by Dunkin' licensees.  Such adoption of Dunkin's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

72.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

73.     As a result of Defendants' infringement of Dunkin's trade dress, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT X
### (Unfair Competition)

74.     The allegations of paragraphs 1 through 73 are hereby incorporated by reference.

75.     The Defendants' use of the Dunkin' Donuts trademarks, trade name, and trade dress outside the scope of their Franchise Agreements is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities.  Such continued unauthorized use of the Dunkin' Donuts trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

76.     Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

77.     As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT XI
### (Violation of Conn. Gen. Stat. §§42-110a *et seq.*)

78.     The allegations of paragraphs 1 through 77 are hereby incorporated by reference.

79.     Defendants' actions constitute singularly or in combination unfair and deceptive practices and unfair methods of competition in the conduct of greater commerce in violation of Conn. Gen. Stat. §§42-110a *et seq.*

80.     Defendants' actions have caused and will continue to cause Dunkin' ascertainable loss within the meaning of Conn. Gen. Stat. §42-110g(a).

81.    Pursuant to Conn. Gen. Stat. §42-110g(a), Dunkin' brings this action for all appropriate equitable relief, punitive damages, costs and attorney's fees.

82.    Dunkin' has mailed a copy of this Verified Complaint to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection for the State of Connecticut as required by law.

83.    If Defendants are not enjoined from further violations of CUTPA, Dunkin' will continue to suffer losses, both quantifiable and unquantifiable, and losses to its goodwill, business reputation, and business, some or all of which is irreparable.

### COUNT XII
### (Breach of all Franchise Agreements)

84.    The allegations of paragraphs 1 through 83 are hereby incorporated by reference.

85.    The conduct described in paragraph 39 constitutes a breach of the contractual provisions of the Franchise Agreements described in paragraphs 22 and 26.

86.    As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### PRAYER FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Enter judgment in favor of Plaintiffs for the damages incurred as a result of Defendants' breaches of the Franchise Agreements;

B.    Enter an injunctive Order ratifying and enforcing the termination of the Franchise Agreements *nunc pro tunc*, effective sixty (60) days from the date Defendants received the Notice of Termination;

C.    Enter an Order directing Defendants to comply with their post-termination obligations under any contract between or among the parties, including but not limited to the Franchise Agreements and the Lease Option Agreements, effective sixty (60) days from the date Defendants received the Notice of Termination;

D.    Enter an Order directing Defendants to account to Dunkin' for all sales made and receipts earned during the term of the franchise relationship;

E.    Award Dunkin' judgment against Defendants for the damages it has sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

F.    Enter an Order enjoining Defendants, and all those acting in concert with them, by preliminary and permanent injunction, from using the Dunkin' Donuts trademarks, trade name, and trade dress, and from otherwise engaging in unfair competition with Dunkin';

G.    Award Dunkin' prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

H.    Award Dunkin' judgment against Defendants for the damages it has sustained pursuant to Conn. Gen. Stat. §§42-110a *et seq.*, including punitive damages and attorneys' fees;

I.    Award Dunkin' costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs incurred in conducting any and all inspections and audits; and

J.     Award Dunkin' such other relief as this Court may deem just and proper.

Respectfully submitted,

Robert L. Zisk ct 13503
Jeffrey L. Karlin ct 14965
Christopher M. Loveland ct 24169
SCHMELTZER, APTAKER & SHEPARD, P.C.
2600 Virginia Avenue, N.W.
Suite 1000
Washington, D.C. 20037
(202) 333-8800

Paul D. Sanson ct 05477
Alexandra M. McHugh ct 22428
SHIPMAN & GOODWIN LLP
One American Row
Hartford, CT 06103-2819
(860) 251-5612

Attorneys for Plaintiffs
Dunkin' Donuts Incorporated,
Dated: December 12, 2003                Dunkin' Donuts USA, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of Plaintiffs' Amended Complaint was served by first class mail on December 12, 2003 upon counsel for Defendants at the addresses listed below:

Richard S. Order, Esq.
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103-3702

Paul N. Gilmore, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street
P.O. Box 231277
Hartford, CT 06123-1277

Robert K. Walsh, Esq.
The Law Offices of Robert K. Walsh
193 State Street
P.O. Box 777
New Haven, CT 06473

James McManama
One Wheatfield Drive
Wallingford, CT 06492

Christopher M. Loveland